## SEELIG LAW OFFICES, LLC

| | | |
|---|---|---|
| PHILIP H. SEELIG<br>RICHARD B. SEELIG *<br>JOSHUA S. GOHARI  **<br>_____<br><br>ASSOCIATE ATTORNEYS<br>BERET L. FLOM<br>KYLE D. MITCHELL<br>MATTHEW J. PORCARO *** | ATTORNEYS AT LAW<br>299 BROADWAY – SUITE 1600<br>NEW YORK, NEW YORK 10007<br>TEL: (212) 766-0600<br>FAX: (212) 766-2616 | TRIAL COUNSEL<br>MICHAEL BARASCH<br>_____<br><br>OF COUNSELS<br>GAIL I. BADER<br>ADAM DRESSLER<br>VIN OCHANI |

*   MEMBER NY & CT BAR
**  MEMBER NY & NJ BAR
*** MEMBER NY, MA & DC BAR

October 19, 2022

**By ECF and Email**
ALCarterNYSDChambers@nysd.uscourts.gov

Honorable Andrew L. Carter
United States District Judge
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

           Re: *Dowdy et al. v. City of New York, New York City Department of Sanitation*
              22-cv-6284 (ALC)
              Response to Request for Conference

Dear Judge Carter:

Our firm represents Plaintiffs Dameka Dowdy, Jeffrey Hunter, Sean Milan, Joel Purser, Sandra Castro, Cecelia Rojas, Kevon Chisholm, Richard Ortega, Marisol Concepcion, Robert Tabon, Rasheen Odom, Carmelita Gordon-Fleetwood, and Raymond Pacheco in the above-referenced action. Plaintiffs are Sanitation Enforcement Agents ("SEAs") or Associate Sanitation Enforcement Agents ("ASEAs") (collectively "Enforcement Agents"). We write in opposition to the Defendants' pre-motion letter regarding their proposed motion to dismiss.

The New York City Department of Sanitation employs Enforcement Agents in the civil service title of SEA or ASEA to issue summonses, investigate complaints, testify in court, effect arrests, and enforce regulations. *See* Compl. ¶¶ 29-41. The Department also employs Sanitation Workers in the civil service title of Sanitation Workers. Most Sanitation Workers perform collection by driving or riding in large commercial vehicles lifting and carrying bags, cans, or other items weighing up to 150 pounds several times an hour. Sanitation Workers performing collection duties are required to lift and carry items dozens of times per hour up to 100 to 150 pounds, and maintain a CDL. *Id.* ¶¶ 52-53. A subset of those employed in the civil service title of Sanitation Worker are permitted to work as "Sanitation Police" but are still in the civil service title of Sanitation Worker. They perform the same responsibilities and functions as Enforcement Agents, which have nothing to do with the heavy lifting and carrying of a Sanitation Worker performing collection. The Sanitation Police Officers are compensated over twice as much as Enforcement Agents for the same work. It is impossible for Enforcement Agents to become Sanitation Police unless they can meet the totally unrelated physical, CDL, and civil service qualifications, to achieve the Sanitation Worker civil service title.

**SEELIG LAW OFFICES, LLC**
October 19, 2022
Page 2 of 3

In their pre-motion letter, Defendants claim in multiple ways that Plaintiffs failed to adequately plead the barrier and the employment practice or policy causing the injury. However, Plaintiffs were very clear in their Complaint that the barrier is Defendant's policy and practice that Enforcement Agents must apply and meet the physical and other requirements to become Sanitation Workers before being allowed to possibly become Sanitation Police. *See* Compl. ¶¶ 50-57. To be clear, the barrier is that the requirements are totally unrelated and that they may not be comfortable applying for a CDL and driving a large commercial vehicle during a road test for a job that does not need one.

The City first claims that there is no injury-in-fact or standing conferred on the Plaintiffs or putative class, but this is incorrect. The U.S. Supreme Court has stated:

> "Measured against these standards, the company's assertion that a person who has not actually applied for a job can never be awarded seniority relief cannot prevail. The effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity. A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection.
>
> If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices - by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.
>
> *Intl. Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-366 (1977)

Defendants are actually fully on notice of Plaintiffs' allegations because they later summarize it nearly perfectly: "There are simply no allegations to support a claim that passing the civil service test, obtaining a CDL and/or meeting certain physical requirements puts non-white or female applicants at a disadvantage." *See* Def. Pre-Motion Letter, at 2. The U.S Supreme Court has held: "In enacting Title VII, Congress requires 'the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification.'" *See Dothard v. Rawlinson*, 433 U.S. 321 (1977) quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).

**SEELIG LAW OFFICES, LLC**
October 19, 2022
Page 3 of 3


To establish a causal relationship between the employment practice and this observed disparity, the plaintiff's statistical evidence must reveal a disparity that is "sufficiently substantial to raise an inference of causation." *See Smith v. Xerox Corp.*, 196 F.3d 358, 365 (2d Cir. 1999). "To the extent the defendants' argument is that a plaintiff must provide statistical support for a disparate impact claim in order to survive a motion to dismiss, that argument is incorrect. It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery." *See Jenkins v NY City Tr. Auth.*, 646 F Supp 2d 464, 469 (S.D.N.Y. 2009) quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002).

Based upon our calculations, we believe that approximately twice as many Enforcement Agents are female and/or black as Sanitation Workers, and this would be more than sufficient statistical evidence. Nevertheless, we will attempt to provide more specific details in an amended complaint.

In conclusion, Plaintiffs intend to elect to file an amended complaint as a matter of course to attempt to address several of the topics identified in Defendants' pre-motion letter in the hopes that some additional facts or clarification will resolve some of the purported issues.

We respectfully request that Your Honor allow three weeks from the pre-motion conference or order to file an amended complaint. Thank you for your consideration in this matter.

    Respectfully submitted,

    Seelig Law Offices, LLC
    By:

    __/s/ Matthew Porcaro_____
    Matthew J. Porcaro, Esq. (MP5944)
    299 Broadway, Suite 1600
    New York, NY 10007
    Matt@pseeliglaw.com
    212-766-0600


cc: Soo-Young Shin, Assistant Corporation Counsel, By ECF