UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X   Index No. 22-cv-6284

DAMEKA DOWDY, JEFFREY HUNTER, SEAN
MILAN, JOEL PURSER, SANDRA CASTRO, CECELIA
ROJAS, KEVON CHISHOLM, RICHARD ORTEGA,
MARISOL CONCEPCION, ROBERT TABON,
RASHEEN ODOM, CARMELITA GORDON-          **FIRST AMENDED**
FLEETWOOD, and RAYMOND PACHECO,           **CLASS ACTION**
                                          **COMPLAINT**
On behalf of themselves and all others similarly situated,

                    Plaintiffs,

     -against-
                                          **JURY TRIAL DEMANDED**

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF SANITATION,

                    Defendants.

------------------------------------------------------------------------ X

## INTRODUCTION

Plaintiffs Dameka Dowdy, Jeffrey Hunter, Sean Milan, Joel Purser, Sandra Castro, Cecelia Rojas, Kevon Chisholm, Richard Ortega, Marisol Concepcion, Robert Tabon, Rasheen Odom, Carmelita Gordon-Fleetwood, and Raymond Pacheco, on behalf of themselves and all others similarly situated, by their attorneys, Seelig Law Offices, LLC, and Moser Law Firm, P.C., bring this action against the City of New York ("City") and the New York City Department of Sanitation ("DSNY"), alleging as follows:

## NATURE OF THE CASE

1. Plaintiffs, Sanitation Enforcement Agents, allege that Defendant City of New York discriminates and compensates them less than Sanitation Workers for substantially equal work in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human

1

Rights Law ("NYCHRL"), the Equal Pay Act of 1963, and other laws. Plaintiffs seek prospective injunctive relief to remedy ongoing violations of federal and state law, compensatory damages, punitive damages, liquidated damages, front pay, back pay, interest, and an award of attorney's fees.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, and 1343. This action is authorized and instituted, pursuant to 42 U.S.C. § 2000e-5(f).

3. Pursuant to 28 U.S.C. § 1367(a), supplemental jurisdiction exists over the related state claims because they arise from the same nucleus of operative facts giving rise to this dispute.

4. Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claims occurred in New York County.

5. This Court has personal jurisdiction over Defendants because Defendants' location is found within this District.

## PARTIES

### *Plaintiffs*

6. Plaintiffs Dameka Dowdy, Jeffrey Hunter, Sean Milan, Joel Purser, Sandra Castro, Cecelia Rojas, Kevon Chisholm, Richard Ortega, Marisol Concepcion, Robert Tabon, Rasheen Odom, Carmelita Gordon-Fleetwood, and Raymond Pacheco are or were Sanitation Enforcement Agents ("SEAs") or Associate Sanitation Enforcement Agents ("ASEAs") employed by the New York City Department of Sanitation ("DSNY") and the City of New York.

7. Plaintiffs are qualified for the full duties of their positions and able to perform the full range of duties, or were during the time period of their employment.

8. Plaintiffs qualify as an "employee" under the relevant statutes, including Title VII of the Civil Rights Act, the Human Rights Laws, and the Equal Pay Act.

9. Dameka Dowdy is a Black female, and is an ASEA I with a rate of pay of approximately $43,000 after 15 years with DSNY.

10. Jeffrey Hunter is a Native American male, and is an ASEA II with a rate of pay of approximately $49,163 after 33 years of service with DSNY.

11. Sean Milan is a Black male, and is an ASEA I with a rate of pay of approximately $47,441 after 14 years with DSNY.

12. Joel Purser is a Black male, and is an ASEA I with a rate of pay of approximately $43,290 after 30 years with DSNY.

13. Sandra Castro is a Black female, and is an SEA with a rate of pay of approximately $46,805 after 18 years with DSNY.

14. Cecelia Rojas is a Black female, and is an ASEA I with a rate of pay of approximately $49,545 after 33 years with DSNY.

15. Kevon Chisholm is a Black female, and is an SEA with a rate of pay of approximately $46,805 after 15 years with DSNY.

16. Richard Ortega is a Hispanic male, and is an ASEA II with a rate of pay of approximately $49,122 after 29 years with DSNY.

17. Marisol Concepcion is a Hispanic female, and is an ASEA I with a rate of pay of approximately $43,249 after 14 years with DSNY.

18. Robert Tabon is a Black male, and is an ASEA I with a rate of pay of approximately $43,407 after 36 years with DSNY.

19. Rasheen Odom is a Black male, and is an ASEA I with a rate of pay of

approximately $43,249 after 18 years with DSNY.

20. Carmelita Gordon-Fleetwood is a Black female, and is an ASEA I with a rate of pay of approximately $43,000 after 15 years with DSNY.

21. Raymond Pacheco is a Hispanic male, and is an ASEA II with a rate of pay of approximately $49,122 after 12 years with DSNY.

*Defendants*

22. At all relevant times, Defendant City of New York is a municipal corporation duly organized and existing pursuant to and by virtue of the laws of the State of New York, with mayoral agencies and/or departments, including Defendant New York City Department of Sanitation ("DSNY").

23. Plaintiffs are or were employed by DSNY, which has its headquarters at 125 Worth Street, New York, New York, 10007, County of New York.

24. Defendants qualify as an "employer" under the relevant statutes, including Title VII of the Civil Rights Act, the Human Rights Laws, and the Equal Pay Act.

**ADMINISTRATIVE REQUIREMENTS**

25. On February 4, 2021, Plaintiffs' thirteen (13) charges of discrimination were received by the United States Equal Employment Opportunity Commission ("EEOC"), sent together by U.S.P.S. Priority Mail Express overnight with tracking.

26. Between April 29, 2022 and May 3, 2022, all thirteen (13) of Plaintiffs' Right to Sue Letters were received by counsel via email. *See* Exhibit A for Right to Sue Letters.

27. This action has been brought within ninety (90) days of receipt of the notice of suit rights. All conditions precedent to the institution of this lawsuit have been met.

28. Unlike Title VII, claims brought under the Equal Pay Act or Human Rights laws

do not require the filing of administrative complaints or exhaustion of remedies.

## STATEMENT OF FACTS

29. The New York City Department of Sanitation employs Sanitation Enforcement Agents, under the civil service titles of Sanitation Enforcement Agent ("SEA") and Associate Sanitation Enforcement Agent ("ASEA") (collectively "Enforcement Agents").

### *Job Duties*

30. The job duties of Enforcement Agents include, but are not limited to, issuing criminal summonses and Environmental Control Board (ECB) summonses.

31. In addition, their job duties include issuing parking summons, investigating complaints, enforcing regulations, testifying in court, and effecting arrests.

32. Enforcement Agents have investigated illegal dumping and have conducted vehicle stops.

33. In addition to Enforcement Agents, the DSNY employs Sanitation Workers.

34. DSNY has designated certain Sanitation Workers as "Sanitation Police."[1]

35. Sanitation Police enforce the same laws as Enforcement Agents.

36. Sanitation Police and Enforcement Agents both issue summonses, investigate complaints, testify in court, effect arrests, and enforce regulations.

37. Enforcement Agents have trained the Sanitation Police.

38. Enforcement Agents perform work requiring equal skill, effort, and responsibility under similar working conditions as Sanitation Police.

39. Enforcement Agents have the same responsibilities and carry out the same job functions as the Sanitation Police.

---

[1] In this Complaint, the term "Sanitation Police" or "Sanitation Police Officers" refers to the employees in the civil service titles of Sanitation Worker and Sanitation Supervisor working out of title as police.

*Demographics*

40. While Enforcement Agents are overwhelmingly minorities, the pool of Sanitation Workers that are used to form the Sanitation Police are, upon information and belief, greater than 50% white and male.

41. According to demographic statistics presented to the NYC City Council, as of October 14, 2020, only 3.26% of Sanitation Workers are female.

42. According to the Plaintiffs' best estimates, Plaintiffs allege approximately 40% of Enforcement Agents are female.

43. According to demographic statistics presented to the NYC City Council, as of October 14, 2020, at least 51.63% of Sanitation Workers are white.

44. According to the Plaintiffs' best estimates, Plaintiffs allege approximately 16% of Enforcement Agents are white.

45. A vast disparity exists in the sex and race makeup between the pool of Sanitation Workers (which is the only place where Sanitation Police are taken from) and the general qualified population or of the actual population of the people with the skills and experience who want to be Sanitation Police (Enforcement Agents).

46. According to the Plaintiffs' best estimates, Plaintiffs allege, percentage wise, there are more than three times as many black Enforcement Agents (64%) as black Sanitation Police (20%).

47. According to the Plaintiffs' best estimates, Plaintiffs allege, percentage wise, there are more than twice as many female Enforcement Agents (40%) as female Sanitation Police (17%).

*Compensation Disparity*

48. As to compensation, Sanitation Police are paid a higher wage than Enforcement Agents, along with better benefits such as longevity pay, unlimited sick leave, three-quarters of pay accidental disability retirement, and 20 or 22 year service retirement.

49. Sanitation Police receive $77,318 after 5.5 years of service.

50. In contrast, many Enforcement Agents are receiving less than $45,000 after 15 or 30 years of service.

51. In addition, there are numerous other contractual benefits that Sanitation Police receive that Enforcement Agents do not receive, including, but not limited to, assignment differential, double time for Sundays and/or holidays, higher welfare and annuity fund benefits, a higher uniform allowance, and other benefits in their contracts.

52. Further, compensation discrepancies will follow the Enforcement Agents into their retirement as their pensions will be significantly lower due to their lower Final Average Salary upon which their pensions are calculated.

*Employment Policy*

53. DSNY does not appoint Enforcement Agents to the Sanitation Police and disqualifies Enforcement Agents for the "Sanitation Police" position.

54. The DSNY only permits Sanitation Workers to become Sanitation Police.

55. DSNY requires that any Enforcement Agent who wishes to become a Sanitation Police Officer must take the civil service examination and meet the requirements of a Sanitation Worker.  This requirement acts as an artificial barrier to entry and has a disparate impact on the basis of race and sex.

56. The qualifications of a Sanitation Worker include, among other things, the ability

to lift and carry bags and cans up to 100 or 150 pounds dozens of times per hour, walking, climbing, pulling, and driving, including having and maintaining a commercial driver's license ("CDL").

57. Having and maintaining a CDL is not necessary to perform Sanitation Police duties.

58. Lifting and carrying bags and cans up to 150 pounds several times per hour has is not necessary or related to the performance of Sanitation Police duties.

59. There is no civil service examination to become a Sanitation Police Officer.

60. At least one Plaintiff attempted and was denied the opportunity to become a Sanitation Police Officer.

61. For example, Plaintiff Tabon applied to become a Sanitation Worker in the 1980s and again in the 1990s. In the 1980s, Tabon did not meet the requirements. In the 1990s, Plaintiff Tabon passed the Sanitation Worker examination, but then failed to qualify for a CDL.

62. Requiring a CDL is an artificial barrier to being promoted from an Enforcement Agent to Sanitation Police. It is not necessary or related to the performance of the duties, and was the actual barrier to Plaintiff Tabon's promotion to Sanitation Police Officer.

63. Enforcement Agents were directed to obtain permission from their current supervisors to take the Sanitation Worker exam.

64. The requirement that an Enforcement Agent first become a Sanitation Worker before being promoted to Sanitation Police dissuaded and discouraged Enforcement Agents from seeking the Sanitation Police position. Even if an Enforcement Agent successfully passed the Sanitation Worker exam and met all of the requirements, the City would first hire her into the Sanitation Worker position, and there was *no guarantee* that the "Enforcement Agent turned

Sanitation Worker" would receive the Sanitation Police position. Therefore, an Enforcement Agent who wanted to become a Sanitation Police officer risked having to perform garbage collection at night, or drive a large truck, indefinitely. In addition, they would also be placed on probationary status again after giving up their Enforcement Agent title. Again, none of these requirements are related to the performance of Sanitation Police duties.

65. In addition, information provided by DSNY suggested that Enforcement Agents were not able to apply for the Sanitation Police position. Emails sent by DSNY specifically excluded them, reading: "If you are seriously interested in become a Sanitation Police Officer, and are employed by the Department of Sanitation in the civil service title of Sanitation Worker, send your resume..." Nothing of the sort was ever offered to those employed in the civil service title of Sanitation Enforcement Agent or Associate Sanitation Enforcement Agent.

66. DSNY's actions, including requiring that an individual become a Sanitation Worker before being eligible to become a member of the Sanitation Police, act as an artificial barrier to entry, and otherwise discriminate against minorities and females and, are violative of Title IV of the Civil Rights Act, the Equal Pay Act of 1963, the New York State Human Rights Law, and the New York City Human Rights Law.

67. This employment practice of requiring Enforcement Agents to meet all of the requirements to become a Sanitation Worker before being eligible to become a Sanitation Police Officer (e.g. examination requirements, physical requirements, CDL road test, and other CDL eligibility including an inability take certain medications) has a discriminatory effect; is not a business necessity; is not related to job performance; and does not measure skills necessary for the job of Sanitation Police Officer.

68. The wage and benefit disparity between Enforcement Agents and Sanitation

Police has a disparate impact on minorities and females.

## CLASS ACTION ALLEGATIONS

69. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

70. Plaintiffs bring all causes of action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their own behalf and as representatives of a class consisting of all past, present, and future female and minority Enforcement Agents. Plaintiff reserves the right to amend or refine the definition of the Class based on discovery or legal developments.

71. Plaintiffs and the Class bring this action for equitable relief and damages pursuant to Federal Rule of Civil Procedure 23.

72. Plaintiffs are members of the class they seek to represent.

73. The members of the Class identified herein are so numerous that joinder of all members is impracticable. The Class consists of dozens of female and minority Enforcement Agents in addition to many that have left employment. As a result, joinder of all Class members in a single action is impracticable.

74. There are questions of law and fact common to the members of the Class, including but not limited to: (1) whether Defendants are liable to Plaintiffs and Class Members for damages arising out of sex and race discrimination; whether Defendants are liable to Plaintiffs and Class Members for damages arising out of equal pay and discrimination laws; whether Defendants had a policy or practice to cause these violations, or a failure to implement a policy and procedure to prevent these violations; and whether equitable, compensatory, and punitive damages for the Class are warranted.

75. These and other questions of law and/or fact are common to each and every Class Member and predominate over any questions affecting only an individual Class Member.

76. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

77. Plaintiffs will fairly and adequately represent and protect the interest of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

78. Accordingly, the interests of the Class will be adequately protected and advanced. In addition, there is no conflict of interest between the representatives of the proposed Class and members of the Class.

79. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the Class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

80. Notice can be provided to the Class Members, who are all current or former City employees, through the same or similar methods or techniques that the City uses to contact its current and former employees.

81. Certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) because the questions of law and fact common to members of the Class predominate over any questions affecting only individual members. This class action is superior to other available remedies for the fair and efficient adjudication of this controversy.

**FIRST CLAIM FOR RELIEF**
**(Equal Pay Act of 1963)**

82. Plaintiffs repeat and reallege each allegation contained in all other paragraphs of

this Complaint as though fully set forth herein.

83. Defendants discriminated against Plaintiffs on account of sex in violation of the Equal Pay Act, 29 U.S.C. § 201, *et seq.*

84. Defendants' policies and procedures had and continue to have a discriminatory impact on female employees.

85. This system has an adverse impact on female employees and is not, and cannot be, justified by business necessity. Even if such system could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

**SECOND CLAIM FOR RELIEF**
**(Race Discrimination – Title VII – Disparate Impact)**

86. Plaintiffs repeat and reallege each allegation contained in all other paragraphs of this Complaint as though fully set forth herein.

87. Defendants engaged in an unlawful employment practice by discriminating against Plaintiffs, because of race and/or color and/or national origin, with respect to the terms, conditions and/or privileges of employment, failed to treat Plaintiffs as other similarly-situated employees, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

88. Defendants have maintained a system and/or policies that are discriminatory with respect to the assignment of employees to employment positions, promotions, compensation, and other terms and conditions of employment.

89. By its conduct as set forth herein above, Defendants, through supervisory employees, discriminated against Plaintiffs in the terms, conditions, and privileges of their employment because of their race in violation of Title VII.

90. As a direct result of the above-complained violative conduct by Defendants and their employees, Plaintiffs were deprived of equal employment opportunities, sustained

emotional and psychological distress, and was caused to incur pecuniary and non-pecuniary losses, lost wages, past and future, attorney's fees, and costs.

### THIRD CLAIM FOR RELIEF
### (Sex Discrimination – Title VII – Disparate Impact)

91. Plaintiffs repeat and reallege each allegation contained in all other paragraphs of this Complaint as though fully set forth herein.

92. Defendants have maintained a system and/or policies that are discriminatory with respect to the assignment of employees to employment positions, promotions, compensation, and other terms and conditions of employment.

93. Defendants' policies and procedures had and continue to have a discriminatory impact on female employees.

94. This system has an adverse impact on female employees and is not, and cannot be, justified by business necessity. Even if such system could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

95. The foregoing conduct constitutes illegal discrimination prohibited by 42 U.S.C. §§ 2000e *et seq*.

### FOURTH CLAIM FOR RELIEF
### (Race Discrimination – New York State Human Rights Law – Disparate Impact)

96. Plaintiffs repeat and reallege each allegation contained in all other paragraphs of this Complaint as though fully set forth herein.

97. Defendants engaged in an unlawful employment practice by discriminating against Plaintiffs, because of race and/or color and/or national origin, with respect to the terms, conditions and/or privileges of employment, failed to treat Plaintiffs as other similarly-situated employees, in violation of human rights laws.

98. Defendants have maintained a system and/or policies that are discriminatory with respect to the assignment of employees to employment positions, promotions, compensation, and other terms and conditions of employment.

99. By its conduct as set forth herein above, Defendants, through supervisory employees, discriminated against Plaintiffs in the terms, conditions, and privileges of their employment because of their race in violation of human rights laws.

100. As a direct result of the above-complained violative conduct by Defendants and their employees, Plaintiffs were deprived of equal employment opportunities, sustained emotional and psychological distress, and was caused to incur pecuniary and non-pecuniary losses, lost wages, past and future, attorney's fees, and costs.

101. The foregoing conduct constitutes illegal discrimination prohibited by New York Executive Law § 296 *et seq*.

**FIFTH CLAIM FOR RELIEF**
**(Sex Discrimination – New York State Human Rights Law – Disparate Impact)**

102. Plaintiffs repeat and reallege each allegation contained in all other paragraphs of this Complaint as though fully set forth herein.

103. Defendants have further cemented disparity between men and women which includes disparity in employment positions, promotions, compensation, and other terms and conditions of employment.

104. This system has an adverse impact on female employees and is not, and cannot be, justified by business necessity. Even if such system could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

105. The foregoing conduct constitutes illegal discrimination prohibited by the New York State Human Rights Law.

106. The foregoing conduct constitutes illegal discrimination prohibited by New York Executive Law § 296 *et seq*.

## SIXTH CLAIM FOR RELIEF
(Race Discrimination – New York City Human Rights Law – Disparate Impact)

107. Plaintiffs repeat and reallege each allegation contained in all other paragraphs of this Complaint as though fully set forth herein.

108. Defendants engaged in an unlawful employment practice by discriminating against Plaintiffs, because of race and/or color and/or national origin, with respect to the terms, conditions and/or privileges of employment, failed to treat Plaintiffs as other similarly-situated employees, in violation of human rights laws.

109. Defendants have maintained a system and/or policies that are discriminatory with respect to the assignment of employees to employment positions, promotions, compensation, and other terms and conditions of employment.

110. By its conduct as set forth herein above, Defendants, through supervisory employees, discriminated against Plaintiffs in the terms, conditions, and privileges of their employment because of their race in violation of human rights laws.

111. As a direct result of the above-complained violative conduct by Defendants and their employees, Plaintiffs were deprived of equal employment opportunities, sustained emotional and psychological distress, and was caused to incur pecuniary and non-pecuniary losses, lost wages, past and future, attorney's fees, and costs.

112. The foregoing conduct constitutes illegal discrimination prohibited by the Administrative Code of the City of New York ("NYCAC") § 8-107.

## SEVENTH CLAIM FOR RELIEF
### (Sex Discrimination – New York City Human Rights Law – Disparate Impact)

113. Plaintiffs repeat and reallege each allegation contained in all other paragraphs of this Complaint as though fully set forth herein.

114. Defendants have further cemented disparity between men and women which includes disparity in employment positions, promotions, compensation, and other terms and conditions of employment.

115. This system has an adverse impact on female employees and is not, and cannot be, justified by business necessity. Even if such system could be justified by business necessity, less discriminatory alternatives exist and would equally serve any alleged necessity.

116. The foregoing conduct constitutes illegal discrimination prohibited by the Administrative Code of the City of New York ("NYCAC") § 8-107.

## EIGHTH CLAIM FOR RELIEF
### (42 U.S.C. § 1983 Claim)

117. Plaintiffs repeat and reallege each allegation contained in all other paragraphs of this Complaint as though fully set forth herein.

118. Defendants at all times relevant to this action were acting under color of state law.

119. Plaintiffs' civil and constitutional rights were violated as alleged herein.

120. The violation of Plaintiffs' rights resulted from a municipal policy or custom, namely, but not limited to, the requirement that Sanitation Police Officers can only come from the pool of active Sanitation Workers or Sanitation Supervisors.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court:

A. Grant a permanent injunction enjoining Defendants from engaging in the ongoing

employment practices violating state and federal law;

    B.    Order Defendants to institute and carry out policies, programs and practices which provide equal employment opportunities for all employees of Defendant to eradicate the effects of the ongoing violations of federal law;

    C.    An award of compensatory damages, including lost back pay and benefits with prejudgment interest (retroactive payments, retroactive pension contributions, and return to top of pay scale), past and future lost wages and benefits, past and future pecuniary losses and compensatory damages, and for attorney's fees, and costs; and

    D.    Such other and further relief as the Court deems just and proper.

## **JURY TRIAL**

Plaintiff demands a trial by jury on all issues properly before this Court and all questions of fact raised by this Complaint.

Dated: New York, New York
        November 17, 2022

Respectfully,

Seelig Law Offices, LLC
By:
    /s/ *Philip H. Seelig*
Philip H. Seelig, Esq.
Matthew J. Porcaro, Esq.
299 Broadway, Suite 1600
New York, New York 10007
(212) 766-0600

Moser Law Firm P.C.
By:
    /s/ *Steven Moser*
Steven Moser, Esq.
5 East Main Street
Huntington, NY 11743
(516) 671-1150
steven.moser@moserlawfirm.com
*Attorneys for Plaintiffs*