22 Civ. 6284 (ALC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAMEKA DOWDY, JEFFREY HUNTER, SEAN
MILAN, JOEL PURSER, SANDRA CASTRO, CECELIA
ROJAS, KEVON CHISHOLM, RICHARD ORTEGA,
MARISOL CONCEPCION, ROBERT TABON,
RASHEEN ODOM, CARMELITA GORDON-
FLEETWOOD, and RAYMOND PACHECO,
On behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF SANITATION,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE FIRST
AMENDED CLASS ACTION COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-105/2-184*
*New York, N.Y.  10007*

*Of Counsel:  Soo-Young Shin,*
*Angela Wanslow*
*Tel:  (212) 356-2434/2441*
*Matter No.:  2022-044833*

Soo-Young Shin,
Angela Wanslow,
Bruce Rosenbaum,
  Of Counsel.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................... **ERROR! BOOKMARK NOT DEFINED.**

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF FACTS ......................................................................... 2

ARGUMENT ........................................................................................ 7

    POINT I ......................................................................................... 7

        THE NEW YORK CITY DEPARTMENT OF
        SANITATION MUST BE DISMISSED FROM
        THIS ACTION ............................................................................ 7

    POINT II ........................................................................................ 7

        PLAINTIFFS FAIL TO STATE A PLAUSIBLE
        TITLE VII DISPARATE IMPACT CLAIM ............................... 7

        A.   Plaintiffs Lack Standing To Bring A Disparate
             Impact Claim On Behalf Of Either Themselves
             Or A Putative Class. ....................................................... 7

        B.   Plaintiffs Fail To State A Plausible Title VII
             Disparate Impact Claim ................................................. 9

    POINT III ...................................................................................... 13

        PLAINTIFFS FAIL TO PLAUSIBLY PLEAD
        DISPARATE IMPACT CLAIMS UNDER THE
        SHRL AND CHRL .................................................................. 13

    POINT IV ...................................................................................... 14

        PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A
        CLAIM PURSUANT TO THE EQUAL PAY ACT ............... 14

    POINT V ....................................................................................... 20

        PLAINTIFFS HAVE NOT PLAUSIBLY
        ALLEGED A 42 U.S.C. § 1983 MUNICIPAL
        LIABILITY CLAIM ................................................................ 20

CONCLUSION ................................................................................... 23

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Brown v. Coach Stores,
  163 F.3d 706 (2d Cir. 1998)...........................................................................9, 10

Burgis v. Dep't of Sanitation City of N.Y.,
  No. 13 Civ. 1011 (TPG), 2014 WL 1303447, 2014 U.S. Dist. LEXIS 44759
  (S.D.N.Y. Mar. 31, 2014), aff'd, Burgis v. N.Y.C. Dep't of Sanitation, 798
  F.3d 63 (2d Cir. 2015)...........................................................................................7

Chambers v. Time Warner, Inc.,
  282 F.3d 147 (2d Cir. 2002)..................................................................................2

Chen-Oster v. Goldman, Sachs & Co.,
  2022 WL 3586460, 2022 U.S. Dist. LEXIS 150548 (S.D.N.Y. Aug. 22, 2022).......................8

Corning Glass Works v. Brennan,
  417 U.S. 188 (1974).............................................................................................14

DiFolco v. MSNBC Cable, L.L.C.,
  622 F.3d 104 (2d Cir. 2010)..................................................................................3

EEOC v. Port Auth. of N.Y. and N.J.,
  768 F.3d 247 (2d. Cir. 2014)..............................................................14, 15, 16, 17

Eng v. City of N.Y.,
  No. 15 Civ. 1282 (DAB), 2017 U.S. Dist. LEXIS 49520
  (S.D.N.Y. Mar. 29, 2017), aff'd, 715 Fed. Appx. 49 (2d Cir. 2017).....................17

Frasier v. General Electric Co.,
  930 F.2d 1004 (2d Cir. 1991).................................................................................16

Houser v. Pritzker,
  28 F. Supp. 3d 222 (S.D.N.Y. 2014).......................................................................8

In re Initial Pub. Offering Sec. Litig.,
  471 F.3d 24 (2d Cir. 2006), decision clarified on denial of reh'g, 483 F.3d 70
  (2d Cir. 2007)........................................................................................................8

Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,
  62 F.3d 69 (2d Cir. 1995).......................................................................................3

Lehman v. Bergmann Assocs.,
  11 F. Supp. 3d 408 (W.D.N.Y. 2014) ....................................................................20

Malone v. N.Y. Pressman's Union No. 2,
  No. 07-CIV-9583 (LTS)(GWG), 2011 WL 2150551,
  2011 U.S. Dist. LEXIS 58247 (S.D.N.Y. May 31, 2022).......................................12

Mandala v. NTT Data, Inc.,
  975 F.3d 202 (2d Cir. 2020)...............................................................................9, 12

Ricci v. DeStefano,
  557 U.S. 557 (2009).................................................................................................9

Rivera v. Children's & Women's Physicians of Westchester, LLP,
  No. 16 Civ. 714 (PGG), 2017 U.S. Dist. LEXIS 39527
  (S.D.N.Y. Mar. 18, 2017) .....................................................................................20

Saunders v. Queensborough Cmty. Coll.,
  No. 13 CV 5617 (PKC), 2015 WL 5655719, 2015 U.S. Dist. LEXIS 128608
  (E.D.N.Y. Sept. 24, 2015)......................................................................................15

Smith v. City of Jackson,
  544 U.S. 228 (2004)...............................................................................................10

Suzuki v. State University of N.Y. College at Old Westbury,
  No. 08 CV 4569 (TCP), 2013 WL 2898135, 2013 U.S. Dist. LEXIS 83555
  (E.D.N.Y. June 13, 2013) .............................................................................15, 16, 20

Syeed v. Bloomberg L.P.,
  No. 20 Civ. 7464 (GHW), 2022 WL 3447987, 2022 U.S. Dist. LEXIS 147563
  (S.D.N.Y. Aug. 17, 2022) .................................................................................13, 14

Trezza v. Hartford, Inc.,
  98 Civ. 2205 (MBM), 1998 U.S. Dist. LEXIS 20206
  (S.D.N.Y. Dec. 28, 1998).......................................................................................12

United Prob. Officers Ass'n v. City of N.Y.,
  No. 21 Civ. 0218 (RA), 2022 WL 875864, 2022 U.S. Dist. LEXIS 53606
  (S.D.N.Y. Mar. 24, 2022) ............................................................................. passim

Wal-Mart Stores, Inc. v. Dukes,
  564 U.S. 338 (2011)...............................................................................................10

Weinreb v. Xerox Bus. Servs., LLC,
  323 F. Supp. 3d 501 (S.D.N.Y. 2018)....................................................................20

Wu v. Good Samaritan Hosp. Med. Ctr.,
  No. 17 CV 4247 (SJF) (ARL), 2019 WL 4364440, 2019 U.S. Dist. LEXIS
  39733 (E.D.N.Y. Mar. 8, 2019), adopted in relevant part, 2019 WL 2754865,
  2019 U.S. Dist. LEXIS 110720, at *13 (E.D.N.Y. July 2, 2019), aff'd, 815
  Fed. Appx. 575 (2d Cir. 2020) .........................................................................15, 20

**Statutes**

29 U.S.C. § 206(d)(1) ................................................................................................14

42 U.S.C. § 1983 ........................................................................................................20

42 U.S.C. § 2000-e2(k)(1)(A)(i) ..................................................................................9

N.Y. Crim. Proc. Law § 2.10(59) ..............................................................................18

N.Y. Crim. Proc. Law § 2.20 .....................................................................................18

N.Y. Crim. Proc. Law § 2.30 .....................................................................................18

N.Y. Crim. Proc. Law § 140.25 .................................................................................18

**Other Authorities**

29 C.F.R. 1620.13(e) .................................................................................................15

New York City Charter § 396 ......................................................................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

DAMEKA DOWDY, et al.,

                              Plaintiffs,

                                      No. 22 Civ. 6284 (ALC)

            – against –

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF SANITATION,

                             Defendants.
-------------------------------------------------------------------- x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

### PRELIMINARY STATEMENT

Plaintiffs Dameka Dowdy, Jeffrey Hunter, Sean Milan, Joel Purser, Sandra Castro, Cecelia Rojas, Kevon Chisholm, Richard Ortega, Marisol Concepcion, Robert Tabon, Rasheen Odom, Carmelita Gordon-Fleetwood, and Raymond Pacheco, non-white men and women employed by the City of New York ("the City") with the New York City Department of Sanitation ("DSNY") as Sanitation Enforcement Agents or Associate Sanitation Enforcement Agents (collectively referred to as "SEAs"), bring this putative class action against the City and DSNY, alleging that the City discriminates and compensates SEAs less than Sanitation Workers ("SWs") for substantially equal work in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("SHRL"), the New York City Human Rights Law ("CHRL"), the Equal Pay Act of 1963 ("EPA"), and 42 U.S.C. § 1983 ("§ 1983"). Specifically, plaintiffs allege (1) that the DSNY's requirement that only SWs may be assigned to perform duties as Sanitation Police Officers ("SPOs"), in other words, requiring that SEAs pass the civil service

examination for SWs and otherwise meet the requirements for SWs, acts as an artificial barrier to entry as a SPOs and has a disparate impact on SEA women and minorities and (2) that SWs assigned to perform duties as SPOs perform equal work as SEAs but are compensated more than SEAs.

Defendants now move to dismiss the First Amended Class Action Complaint ("FAC") in its entirety pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure. At the threshold, DSNY is not a suable entity and must be dismissed.  Plaintiffs further lack standing to pursue their disparate impact claims.  Moreover, Plaintiffs' disparate impact claims brought under Title VII, SHRL, and CHRL must be dismissed as the FAC is devoid of any plausible allegations of the requisite causal connection between the complained of DSNY policy or practice and the alleged disparity.  Plaintiffs' Equal Pay Act claim fails because plaintiffs have not asserted anything more than conclusory allegations of wage discrimination and have failed to allege that male SPO employees performed a substantially equivalent job duty to the female SEA plaintiffs.  Plaintiffs' § 1983 claim fails as plaintiffs have not alleged any intentional discrimination and a § 1983 claim cannot  be brought to vindicate rights conferred by Title VII or the Equal Pay Act.

### STATEMENT OF FACTS[1]

DSNY employs Sanitation Enforcement Agents, under the civil service titles of Sanitation Enforcement Agents ("SEAs") or Associate Sanitation Enforcement Agents

---

[1] This statement of facts is derived from allegations made in the First Amended Class Action Complaint (ECF Dkt. No. 14) and material allegations set forth therein are assumed to be true for purposes of this motion to dismiss only.  In addition, Defendants rely upon the exhibits annexed to the Declaration of Assistant Corporation Counsel Soo-Young Shin dated February 14, 2023 ("Shin Decl.").  On a 12(b) motion, the Court may consider: (1) documents that plaintiff attached to the pleadings; (2) documents to which plaintiff referred in the complaint; (3) matters of which judicial notice may be taken; (4) documents in plaintiff's possession; and (5) documents of which plaintiff had knowledge and upon which plaintiff relied in bringing the action.  See Chambers v.

("ASEAs").  ECF Dkt. No. 14, FAC, ¶ 29.  The named plaintiffs are or were SEAs or ASEAs.  Id.,
¶ 6.  Plaintiff Dowdy is a black female, in the position of ASEA I, with a rate of pay of
approximately $43,000 after 15 years of service with DSNY.  Id., ¶ 9.  Plaintiff Hunter is a Native
American male, in the position of ASEA II, with a rate of pay of approximately $49,163 after 33
years of service with DSNY.  Id., ¶ 10.  Plaintiff Milan is a black male, in the position of ASEA I,
with a rate of pay of approximately $47,441 after 14 years of service with DSNY.  Id., ¶ 11.
Plaintiff Purser is a black male, in the position of ASEA I, with a rate of pay of approximately
$43,290 after 30 years of service with DSNY.  Id., ¶ 12.  Plaintiff Castro is a black female, in the
position of SEA, with a rate of pay of approximately $46,805 after 18 years of service with DSNY.
Id., ¶ 13.  Plaintiff Rojas is a black female, in the position of ASEA I, with a rate of pay of
approximately $49,545 after 33 years of service with DSNY.  Id., ¶ 14.  Plaintiff Chisholm is a
black female, in the position of SEA, with a rate of pay of approximately $46,805 after 15 years
of service with DSNY.  Id., ¶ 15.  Plaintiff Ortega is a Hispanic male, in the position of ASEA II,
with a rate of pay of approximately $49,122 after 29 years of service with DSNY.  Id., ¶ 16.
Plaintiff Concepcion is a Hispanic female, in the position of ASEA I, with a rate of pay of
approximately $43,249 after 14 years of service with DSNY.  Id., ¶ 17.  Plaintiff Tabon is a black
male, in the position of ASEA I, with a rate of pay of approximately $43,407 after 36 years of

---

Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); DiFolco v. MSNBC Cable, L.L.C., 622 F.3d
104, 111 (2d Cir. 2010) ("[w]here a document is not incorporated by reference, the Court may
nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby
rendering the document 'integral' to the complaint") (citations and internal quotations omitted).
Defendants annex Exhibits A-C to the Shin Decl. copies of Notices of Examination ("NOE") for
the positions at issue -- Sanitation Worker, Sanitation Enforcement Agents, and Associate
Sanitation Enforcement  -- which are matters on which the Court may take judicial notice.
Defendants further annex as Exhibit D to the Shin Decl. a copy of a DSNY Department Message
for Sanitation Police Officer Positions, which plaintiffs quoted from in ¶ 65 of the First Amended
Class Action Complaint, and which is hence incorporated by reference.  See Int'l Audiotext
Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

service with DSNY.  Id., ¶ 18.  Plaintiff Odom is a black male, in the position of ASEA I, with a rate of pay of approximately $43,249 after 18 years of service with DSNY.  Id., ¶ 19.

Plaintiffs allege that the job duties of Enforcement Agents include issuing criminal summonses and Environmental Control Board ("ECB") summonses.  Id., ¶ 30.  Plaintiffs further allege that additional duties of Enforcement Agents include issuing parking summons, investigating complaints, enforcing regulations, testifying in court, and effecting arrests.  Id., ¶ 31.  Plaintiffs allege that Enforcement Agents also "have" investigated illegal dumping and "have" conducted vehicle stops.  Id., ¶ 32.

Plaintiffs allege that DSNY also employs Sanitation Workers ("SWs") and that certain SWs are designated as Sanitation Police ("SPOs").  Id., ¶¶ 33-34.  Plaintiffs allege that Sanitation Police and Enforcement Agents enforce the same laws and both issue summonses, investigate complaints, testify in court, effect arrests, and enforce regulations.  Id., ¶¶ 35-36.  Plaintiffs further allege that Enforcement Agents "have" trained Sanitation Police.  Plaintiffs allege that Enforcement Agents and Sanitation Police perform work requiring equal skill, effort, and responsibility under similar working conditions and that they have the same responsibilities and job functions.  Id., ¶¶ 38-39.

Plaintiffs allege that Enforcement Agents are overwhelmingly minorities and allege upon information and belief that the pool of SWs that are used to form the Sanitation Police are greater than 50% white and male.  Id., ¶ 40.  Plaintiffs allege that "only" 3.26% of SWs are female, and based on "plaintiffs' best estimates," allege that Enforcement Agents are approximately 40% female.  Id., ¶¶ 41-42.  Plaintiffs allege that "at least" 51.63% of SWs are white, and based on "plaintiffs' best estimates," allege that Enforcement Agents are approximately 16% white.  Id., ¶¶ 43-44.  Plaintiffs allege based on "plaintiffs' best estimates," that "there are more than three times

as many black Enforcement Agents (64%) as black Sanitation Police (20%)." Id., ¶ 46.  Plaintiffs further  allege based on "plaintiffs' best estimates," that "there are more than twice as many female Enforcement Agents (40%) as female Sanitation Police (17%)." Id., ¶ 47.  Plaintiffs allege that "a vast disparity exists in the sex and race makeup" between the pool of SWs, which is where SPOs are taken from, and the "general qualified population or of the actual population of the people with the skills and experience who want to be Sanitation Police (Enforcement Agents)." Id., ¶ 45.

Plaintiffs allege that Sanitation Police are paid higher wages and are provided better benefits  than  Enforcement  Agents.  Id., ¶ 48.   Plaintiffs  allege  that  Sanitation  Police  receive $77,318 after 5.5 years of service in contrast to Enforcement Agents, many of whom are receiving less than $45,000 after 15 or 30 years of service. Id., ¶¶ 49-50.  Plaintiffs further allege that there are other contractual benefits that Enforcement Agents do not receive but Sanitation Police do. Id., ¶ 51.  Lastly, plaintiffs allege that the compensation discrepancies affect Enforcement Agents into their retirement and their pensions will be lower due to the lower Final Average Salary. Id., ¶ 52.

Plaintiffs allege that only Sanitation Workers can become Sanitation Police, and therefore any Enforcement Agent who wishes to become a Sanitation Police Officer must take the Sanitation Worker civil service examination and meet the requirements to be a Sanitation Worker; there is no civil service examination to become a Sanitation Police Officer.  Id., ¶¶ 54-55, 59. Plaintiffs allege that the qualifications of a Sanitation Worker include lifting and carrying bags and cans up to 100 or 150 pounds, walking, climbing, pulling, driving, and having and maintain a commercial driver's license ("CDL"). Id., ¶ 56.  Plaintiffs allege that having and maintain a CDL and lifting and carrying bags and cans up to 150 pounds several times per hour is not necessary to perform Sanitation Police duties. Id., ¶¶ 57-58.

Plaintiffs allege that one named plaintiff, Plaintiff Tabon, attempted and was denied the opportunity to become a Sanitation Police Officer twice, once in the 1980s because Plaintiff Tabon did not meet the requirements to become a Sanitation Worker and in the 1990s, Plaintiff Tabon did pass the Sanitation Worker but then failed to qualify for a CDL.  Id., ¶¶ 60-61.  Plaintiffs further allege that the requirement that an Enforcement Agent become a Sanitation Worker before being eligible to be a Sanitation Police "dissuaded and discouraged" Enforcement Agents from seeking the Sanitation Police position. [2]  Id., ¶ 64.  Plaintiffs allege that this is because even if an Enforcement Agent successfully became a Sanitation Worker, there would be no guarantee that the "Enforcement Agent turned Sanitation Worker" would receive a Sanitation Police position, which would mean that this person would "risked having to perform garbage collection at night, or drive a large truck, indefinitely" and also be placed on probationary status again.  Id.  Plaintiffs further allege that "information provided by DSNY suggested that Enforcement Agents were not able to apply for the Sanitation Police position" as emails sent by DSNY specifically excluded Enforcement Agents, reading "If you are seriously interested to become a Sanitation Police Officer, and are employed by the Department of Sanitation in the civil service title of Sanitation Worker, send your resume…" and this was never offered to those employed in the civil service titles of SEA and ASEA.  Id., ¶ 65.  Of course Plaintiffs fail to state, the obvious, that there would be no reason to send such an email to employees who were not already SWs, a precondition for consideration to be a SPO.

---

[2] Defendants would note that the NOE for SW positions specifies that DSNY employees in the titles of SEA and ASEA with three or more years of satisfactory experience qualify for Selective Certification and may be given preferred consideration for appointment to positions requiring SEA and ASEA experience; hence SEAs and ASEAs may actually be conferred a benefit for their experience.  See Exh. A, NOE for SW, p. 6.

Plaintiffs allege that DSNY's requirement that an individual become a Sanitation Worker becoming Sanitation Police is an artificial barrier to entry and has a disparate impact on minorities and females.  Id., ¶¶ 55, 62, 66-68.  Plaintiffs further allege that the "wage and benefit disparity between Enforcement Agents and Sanitation Police has a disparate impact on minorities and females."  Id., ¶ 68.

<u>ARGUMENT</u>

POINT I

## THE NEW YORK CITY DEPARTMENT OF SANITATION MUST BE DISMISSED FROM THIS ACTION

As a threshold matter, the New York City Department of Sanitation, as an agency of the City of New York, is not an entity that can be sued and must be dismissed from this action. See NYC Charter § 396; see also Burgis v. Dep't of Sanitation City of N.Y., No. 13 Civ. 1011 (TPG), 2014 WL 1303447, 2014 U.S. Dist. LEXIS 44759, at *12 (S.D.N.Y. Mar. 31, 2014), aff'd, Burgis v. N.Y.C. Dep't of Sanitation, 798 F.3d 63, 66 n.3 (2d Cir. 2015) (dismissing claims against DSNY as it is not a suable entity and construing claims as though asserted against the City of New York).

POINT II

## PLAINTIFFS FAIL TO STATE A PLAUSIBLE TITLE VII DISPARATE IMPACT CLAIM

**A.   Plaintiffs Lack Standing To Bring A Disparate Impact Claim On Behalf Of Either Themselves Or A Putative Class.**

First, Plaintiffs lack standing to bring a disparate impact claim on behalf of either themselves or a putative class.[3]  The "threshold question" to consider when deciding if a plaintiff

_____

[3] Defendants do not address Plaintiffs' putative class action allegations in this memorandum of law since there is no pending motion by either party seeking or opposing class certification.  See

has Article III standing is whether the plaintiff has adequately "alleged an 'injury-in-fact' that is fairly traceable to the challenged conduct and redressable by a favorable judicial decision." Chen-Oster v. Goldman, Sachs & Co., 2022 WL 3586460, 2022 U.S. Dist. LEXIS 150548, at *9 (S.D.N.Y. Aug. 22, 2022) (quoting Lerman v. Bd. of Elections, 232 F.3d 135, 143 n.9 (2d Cir. 2000)).   "In the class action context, the Supreme Court recently clarified that '[e]very class member must have Article III standing in order to *recover* individual damages.'"  Id. at *10 (quoting TransUnion v. Ramirez, ___ U.S. ___,141 S. Ct. 2190, 2208 (2021) (emphasis added)).

To determine whether a plaintiff has an injury-in-fact for standing purposes in a Title VII disparate impact case, a plaintiff "need not allege that he would have obtained the benefit but for the barrier, but simply that the barrier prevented him from  competing on an equal footing." See Houser v. Pritzker, 28 F. Supp. 3d 222, 237 (S.D.N.Y. 2014).  However, here, Plaintiffs do not plead that they ever attempted and were denied the opportunity to become an SPO.[4]  See id. at 239 (finding that three of the plaintiffs would not have been eligible to compete for employment, they could not have been considered for hire, and consequently cannot demonstrate an injury-in-fact sufficient to prove Article III standing, and must be dismissed from this action).  See also United Prob. Officers Ass'n v. City of N.Y., No. 21 Civ. 0218 (RA), 2022 WL 875864, 2022 U.S. Dist. LEXIS 53606, at *19-20 (S.D.N.Y. Mar. 24, 2022) ("Nor do Plaintiffs allege that female

---

generally In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 41-42 (2d Cir. 2006), decision clarified on denial of reh'g, 483 F.3d 70 (2d Cir. 2007).  Should such a motion be made, Defendants reserve their right to oppose class certification at that time.

[4] The FAC does allege that "Plaintiff Tabon applied to become a Sanitation Worker in the 1980s and again in the 1990s. In the 1980s, Tabon did not meet the requirements. In the 1990s, Plaintiff Tabon passed the Sanitation Worker examination, but then failed to qualify for a CDL."  See ECF Dkt. No. 14, FAC, ¶ 61.  However, the FAC contains no allegations that, since "the 1990s," any of the named Plaintiffs or any other putative class member applied to become a Sanitation Worker under the applicable civil service exam or that any minority or female Sanitation Worker applied to become a Sanitation Police Officer.  See generally ECF Dkt. No. 14, FAC.

Probation Officers of color took the examination but did not receive a qualifying score because the exam itself is discriminatory, or that they were deterred from taking the exam—either of which could potentially support their claim.").  Likewise, Plaintiffs do not plead with any factual specificity that the qualifications for becoming an SPO -- which require, at minimum, appointment as a Sanitation Worker -- created a barrier that prevented them from competing for SPO positions on an equal footing.  See id.  As such, they have failed to demonstrate an injury-in-fact sufficient to confer statutory standing under Title VII, the SHRL, or the CHRL.

**B.      Plaintiffs Fail To State A Plausible Title VII Disparate Impact Claim**

Title VII prohibits "employers' facially neutral practices that, in fact, are discriminatory in operation."  Ricci v. DeStefano, 557 U.S. 557, 577-78 (2009).  To establish a *prima facie* violation, a plaintiff must show that the employer "uses a particular employment practice that causes a disparate impact on the basis of race, color,  religion, sex, or national origin." 42 U.S.C. § 2000-e2(k)(1)(A)(i).  To establish a *prima facie* case of disparate impact, a plaintiff must: (1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two.  See Brown v. Coach Stores, 163 F.3d 706, 712 (2d Cir. 1998).  "Allegations which contend only that there is a bottom-line racial imbalance in the work force are insufficient."  Id.  A plaintiff, at the motion to dismiss stage, "must at least set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim."  Mandala v. NTT Data, Inc., 975 F.3d 202, 209 (2d Cir. 2020).  However, this burden is somewhat greater than the "minimal support" burden in disparate treatment claims. United Prob. Officers Ass'n., 2022 WL 875864, 2022 U.S. Dist. LEXIS 53606, at *17 (citing Mandala, 975 F.3d at 209 n.3).

While "'[a] plaintiff may rely solely on statistical evidence to establish a prima facie case of disparate impact,' [] that evidence 'must reflect a disparity so great that it cannot be

accounted for by chance.'  In other words, the evidence 'must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity.'"  Id. (quoting E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus., 186 F.3d 110, 117 (2d Cir. 1999) and Mandala, 975 F.3d at 209).

Courts will routinely dismiss disparate impact claims where plaintiffs fail to adequately allege a causal connection between any facially neutral policy and the alleged disparity. See Smith v. City of Jackson, 544 U.S. 228, 241 (2004) ("[i]t is not enough to simply allege that there is a disparate impact on workers or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities"); Brown, 163 F.3d at 712-13 (dismissing disparate impact claim where plaintiff did not connect alleged statistical disparities to a policy of the employer); Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 357 (2011) ("Other than the bare existence of delegated discretion, respondents have identified no 'specific employment practice'—much less one that ties all their 1.5 million claims together.  Merely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice.").

Here, plaintiffs plead that the practice or policy of selecting SPOs from SWs has caused a discriminatory disparity in operation.  However, all plaintiffs do in support is make the conclusory allegation that the selection of SPOs from the pool of qualified SWs is an "artificial barrier to entry."  ECF Dkt. No. 14, FAC, ¶¶ 55, 66.  As noted *supra* at n.2, however, DSNY employees in the titles of SEA and ASEA with three or more years of satisfactory experience qualify for Selective Certification and may be given preferred consideration for appointment to certain positions requiring SEA and ASEA experience.  See Exh. A, NOE for SW, p. 6.  Therefore, SEAs and ASEAs may actually be conferred a benefit for their experience, and hence the claim

that the selection of SPOs from the pool of qualified SWs is a "barrier" is without merit.  Plaintiffs make no allegations that the Sanitation Worker civil service exam is itself somehow discriminatory, or that female or minority SEAs are somehow prevented from taking this exam.

Nor are the statistics alleged by plaintiffs, without any citations, the proper statistics for consideration.  The statistics as to the percentage of female and white Sanitation Workers, 3.26% and 51.63% respectively, does not indicate in any way that the Sanitation Worker civil service examination itself has a disparate impact on female and minority populations let alone female or minority SEAs.  ECF Dkt. No. 14, FAC, ¶¶ 41, 43.  Nor does the allegation that, in comparison to the aforementioned percentages of female and white Sanitation Workers, "best estimates" are that approximately 40% of Enforcement Agents are female and that 16% are white, indicate in any way that the Sanitation Worker civil service examination itself has a disparate impact on female and minority populations.  ECF Dkt. No. 14, FAC, ¶¶ 42, 44.  Plaintiff also allege that there are three times as many black Enforcement Agents as black Sanitation Police[5], and twice as many female Enforcement Agents as female Sanitation Police.  ECF Dkt. No. 14, FAC, ¶¶ 46-47.  Based on this, the plaintiffs then allege, in conclusory fashion, that "a vast disparity exists in the sex and race makeup between the pool of Sanitation Workers (which is the only place where Sanitation Police are taken from) and the general qualified population or of the actual population of the people with the skills and experience who want to be Sanitation Police (Enforcement Agents)."  ECF Dkt. No. 14, FAC, ¶ 45.  Plaintiffs are not alleging any statistics that actually support this conclusion.

---

[5] Defendants would also note that plaintiffs only provide this comparative statistic for black Enforcement Agents and Sanitation Police and not as to all minority races.

However, Plaintiffs fail to plead that a disparity exists between the composition of the relevant labor market of the qualified population (i.e. persons appointed as Sanitation Workers and those ultimately selected to become SPOs). See Mandala, 975 F.3d at 210. Nor is the group of SEAs employed with DSNY the relevant labor market for determining whether a facially neutral DSNY policy regarding the selection of candidates for SPO positions has a disparate impact on women and minorities. See id., 975 F.3d at 211-212. "Evidence of a racial or sexual imbalance in the workforce alone—without proof that such imbalance is the result of discrimination—is insufficient to establish a prima facie case of discrimination." Trezza v. Hartford, Inc., 98 Civ. 2205 (MBM), 1998 U.S. Dist. LEXIS 20206, at *23 (S.D.N.Y. Dec. 28, 1998).

Also fatal to the plaintiffs' disparate impact claim is that plaintiffs have failed to allege facts showing any causal link between the minimum qualifications of becoming a Sanitation Worker, and by extension an SPO, to the alleged disparity in the female and minority populations of Sanitation Workers. There are simply no allegations to support a claim that passing the civil service test, obtaining a CDL, and/or meeting certain physical requirements puts non-white or female applicants at a disadvantage. See Malone v. N.Y. Pressman's Union No. 2, No. 07-CIV-9583 (LTS)(GWG), 2011 WL 2150551, 2011 U.S. Dist. LEXIS 58247, at *22 (S.D.N.Y. May 31, 2022) ("No facts are plead that demonstrate that the complained-of, facially neutral policies affect minority and female Juniors and Casuals more harshly than they affect white Juniors and Casuals."). To show the requisite causal link between a City policy or practice and any resulting disparate impact, allegations regarding the relevant pool of qualified applicants are necessary. See United Prob. Officers Ass'n., 2022 WL 875864, 2022 U.S. Dist. LEXIS 53606, at *19-20.

In United Prob. Officers Ass'n v. City of N.Y., female Probation Officers of color who had not taken the requisite exam to be promoted, and therefore were not eligible for promotions, alleged that the City's policies or practices regarding promotions resulted in a

disparate impact.  Id.  The Court held that without allegations that the female Probation Officers of color who were not promoted were eligible for promotions, the Court cannot rely on statistics alone showing the disparity of women and people of color in supervisory roles to infer that any disparate impact on these individuals was caused by a particular practice.  Id.  The Court's reasoning in dismissing the disparate impact claim in United Prob. Officers Ass'n v. City of N.Y. is equally applicable to the allegations in this matter and supports the dismissal of this claim.

Furthermore, even if plaintiffs had established the relevant pool of applicants and a causal connection – it is unclear if the plaintiffs themselves then would be the correct population to be bringing this suit.  Other than one named individual, plaintiff Tabon, who alleges that he actually attempted to become a Sanitation Worker in the 1980s and 1990s, but failed to qualify (ECF Dkt. No. 14, FAC, ¶¶ 61-62), none of the other plaintiffs even allege that they have attempted to become Sanitation Workers.  Rather, plaintiffs complain that taking the Sanitation Worker exam would subject them to risk actually working as Sanitation Workers.  ECF Dkt. No. 14, FAC, ¶ 64.

## POINT III

### PLAINTIFFS FAIL TO PLAUSIBLY PLEAD DISPARATE IMPACT CLAIMS UNDER THE SHRL AND CHRL

Since the 2019 amendment of the SHRL, disparate impact claims under the SHRL are analyzed under the CHRL standard.  See Syeed v. Bloomberg L.P., No. 20 Civ. 7464 (GHW), 2022 WL 3447987, 2022 U.S. Dist. LEXIS 147563, at *26 (S.D.N.Y. Aug. 17, 2022).  Under the CHRL, "a plaintiff 'must establish that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of [the NYCHRL]].'"  Id. (quoting Fitchett v. City of N.Y., No. 18 Civ. 8144 (PAE), 2021 WL 964972, 2021 U.S. Dist. LEXIS 47763, at *60 (S.D.N.Y. Mar. 15, 2021)).  The three factors analyzed for a *prima facie* case under Title VII are the same, however, the claims are

"'construed more liberally than their counterparts under Title VII' and the previous version of the NYSHRL."  Id. (citing Fichett, 2021 WL 964972, 2021 U.S. Dist. LEXIS 47763, at *60-61). Despite this liberal construction, plaintiffs' disparate impact claims under SHRL and CHRL must still allege that the identified practice is causally connected to the alleged disparity. See id., 2022 WL 3447987, 2022 U.S. Dist. LEXIS 147563, at *27-29 (dismissing the disparate impact claims under the SHRL and CHRL because plaintiff did not sufficiently allege that the Executive Management Committee's decision to set and raise journalist's salaries was causally connected to the gender pay disparity in journalists at the defendant company).

Here, as discussed *supra*, plaintiffs have failed to allege *any* facts to establish any casual connection between the minimum qualifications of becoming a Sanitation Worker, and by extension an SPO, to the alleged disparity in the female and minority populations of Sanitation Workers.  Therefore, plaintiffs' claims under the SHRL and CHRL must fail.

### POINT IV

### PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A CLAIM PURSUANT TO THE EQUAL PAY ACT

The EPA prohibits an employer from discriminating against its employees by paying different wages to males and females who perform "equal work."  29 U.S.C. § 206(d)(1). Here, at the outset, only the plaintiffs alleged to be female, Dowdy, Castro, Rojas, Chisholm, Concepcion, and Gordon-Fleetwood, may bring an EPA claim.  ECF Dkt. No. 14, FAC, ¶¶ 9, 13-15, 17, 20.  In order to state a *prima facie* case of salary discrimination "a plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions."  EEOC v. Port Auth. of N.Y. and N.J., 768 F.3d 247, 254-255 (2d. Cir. 2014) (internal citations and quotations omitted); see also Corning

Glass Works v. Brennan, 417 U.S. 188, 195 (1974); Suzuki v. State University of N.Y. College at Old Westbury, No. 08 CV 4569 (TCP), 2013 WL 2898135, 2013 U.S. Dist. LEXIS 83555, at *8 (E.D.N.Y. June 13, 2013).

The standard is "demanding," and in order to plead the second element, "a plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job *content* was 'substantially equal.'  Such factual allegations are necessary to provide 'fair notice [to the defendant] of the basis for [the plaintiff's] claims.'"  Port Auth. of N.Y. and N.J., 768 F.3d at 256.  "Jobs that are merely 'comparable' are insufficient" to show a violation of the EPA."  Saunders v. Queensborough Cmty. Coll., No. 13 CV 5617 (PKC), 2015 WL 5655719, 2015 U.S. Dist. LEXIS 128608, at *26-27 (E.D.N.Y. Sept. 24, 2015).  "[A] successful EPA claim depends on the comparison of actual job content; broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice."  Port Auth. of N.Y. and N.J., 768 F.3d at 256.  Indeed, the EEOC's regulations provide that the "[a]pplication of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance."  29 C.F.R. 1620.13(e).

"Bald assertions that male employees were paid more than female employees . . . will not survive a motion to dismiss, particularly in light of the standards set forth in [Twombly]."  Suzuki, 2013 WL 2898135, 2013 U.S. Dist. LEXIS 83555, at *9; see also Wu v. Good Samaritan Hosp. Med. Ctr., No. 17 CV 4247 (SJF) (ARL), 2019 WL 4364440, 2019 U.S. Dist. LEXIS 39733, at *29 (E.D.N.Y. Mar. 8, 2019) ("Plaintiff's unsupported 'belief' that male employees were receiving higher compensation is insufficient at even the pleading stage. . . ."), adopted in relevant part, 2019 WL 2754865, 2019 U.S. Dist. LEXIS 110720, at *13 (E.D.N.Y. July 2, 2019) (Because

plaintiff has not alleged any facts upon which her beliefs that male employees were receiving higher compensation are founded, Magistrate Judge Lindsay correctly found that her conclusory allegations are insufficient to state a plausible claim of wage discrimination under the EPA and NYLL.), aff'd, 815 Fed. Appx. 575 (2d Cir. 2020).

Even before Iqbal and Twombly, "the Second Circuit and district courts expressly held that such conclusory allegations could not withstand a Rule 12(b)(6) motion to dismiss an EPA claim." Suzuki, 2013 WL 2898135, 2013 U.S. Dist. LEXIS 83555, at *10; see, e.g., Frasier v. General Electric Co., 930 F.2d 1004, 1008 (2d Cir. 1991). Further, "district courts have also dismissed EPA claims where a plaintiff failed to allege how his or her position and the comparison position were substantially similar." Suzuki, 2013 WL 2898135, 2013 U.S. Dist. LEXIS 83555, at *10.

The Second Circuit's decision in EEOC v. Port Authority of N.Y. and N.J., 768 F.3d 247 (2d. Cir. 2014), is instructive. In that case, the Second Circuit concluded that shared job codes were not entitled to any weight in support of an EPA claim, because titles "are not a reflection of job content." Id. at 252, 256. There, the court rejected the EEOC's "an attorney is an attorney is an attorney" theory to support its allegations that the "Port Authority paid its female nonsupervisory attorneys less than its male nonsupervisory attorneys 'for substantially equal work,' that these attorneys had 'the same job code,' and that the disparity in pay 'cannot be attributed to factors other than sex. . . .'" Id. at 256. In ruling on the motion to dismiss, the Second Circuit found that the EEOC failed to allege any factual content to support an inference that all attorney positions were equal and dismissed the EEOC's claims because "bald recitation of the elements of an EPA claim and its assertion that attorneys at issue held the 'same job code' are plainly insufficient to support a claim under the EPA." Id. at 256.

The Second Circuit's reasoning in <u>Port Authority</u> is applicable to this matter and supports dismissal of this claim.  Plaintiffs' EPA claim fails because they have not asserted anything more than conclusory allegations of wage discrimination and have significantly failed to allege that the male employees performed a substantially equivalent job duty.  <u>See</u> <u>Eng v. City of N.Y.</u>, No. 15 Civ. 1282 (DAB), 2017 U.S. Dist. LEXIS 49520, *9 (S.D.N.Y. Mar. 29, 2017), <u>aff'd</u>, 715 Fed. Appx. 49 (2d Cir. 2017) (dismissing EPA claim where plaintiff "provides no factual allegations that would allow the Court to compare her job duties, skill and experience with those of the comparators.").  Here, plaintiffs merely allege that SPOs and SEAs "enforce the same laws," "both issue summonses, investigate complaints, testify in court, effect arrests[6], and enforce regulations," and reach the legal conclusion that SEAs "perform work requiring equal skill, effort, and responsibility under similar working conditions" and "have the same responsibilities and carry out the same job functions" as SPOs.  ECF Dkt. No. 14, FAC, ¶¶ 35-39.[7]  Plaintiffs fail to identify any comparable males to female SEAs, other than the general class of SPOs.  These allegations do not suffice to state a claim for violation of the EPA because "such bland abstractions – untethered from allegations regarding . . . *actual* job duties – say nothing about whether the [employees] were required to perform 'substantially equal' work" and "such broad generalizations based on mere job classifications are not cognizable under the EPA."  <u>Port Authority</u>, 768 F.3d at 257.  Nowhere do plaintiffs allege any non-conclusory **facts** suggesting their position, experience, skills, and

---

[6] Defendants note that unlike the other duties alleged in the FAC as being performed by SEAs, which are described in the NOE for SEAs, there is no mention of SEAs effecting arrests or having arrest powers in the NOE for SEAs.  <u>See</u> Exh. B, NOE for SEA; Exh. C, NOE for ASEA.

[7] Defendants would note that in describing SEAs' job duties, plaintiffs at times elect to use passive voice in describing SEAs investigative and vehicle stop duties: "have investigated illegal dumping and have conducted vehicle stops."  ECF Dkt. No. 14, FAC, ¶ 32.  This suggests that SEAs may no longer be assigned these duties or, are not assigned these duties on a regular basis.

responsibilities were substantially equal to those of male SPOs.  Merely alleging generally that SPOs and SEAs "enforce the same laws" and listing certain similar duties while repeating the standard for an EPA claim is insufficient to state a claim for violation of the EPA.  Allowing such vague, conclusory statements that SPOs and SEAs allegedly "enforce the same laws," "both issue summonses, investigate complaints, testify in court, effect arrests, and enforce regulations," to fashion an EPA claim would lead to absurd results – the same could be said about SEAs and traffic enforcement agents or police officers.

In fact, this Court should take judicial notice of the fact that Sanitation Police Officers are designated as Peace Officers under New York State Criminal Procedure Law ("CPL") § 2.10(59), unlike SEAs.  Therefore, unlike SEAs, Sanitation Police Officers have powers as Peace Officers, as articulated in § 2.20 of the CPL, which include amongst others: under § 2.20(1)(a), "the power to make warrantless arrests pursuant to § 140.25" (as per § 140.25, including when there is reasonable cause to believe that a person has committed a crime whether in the officer's presence or not); under § 2.20(1)(b), "the power to use physical force and deadly physical force in making an arrest or preventing an escape…";  and under § 2.20(1)(c), "the power to carry out warrantless searches whenever such searches are constitutionally permissible and acting pursuant to their special duties."  N.Y. CPL § 2.20; see also N.Y. CPL § 140.25.  Pursuant to § 2.30, as Peace Officers, Sanitation Police Officers are mandated to undergo and meet certain training requirements.  See N.Y. CPL § 2.30.  Because Sanitation Police Officers are designated as Peace Officers, applicants are required to submit various information which is subject to review as part of the application process, such as arrest history, background investigation by the Inspector General's Office, medical record review by the Medical Division, as detailed in the Department Message regarding Sanitation Police Officer Positions.  See Exh. D, Department Message for

18

Sanitation Police Officer Positions.   Candidates are also required to pass a psychological examination and those accepted to be Sanitation Police Officers are required to complete a fourteen week Sanitation Police Training Program, including on the use of firearms.   See id.   While plaintiffs attempt to cherry-pick and highlight certain duties to try to draw parallels between Sanitation Enforcement Agents and Sanitation Police Officers, it is clear from the CPL that Sanitation Police Officers are fundamentally different from SEAs as designated Peace Officers.

Furthermore, plaintiffs themselves acknowledge that SPOs are SWs, and hence are required to take a different civil service examination than SEAs and require different qualifications and duties, "among other things, the ability to lift and carry bags and cans up to 100 or 150 pounds dozens of times per hour, walking, climbing pulling, and driving, including having and maintaining a commercial driver's license."   ECF Dkt. No. 14, FAC, ¶ 56.   It is clear from comparing the Notice of Examinations for SEA positions and SW positions, as well as the Department Message for Sanitation Police Officers, that the positions materially differ in their responsibilities.   See Exh. D, Department Message for Sanitation Police Officer Positions; compare Exh. A, NOE for SW, to Exh. B, NOE for SEA, and Exh. C, NOE for ASEA.   Hence, while the plaintiffs assert in conclusory fashion that SEAs and SPOs perform equal work, plaintiffs also admit that material job responsibilities of SWs, and therefore SPOs, are different – complaining that even if plaintiffs were to pass the Sanitation Worker civil service exam and meet all requirements, that they would first be assigned to the Sanitation Worker position and would not be guaranteed a SPO position, and therefore "risked having to perform garbage collection at night, or drive a large truck, indefinitely." ECF Dkt. No. 14, FAC, ¶ 64.   Since SPOs are Sanitation Workers and therefore have met the additional qualifications necessary to be a Sanitation Worker, such as the physical requirements and maintaining a CDL, and could at any time be assigned to Sanitation Worker duties, and the

plaintiffs have not met these qualifications and do not perform the duties of Sanitation Workers, plaintiffs cannot claim that they perform equal work requiring equal skill, effort, and responsibility and perform jobs under similar working conditions.

Without any facts to support the inference that female SEA plaintiffs' positions are substantially similar to that of male SPOs or that their responsibilities were substantially equal, "courts routinely dismissed EPA claims pled in this formulaic fashion."  Lehman v. Bergmann Assocs., 11 F. Supp. 3d 408, 420 (W.D.N.Y. 2014); see, e.g., Weinreb v. Xerox Bus. Servs., LLC, 323 F. Supp. 3d 501, 519 (S.D.N.Y. 2018) ("Given the complete absence of any factual allegations whatsoever relating to actual job content or working conditions, the Court dismisses Plaintiffs' EPA claims as a matter of law."); Wu, 2019 WL 4364440, 2019 U.S. Dist. LEXIS 39733, at *29 (citing cases); Rivera v. Children's & Women's Physicians of Westchester, LLP, No. 16 Civ. 714 (PGG), 2017 U.S. Dist. LEXIS 39527, at *27-28 (S.D.N.Y. Mar. 18, 2017);  Suzuki, 2013 WL 2898135, 2013 U.S. Dist. LEXIS 83555, at *10-11 (dismissing EPA claim because the complaint "contains no factual allegations about plaintiff's or her comparator's positions" and "does not identify any male faculty members in her department during the relevant time with similar experience who earned more for substantially similar work").

### POINT V

### PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED A 42 U.S.C. § 1983 MUNICIPAL LIABILITY CLAIM

42 U.S.C. § 1983, in pertinent part, allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Significantly though, in order to pursue an employment discrimination claim under § 1983, unlike their disparate

impact claims, Plaintiffs must plausibly plead that they were subjected to **intentional** discrimination on the basis of their protected status (in this case either race or gender). Equal protection claims under § 1983[8] cannot be based solely on the alleged disparate impact of a facially neutral policy. It is well established that proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Therefore, a plaintiff pursuing a claimed denial of equal protection under § 1983 must show that the discrimination was intentional. See Reynolds v. Barrett, 685 F.3d 193, 201 (2d Cir. 2012).

Further, a municipality may not be held liable under § 1983 solely on a respondeat superior theory. Monell v. Dep't of Social Services, 436 U.S. 658, 691 (1978); Patterson v. County of Oneida, 375 F.3d 206, 226, (2d Cir. 2004). Rather, a plaintiff who seeks to recover against a municipality or individual sued in their official capacities under § 1983 must show that the violation of his constitutional rights resulted from a municipal policy or custom. Monell, 436 U.S. at 694. Accordingly, "the plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries. . . .Second, the plaintiff must establish a casual connection—an affirmative link—between the policy and deprivation of his constitutional rights." Guerrero v. City of N.Y., No. 12 Civ. 2916 (RWS), 2013 WL 673872, 2013 U.S. Dist. LEXIS 25476, at *2 (S.D.N.Y. Feb. 25, 2013).

Section 1983 "is not itself a source of substantive rights." Patterson, 375 F.3d at 225 (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). It merely provides "a method for vindicating federal rights elsewhere conferred." Id. A § 1983 action may not, however, be brought

---

[8] Defendants note that Plaintiffs' § 1983 claim merely alleges that Plaintiffs' "civil and constitutional rights were violated," without specifying any particular alleged violation, Defendants are proceeding on the assumption that Plaintiffs are articulating a claimed intentional violation of their right to Equal Protection under the Fourteenth Amendment.

to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII or the Equal Pay Act.  Patterson, 375 F.3d at 225 (citing Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 143 (2d Cir. 1993) ("A plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant")).

As noted above, the only possible alleged deprivation of rights that plaintiffs could be relying on in order to invoke a § 1983 claim is a violation of the Equal Protection Clause; however, plaintiffs fail to state a claim under § 1983 based on a violation of the Equal Protection Clause because they have not alleged that defendants engaged in intentional discrimination (i.e., disparate treatment).  See Bailey v. City of N.Y., No. 98 Civ. 1812 (LBS), 2003 WL 21031972, 2003 U.S. Dist. LEXIS 7254, at *20 (S.D.N.Y. May 2, 2003) (A valid Equal Protection claim "require[s] proof of intentional discrimination."); Reynolds v. Barrett, 685 F.3d 193, 201 (2d Cir. 2012) ("a plaintiff pursuing a claimed violation of § 1981 or a denial of equal protection under § 1983 must show that the discrimination was intentional.").  Here, as discussed supra, plaintiffs have failed to plausibly plead intentional race or gender discrimination, but rather pursue all claims under a disparate impact theory.  Hence, plaintiffs have utterly failed to establish the requisite discriminatory intent for their § 1983 claim.

In support of their § 1983 claim, plaintiffs simply allege that defendants "were acting under color of state law" when the "[p]laintiffs' civil and constitutional rights were violated as alleged herein," which resulted from "a municipal policy or custom . . . the requirement that Sanitation Police Officers can only come from the pool of active Sanitation Workers or Sanitation Supervisors."  ECF Dkt. No. 14, FAC, ¶¶ 118-120.  As discussed supra, plaintiffs' claims are brought under the Equal Pay Act and as disparate impact claims pursuant to Title VII.  As a matter of law, plaintiffs' § 1983 claim must be dismissed because plaintiffs cannot bring a § 1983 action

for alleged violations of Title VII nor the Equal Pay Act.  Furthermore, plaintiffs fail to plead the requisite intentional discrimination to pursue a claim under § 1983 based on a violation of the Equal Protection Clause.  See Patterson, 375 F.3d at 226.  As such, plaintiffs' claims under § 1983 must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant this motion and dismiss the First Amended Class Action Complaint in its entirety together with such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          February 14, 2023

                              **HON. SYLVIA O. HINDS-RADIX**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-105/2-184
                              New York, New York 10007
                              (212) 356-2434/(212) 356-2441
                              soshin@law.nyc.gov/awanslow@law.nyc.gov

                              By:    */s/ Soo-Young Shin*
                                     Soo-Young Shin
                                     Assistant Corporation Counsel

                              By:    */s/ Angela Wanslow*
                                     Angela Wanslow
                                     Assistant Corporation Counsel

Bruce Rosenbaum,
Soo-Young Shin,
Angela Wanslow,
  Of Counsel.

23