| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | No. 22-cv-6284-ALC |

------------------------------------------------------------------------ X
DAMEKA DOWDY, JEFFREY HUNTER, SEAN MILAN, :
JOEL PURSER, SANDRA CASTRO, CECELIA ROJAS, :
KEVON CHISHOLM, RICHARD ORTEGA, MARISOL :
CONCEPCION, ROBERT TABON, RASHEEN ODOM, :
CARMELITA GORDON-FLEETWOOD, and RAYMOND :
PACHECO, :
　　　　　　　　　　　　　　　　　　　　　　　:
On behalf of themselves and all others similarly situated, :
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiffs, :
　　-against- :
　　　　　　　　　　　　　　　　　　　　　　　:
THE CITY OF NEW YORK, NEW YORK CITY :
DEPARTMENT OF SANITATION, :
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendants. :
------------------------------------------------------------------------ X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

SEELIG LAW OFFICES, LLC
Philip H. Seelig, Esq.
Matthew J. Porcaro, Esq.
*Attorneys for Plaintiff*
299 Broadway, Suite 1600
New York, New York 10007
(212) 766-0600

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL STANDARD .............................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................ 4

    I.    PLAINTIFFS HAVE STATED A PLAUSIBLE DISPARATE IMPACT CLAIM ........... 4

        a. Standing ...................................................................................................................... 4

        b. Selective Certification ................................................................................................ 6

        c. Causation .................................................................................................................... 7

    II.    PLAINTIFFS HAVE STATED A PLAUSIBLE EQUAL PAY ACT CLAIM .............. 9

    III.    42 U.S.C. § 1983 ...................................................................................................... 13

CONCLUSION ....................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Am. Fedn. of State, County & Mun. Emples. v. County of Nassau*, 609 F. Supp. 695, 707-708 (E.D.N.Y. 1985) .................................................................................................................. 11

*Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 503 (E.D.N.Y.2001) ............. 10

*Bayerische Landesbank v. Aladdin Capital Mgmt.*, 692 F.3d 42, 51–53 (2d Cir. 2012) ................ 1

*Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) .................................. 12

*Brown v. Coach Stores*, 163 F.3d 706, 712 (2d Cir. 1998) ............................................................ 8

*Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) ............................................................... 2

*EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 252 (2d Cir. 2014) ........................................ 12

*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) ............................................................ 11

*Hayden v. Paterson*, 594 F.3d 150, 168, n.14 (2d Cir. 2010) ........................................................ 7

*Hoover v. Ronwin*, 466 U.S. 558, 587 (1984) ................................................................................ 1

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 367 (E.D.N.Y. 2010) ............................................................................................................. 7

*Intl. Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-366 (1977) ...................................... 5

*Jamalik v. Yale University*, 2009 U.S. App. LEXIS 22144 (2d Cir. 2009) .................................. 10

*Jenkins v NY City Tr. Auth.*, 646 F Supp 2d 464, 469 (S.D.N.Y. 2009) ........................................ 8

*Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 449 (D.C. Cir. 1976) ...................................... 10

*Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) ............................................ 10

*Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990) ................................................. 8

*Smith v. Xerox Corp.*, 196 F.3d 358, 365 (2d Cir. 1999) ............................................................... 8

*Staehr v. Hartford Fin. Servs. Group., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ............................. 6

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11, (2002) .................................................... 8, 12

*Tomka v. Seiler Corp.*, 66 F.3d 1295, 1311 (2d Cir 1995) ............................................................. 10

*United Prob. Officers Ass'n.*, 2022 WL 875864, 2022 U.S. Dist. LEXIS 53606 ........................... 9

*Watson Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988) ....................................... 8

**Statutes**

29 U.S.C. § 206(d)(1) ...................................................................................................................... 9

42 U.S.C. § 1983 ........................................................................................................................... 13

**Rules**

Fed. R. Evid. 201(b), (f) .................................................................................................................. 7

**Regulations**

29 C.F.R. § 1620.14 (1994) ..................................................................................................... 10, 12

**PRELIMINARY STATEMENT**

Plaintiffs Dameka Dowdy, Jeffrey Hunter, Sean Milan, Joel Purser, Sandra Castro, Cecelia Rojas, Kevon Chisholm, Richard Ortega, Marisol Concepcion, Robert Tabon, Rasheen Odom, Carmelita Gordon-Fleetwood, and Raymond Pacheco, on behalf of themselves and all others similarly situated, by their attorneys, Seelig Law Offices, LLC, and Moser Law Firm, P.C., oppose this motion to dismiss made by the City of New York ("City") and the New York City Department of Sanitation ("DSNY").

At the outset, it is important to note that Defendants' improperly make arguments and dispute facts that are outside the four corners of the First Amended Complaint, attempt to set a pleading standard far higher than notice pleading requires, and prematurely make arguments that would be more appropriate for a summary judgment motion after the close of discovery.

Plaintiffs have stated a plausible claim pursuant to Title VII and the human rights laws that Defendants' policy to appoint Sanitation Police Officers solely from a pool of Sanitation Workers has caused a disparate impact on Sanitation Enforcement women and minorities. In addition, Plaintiffs have stated a plausible claim pursuant to the Equal Pay Act of 1963 that Sanitation Police Officers and Sanitation Enforcement perform substantially equal work (a fact-intensive inquiry) and are not equally paid.

**LEGAL STANDARD**

On a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See *Bayerische Landesbank v. Aladdin Capital Mgmt.*, 692 F.3d 42, 51–53 (2d Cir. 2012). "A federal court may not dismiss a complaint for failure to state a claim unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Hoover v. Ronwin*, 466 U.S. 558, 587 (1984). "This rule applies with particular force where the plaintiff

1

alleges civil rights violations . . . ." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

## STATEMENT OF FACTS

The thirteen (13) Plaintiffs in this action are civil service employees working for the City of New York ("City") in the Department of Sanitation ("DSNY"). Their civil service title within the Department of Sanitation is or was Sanitation Enforcement Agent ("SEA") or Associate Sanitation Enforcement Agent ("ASEA") (collectively, "Enforcement Agents"). *See* FAC ¶¶ 6-21. All of the Plaintiffs are non-white and have or had a rate of pay at the time of filing a charge with the EEOC of between $40,000 and $50,000. *Id.* The Department of Sanitation employs Enforcement Agents to issue summonses, investigate complaints, testify in court, effect arrests, and enforce regulations. *See* FAC ¶¶ 29-39.

The Department of Sanitation also employs "Sanitation Workers" in the civil service title of Sanitation Worker. Most Sanitation Workers perform collection by driving or riding in large commercial vehicles lifting and carrying bags, cans, or other items weighing up to 150 pounds several times an hour. Sanitation Workers performing collection duties are required to lift and carry items dozens of times per hour up to 100 to 150 pounds, and maintain a CDL. *Id.* ¶¶ 53-64. A subset of those employed in the civil service title of Sanitation Worker are appointed as "Sanitation Police" but are still in the civil service title of Sanitation Worker. *Id.* They perform the same responsibilities and functions as Enforcement Agents by issuing summonses and enforcing the same regulations, which also means that they no longer have to perform the heavy lifting and carrying of a Sanitation Worker performing collection. *Id.* 30-39. The Sanitation Police Officers are compensated over twice as much as Enforcement Agents for the same work, receiving $77,318 after 5.5 years of service. *Id.* ¶¶ 48-49. It is impossible for Enforcement

2

Agents to become Sanitation Police unless they can meet the totally unrelated physical, CDL, and civil service qualifications, to achieve the Sanitation Worker civil service title. *Id.* ¶¶ 65-68.

Enforcement Agents are prevented from directly applying to work as Sanitation Police. The Department will only appoint Sanitation Police Officers from those currently serving as Sanitation Workers who wish to apply. *Id.* ¶ 64-65. It is worth keeping in mind that the job skills and requirements of the heavy labor of a Sanitation Worker job (i.e. heavy lifting and carrying, driving a commercial vehicle and meeting the DOT requirements including regarding medication, and other exam requirements) have nothing to do with enforcement duties and skills. *Id.* ¶ 67. Many of the Plaintiffs in this action and many Enforcement Agents simply do not wish to take the Sanitation Worker examination or would not qualify to be Sanitation Workers. *Id.* ¶ 64. There was no guarantee that a person who gives up their title of Enforcement Agent to become a Sanitation Worker would ever become a Sanitation Police Officer. *Id.*

The disparate impact and unequal pay arises simply from the fact that the pool of Sanitation Workers that the Department exclusively uses to appoint Sanitation Police is less diverse than the Enforcement Agents. *Id.* ¶¶ 40-47. The City has begun to realize that this appointment methodology is problematic, which is why in 2022 they instituted a "Selective Certification" procedure to apparently allow for a streamlined path for Enforcement Agents to become Sanitation Police. Def. Br. at 10. But this was not pleaded in the complaint and new facts should not be considered. In any event, this new 2022 policy cannot affect the retroactive damages to which Plaintiffs are entitled. Moreover, those seeking a Selective Certification still have to meet the other requirements in the Notice of Examination including lifting, carrying, commercial driver's license, and the like, so this new procedure does not solve the problem.

Plaintiffs allege that Enforcement Agents are overwhelmingly minorities, but the pool of Sanitation Workers that are exclusively used to form the Sanitation Police are greater than 50% white. FAC ¶ 40. Furthermore, only 3.26% of Sanitation Workers are female. *Id.* ¶ 41. Plaintiffs have alleged that there are approximately twice as many female Enforcement Agents (40%) as female Sanitation Police (17%), FAC ¶ 47. The City of New York has a policy where the only applicants that will be considered for Sanitation Police must be a member of a pool that contains 3.26% women, which is simply unfair and discriminatory. There is no reason they cannot take applications from Enforcement Agents, who already have the skills for the job, unlike Sanitation Workers. The disparity that exists within the Sanitation Police as compared to the Enforcement Agents, both doing substantially equal work enforcing the Sanitation regulations, is clearly caused by this policy.

## ARGUMENT

I. **PLAINTIFFS HAVE STATED A PLAUSIBLE DISPARATE IMPACT CLAIM**

   **a. Standing**

Plaintiffs adequately alleged that they have suffered an injury due to the artificial barrier erected by the City of New York requiring that applicants qualify to become Sanitation Workers before being considered for the Sanitation Police. By only selecting Sanitation Police Officers from a less-diverse pool of Sanitation Workers instead of from the general public or from the pool of the more-diverse Enforcement Agents, the City has engaged in discrimination based upon disparate impact regarding sex and race.

In its brief, the City admits that Title VII disparate impact standing can be supported by a barrier that prevents Enforcement Agents from competing on equal footing. Def. Br. at 8. The City further argues that Plaintiffs "do not plead that they ever attempted and were denied the opportunity to become an SPO." *Id.* But this is precisely the point that Plaintiffs are making.

4

There is, in fact, no way to apply to become an SPO. FAC ¶¶ 53-54, 59. One first has to apply, qualify, and be chosen to become a Sanitation Worker first. Then, one has to apply for an appointment to a Sanitation Police Officer position. FAC ¶¶ 53-64. Becoming a Sanitation Worker is not a simple task, and it is not desirable nor even possible for many Enforcement Agents. *Id.* A Sanitation Worker must meet the physical requirements of lifting and carrying bags, cans, and other items weighing up to 150 pounds, which may be impossible for certain individuals. *Id.* An Enforcement Agent or Sanitation Police Officer does not have those lifting and carrying requirements. *Id.* A Sanitation Worker must also qualify for a Commercial Driver's License (CDL), which means that there certain medications that cannot be taken. *Id.* A person may not be comfortable taking a road test to the drive a large truck, which has nothing to do with the Sanitation Police job. A Sanitation Worker must perform collection of refuse if they are never appointed to become an SPO, which many Enforcement Agents simply do not wish to do. FAC ¶¶ 53-64. Therefore, Plaintiffs and their similarly-situated coworkers have been deterred from applying to become Sanitation Workers.

      The U.S. Supreme Court has stated: "The effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity. A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection." *Intl. Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-366 (1977). Multiple plaintiffs have refrained from applying to become a Sanitation Worker because they believed they might not qualify or did not wish to become a Sanitation Worker. FAC ¶ 64. Plaintiff Tabon was rejected because he did not meet the physical requirements of being a Sanitation Worker, but he would have met all of the

5

requirements of a Sanitation Police Officer. *Id.* ¶¶ 60-61. Ultimately, Plaintiffs have successfully identified the specific employment practice and policy at issue in this case and have demonstrated that they have been aggrieved by it.

**b. Selective Certification**

Defendants argue new facts not found in the Complaint, specifically, that there is a "Selective Certification" process that gives preferred consideration to Sanitation Worker applicants for "positions requiring SEA and ASEA experience." Def. Br. at 10, fn. 2; Def. Ex. A at 6. What Defendants fail to disclose to the Court is the date that they created the "Selective Certification" process. It was announced to the public on or about June 7, 2022,[1] well after the thirteen (13) Plaintiffs filed their charges with the Equal Employment Opportunity Commission (EEOC) on February 4, 2021, complaining about the discriminatory impact of Defendants' exact policy. Considering that plaintiffs and their similarly-situated coworkers are entitled to seek damages for a time period at least two years prior to 2021, it is disingenuous for Defendants to argue that a brand new policy in 2022 could possibly dismiss the entire lawsuit. There is a reason that extrinsic facts and exhibits are not permitted on a motion to dismiss, which is so that the Court does not have to decide disputed facts and uncertain exhibits before the benefit of discovery. At the motion to dismiss stage, only the facts alleged or relied upon in the complaint may be considered, with certain very limited exceptions. *See Staehr v. Hartford Fin. Servs. Group., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (summarizing the general rule that a district court may not look outside the complaint and the documents attached thereto in ruling on a Rule 12(b) motion to dismiss, other than certain matters of which judicial notice may be taken). Defendants have attached four exhibits to their motion to dismiss for the apparent purpose of making this

---

[1] https://www.nyc.gov/site/dcas/news/22-005/become-new-york-city-sanitation-worker-your-community-your-family-you- (Press Release June 7, 2022: announcing the new Sanitation Worker exam and stating that "More than 80,000 people took the Sanitation Worker exam when it was last offered in 2015").

6

Selective Certification counter-argument rather than accepting Plaintiffs' allegations as true for the purposes of this motion. However, the Court should reject Defendants' invitation to decide facts at the pleading stage and should instead permit discovery to go forward on all claims. Judicial notice may be taken only for facts that are "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (f); *see also In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 367 (E.D.N.Y. 2010) (citing *Hayden v. Paterson*, 594 F.3d 150 168 n.14 (2d Cir. 2010)). If the Court is inclined to take judicial notice of certain facts in Defendants' exhibits, we ask the Court to take judicial notice of the prior Notice of Examination from 2014, for test date February 7, 2015, which had no Selective Certification process. *See* Plaintiff's Ex. A, annexed hereto.[2] This means that there was no Selective Certification at all between 2015 and June 2022, and Defendants' arguments cannot dismiss the claims. Nothing about Selective Certification was mentioned in the First Amended Complaint and therefore the City's attempt to bring misleading and prejudicial partial facts into its motion to dismiss should be stricken and disregarded by the Court as extrinsic to the Complaint, and also not persuasive once the actual facts are known. Moreover, those seeking a Selective Certification still have to meet the other requirements in the Notice of Examination including lifting, carrying, commercial driver's license, and the like, so this new procedure does not remove the barrier.

### c. Causation

Plaintiffs have established a *prima facie* case of disparate impact because they can allege the specific employment policy that caused the statistical disparity. Defendants attempt to set a

---

[2] This document is publicly-accessible at https://www.nyc.gov/assets/dcas/downloads/pdf/noes/201505001000.pdf We ask the Court to review our exhibit as a rebuttal to Defendants' exhibits. If the Court believes there is no justification to consider this document, we request leave to amend our Complaint to add it as an exhibit, if necessary.

7

pleading standard far higher than notice pleading requires, and prematurely make arguments that would be more appropriate for a summary judgment motion after the close of discovery. To establish a causal relationship between the employment practice and this observed disparity, the plaintiff's statistical evidence must reveal a disparity that is "sufficiently substantial to raise an inference of causation." *See Smith v. Xerox Corp.*, 196 F.3d 358, 365 (2d Cir. 1999). "To the extent the defendants' argument is that a plaintiff must provide statistical support for a disparate impact claim in order to survive a motion to dismiss, that argument is incorrect. It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery." *See Jenkins v NY City Tr. Auth.*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009) quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002).

One way to establish causation is to identify "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of [a particular group] because of their membership in a protected group." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990) (emphasis added) (citing *Watson Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). The statistical disparities must be sufficiently significant that they "raise … an inference of causation." *Id.*

To establish a *prima facie* case of disparate impact, there is a three prong requirement that a plaintiff: (1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two. *See Brown v. Coach Stores*, 163 F.3d 706, 712 (2d Cir. 1998). As to the first prong, Plaintiffs have identified the specific employment practice as the appointment of Sanitation Police solely from the pool of Sanitation Workers. FAC ¶¶ 53-68. As to the second prong, Plaintiffs have provided statistics

8

which show the disparity relating to that pool of Sanitation Workers. *Id.* ¶¶ 40-47. As to the third prong, regarding causation, for example, if 3.26% of Sanitation Workers are women (FAC ¶ 41), it is only logical that exclusively using that pool of applicants is going to *cause* Sanitation Police to have fewer women than if they appointed from the pool of Enforcement Agents or any other pool that had more than 3.26% of women. Plaintiffs have alleged that there are approximately twice as many female Enforcement Agents (40%) as female Sanitation Police (17%), FAC ¶ 47, and Plaintiff's have plausibly alleged that Defendants' policy caused that disparity.

Defendants cited to *United Prob. Officers Ass'n v. City of N.Y.*[3] for the proposition that statistics alone would not suffice where the plaintiffs were not eligible for promotion. Def. Br. at 12-13. This case is simply inapplicable to Plaintiffs' situation. Here, all of the Plaintiffs would qualify to be Sanitation Police Officers by virtue of their job being substantially equal and doing the same duties. What they might not qualify for is the unrelated job duties of a Sanitation Workers, which is physical labor, not enforcement and investigation. It is clear that Plaintiffs have adequately alleged that the City's policy has caused the disparate impact.

## II. PLAINTIFFS HAVE STATED A PLAUSIBLE EQUAL PAY ACT CLAIM

The Equal Pay Act (EPA) prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions. 29 U.S.C. § 206(d)(1). In order to establish a violation of the Equal Pay Act, a plaintiff must first establish a *prima facie* showing that: (1) the employer pays different wages to employees of a different sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and 3) the jobs are performed under similar

---

[3] *See United Prob. Officers Ass'n.*, 2022 WL 875864, 2022 U.S. Dist. LEXIS 53606, at *19-20.

working conditions. *See Lavin-McEleney v. Marist Coll.,* 239 F.3d 476, 480 (2d Cir. 2001) (citations omitted).

Application of the equal pay standard is not dependent on job classifications or titles. 29 C.F.R. §1620.13(e). Moreover, under the EPA, proof of an employer's discriminatory intent is not necessary for a plaintiff to prevail on a claim. A plaintiff is not required to demonstrate that her job is identical to a higher paid position, but rather must show that the two positions are "substantially equal" in skill, effort and responsibility. *See Lavin-McEleney,* 239 F.3d at 480 (citations omitted); *Bass v. World Wrestling Fed'n Entm't, Inc.,* 129 F. Supp. 2d 491, 503 (E.D.N.Y.2001) (citations and internal quotations omitted). Even if there are some differences in job duties, it requires a fact-intensive inquiry as to whether any differences are significant in setting the wage levels for the two jobs, as discussed by the EEOC regulations. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1311 (2d Cir. 1995) citing 29 C.F.R. § 1620.14 (1994) ("In determining whether job differences are so substantial as to make jobs unequal, it is pertinent to inquire whether and to what extent significance has been given to such differences in setting the wage levels for such jobs. Such an inquiry may … disclose that apparent differences between jobs have not been recognized as relevant for wage purposes.")[4]

The Second Circuit has continually held that courts should be reluctant to grant summary judgment on a Equal Pay Act claim. For example, the Second Circuit has held that whether two positions are substantially equivalent for Equal Pay Act purposes is a question of fact for the jury. *Lavin-McEleney*, 239 F.3d at 480. In *Jamalik v. Yale University*, 2009 U.S. App. LEXIS 22144 (2d Cir. 2009), the Second Circuit vacated and remanded a district court's granting of

---

[4] In discussing the EEOC regulations, the Second Circuit also referenced: *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 449 (D.C. Cir. 1976) (administrative interpretations of the EPA are entitled to great deference in applying the Act to given factual situations), *cert. denied*, 434 U.S. 1086, 55 L. Ed. 2d 792, 98 S. Ct. 1281 (1978).

summary judgment on an Equal Pay Act claim. In doing so, the Court held that "trial courts must be especially chary in handing out summary judgment in discrimination claims". *Id.*, at *2 (internal citations omitted). The Court further held that questions regarding the equivalence of two positions pursuant to an Equal Pay Act claim are best left to the trier of fact. *Id.*

In denying a motion to dismiss on EPA claims, "on a 12(b)(6) motion, the court is not free to weigh the evidence that might be presented at trial." *Am. Fedn. of State, County & Mun. Emples. v. County of Nassau*, 609 F. Supp. 695, 707-708 (E.D.N.Y. 1985), citing *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). In that case, the complaint was sufficiently particular in specifying the jobs plaintiffs intended to compare and gave defendants fair notice of plaintiff's claims, resulting in a denial of the motion to dismiss. *Id.* Here, Plaintiffs have given notice of the particular jobs to be compared as well as their specific job duties.

Defendants insist on discussing extrinsic facts based upon the job descriptions within the exhibits and challenging which job duties each title performs. But this is futile endeavor considering they have not included a job description for the Sanitation Police Officers. At a later time before the close of discovery, various Plaintiffs in this case will testify or submit affidavits that they do all of these duties as alleged in the FAC, but the Court is not able to consider those affidavits or allegations at this time. These arguments are not appropriate for a motion to dismiss. All that is required is that the FAC put Defendants on fair notice of the basis of Plaintiffs' claims including the jobs that will be compared, and Plaintiffs have supplied a description of the tasks performed.

Specifically, Defendants take issue with Plaintiffs' descriptions of their job duties arguing that the "passive voice" makes suggestions about how frequently or when these particular duties were assigned. Def. Br. at fn. 7. Plaintiffs will at a later time provide admissible evidence that

both jobs have investigated illegal dumping with details as to their frequency. But the exact frequency of each task on an average day and whether any slight differences will materially affect whether the jobs are "substantially equal" is clearly something that requires discovery and potentially a trial. *See* 29 C.F.R. § 1620.14 (1994) ("Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable."). There is no way to glean from the complaint and from Defendants' comments in their brief without discovery and depositions whether any differences are minor or not.

      Furthermore, the relevant inquiry is whether a particular employee *actually performs* a particular duty in practice, not what their title is nor what their job description states. *See EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 252 (2d Cir. 2014) (finding that there should be a focus on actual job content and not job title or job description); *see also Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11, (2002)) ("It is sufficient for the Commission to plead that Ms. Williams and Mr. Aresco performed substantially equal work—and yet were paid differently—without getting into the "equal skill, effort, and responsibility" or "similar working conditions" aspects of Section 206(d)(1). 'At the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case.'"). Therefore, it is not relevant to a motion to dismiss whether Sanitation Police Officers are technically qualified to do collection duties, since it has not been established that they actually ever perform that job function once they are appointed to the Sanitation Police, which is an issue for discovery. Additionally, the statutory peace officer status or absence will only be relevant at summary judgment as to whether duties requiring peace officer status are performed, how frequently, whether any

12

difference in legal status results in job differences, and whether those job differences are minor or not.

### III. 42 U.S.C. § 1983

Plaintiffs elect not to proceed with the cause of action alleging a 42 U.S.C. § 1983 municipal liability claim in order to focus on their claims for disparate impact regarding sex and race under Title VII and human rights laws, and the equal pay act claims. Additionally, as to Defendants' argument in Point I, Plaintiffs do not have an objection to the claims being construed against the "City of New York" rather than in the name of the agency.

## CONCLUSION

Based upon the foregoing, Defendants' Motion to Dismiss should be denied, except as to the 42 U.S.C. § 1983 claim for which Plaintiffs have elected not to proceed.

Plaintiffs have stated a plausible claim pursuant to Title VII and the human rights laws that Defendants' policy to appoint Sanitation Police Officers solely from a pool of Sanitation Workers has caused a disparate impact on Sanitation Enforcement women and minorities. In addition, Plaintiffs have stated a plausible claim pursuant to the Equal Pay Act of 1963 that Sanitation Police Officers and Sanitation Enforcement perform substantially equal work (a fact-intensive inquiry) and are not equally paid.

Dated: New York, New York
March 16, 2023

Respectfully submitted,
Seelig Law Offices, LLC
299 Broadway, Suite 1600
New York, New York 10007
(212) 766-0600

By: _____/s/ *Philip H. Seelig*_____
Philip H. Seelig, Esq.
Phil@pseeliglaw.com

13

By:     */s/ Matthew J. Porcaro*
       Matthew J. Porcaro, Esq.
       Matt@pseeliglaw.com

Moser Law Firm P.C.
5 East Main Street
Huntington, NY 11743
(516) 671-1150

By:     */s/ Steven Moser*
       Steven Moser, Esq.
       steven.moser@moserlawfirm.com

*Attorneys for Plaintiffs*

14