

August 21, 2023

<u>**Via E-Mail Only**</u>
Abigail H. Sole, Esq.
Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007

Philip H. Seelig, Esq.
Matthew J. Porcaro, Esq.
Seelig Law Offices, L.L.C.
299 Broadway, Suite 1600
New York, NY 10007

Re:   **City of New York**
      **and**
      **Law Enforcement Employees Benevolent Association Industries**
      **(Impasse Panel: Associate Sanitation Enforcement Agents / I-268-17)**

Dear Counsel:

      Enclosed please find the Opinion and Recommendation regarding the above referenced

matter.  I have also enclosed my bill for services rendered.

      Thank you.

                            Sincerely,

                            Martin F. Scheinman, Esq.

cc:   Renee Campion, Commissioner of Labor
      Jakwan Rivers, President

MFS/sk
City of New York.LEEBA.ASEA.I 268 17.trans

```
------------------------------------- X
In the Matter of the Arbitration
                                      X
          between
                                      X    Impasse Panel:
CITY OF NEW YORK                           Associate Sanitation
                                      X    Enforcement Agents
                  "City"
                                      X    I-268-17
          - and -
                                      X
LAW ENFORCEMENT EMPLOYEES BENEVOLENT
ASSOCIATION INDUSTRIES                X

               "Association"  X

------------------------------------- X
```

**APPEARANCES**

**FOR THE CITY**
Abigail H. Sole, Esq., Deputy General Counsel
City of New York, Office of Labor Relations


**FOR THE ASSOCIATION**
SEELIG LAW OFFICES, L.L.C.
  Philip H. Seelig, Esq., Of Counsel
  Matthew J. Porcaro, Esq., Of Counsel




**BEFORE:**   Renee Campion, Commissioner of Labor, appointed
              by the City
              Jakwan Rivers, President of the Association,
              appointed by the Association
              Martin F. Scheinman, Esq., Chairperson

## BACKGROUND

The Office of Collective Bargaining ("OCB") certified the Association to represent Associate Sanitation Enforcement Agents ("ASEAs") employed by the City of New York. They were earlier represented by the Communications Workers of America ("CWA"). After engaging in collective negotiations, the parties were at impasse over terms and conditions of employment for the periods 2010 - 2017 and 2017 - 2021. Their fundamental difference was whether the ASEAs were entitled to terms and conditions exceeding the civilian pattern applied to other bargaining units. On July 13, 2018, pursuant to Section 12 of the New York City Collective Bargaining Law, I was appointed as Chairperson of the Impasse Panel, to hear the parties' dispute and render a written report with findings of fact, conclusions of law and recommendations for terms of settlement.[1]

Hearings were held on February 14, 2019, and October 1, 2019, at the New York City Office of Labor Relations in New York City, and on May 16, 2022, via Zoom. At these times, the parties were afforded full opportunity to introduce evidence and argument in support of their respective positions. They did so. A stenographic record of the hearings was taken. Thereafter,

---

[1] While there was some transition while this matter was pending, Commissioner Renee Campion is the City appointed Panelist and Jakwan Rivers is the Association appointed Panelist.

and on July 8, 2022, the parties filed post hearing briefs. Upon my receipt of same, I declared the record closed.

**DISCUSSION AND FINDINGS**

**The Issues**:

The parties have presented the following basic issues for our consideration:

1. Whether the ASEAs should receive more than the established civilian Citywide pattern of wage increases for 2010 – 2017 and 2017 – 2021?

2. If so, what shall be our recommendation?

3. If not, what shall be our recommendation?

**Statutory Criteria**

**New York City Collective Bargaining Law**

*   *   *   *   *   *   *

**Section 12-311 c. Impasse panels**

*   *   *   *   *   *   *

**3(a) ... If an impasse panel is unable to resolve an impasse within a reasonable period of time, as determined by the director, it shall, within such period of time as the director prescribes, render a written report containing findings of fact, conclusions, and recommendations for terms of settlement.**

**(b). An impasse panel ... shall consider wherever relevant the following standards in making its recommendations for terms of settlement:**

**(i) Comparison of the wages, hours, fringe benefits, conditions and characteristics of employment of the public employees involved in the impasse proceeding with the wages, hours, fringe benefits, conditions and characteristics of employment of other employees performing similar work and other employees generally in public or private**

employment in New York City or comparable communities;

(ii) the overall compensation paid to the employees involved in the impasse proceeding, including direct wage compensation, overtime and premium pay, vacations, holidays and other excused time, insurance, pensions, medical and hospitalization benefits, food and apparel furnished, and all other benefits received;

(iii) changes in the average consumer prices for goods and services, commonly known as the cost of living;

(iv) the interest and welfare of the public;

(v) such other factors as are normally and customarily considered in the determination of wages, hours, fringe benefits, and other working conditions in collective bargaining or in impasse panel proceedings.

*  *  *  *  *  *  *

## Positions of the Parties

The Association argues ASEAs should be offered more than the civilian Citywide pattern. It contends Local Law 56 of 2005 confirms their status as uniformed employees and supports an entitlement to wages and benefits commensurate with Sanitation Police Officers, who, it claims, are Sanitation Workers assigned out of title to perform enforcement tasks in the non-Civil Service position of Sanitation Police Officer. The Association alleges ASEAs and Sanitation Police Officers both enforce the same administrative codes, wear the same uniform, issue summonses, make arrests, testify in court, supervise

4

subordinates and essentially do the same job. It points to testimony from ASEAs Jeffrey Hunter and Sean Milan in support of its position ASEAs perform duties comparable to Sanitation Police Officers. Although the Association claims Hunter has peace officer status, it acknowledges he is one (1) of fifty (50) ASEAs in the bargaining unit. It does not dispute Milan has no peace officer status. Nevertheless, the Association asserts other ASEAs have peace officer status and insists ASEAs have the same responsibilities as Sanitation Police and should be compensated as uniformed employees.

The Association points to a 2012 Impasse Award by Arbitrator Viani as establishing Environmental Police Officers are police officers involved in law enforcement and thereby entitled to wages and benefits commensurate with the uniformed services pattern of settlement. It emphasizes that Award was predicated upon evidence detailing the job duties of Environmental Police Officers as being comparable to duties performed by other Police Officers in the City's employ. The Association urges ASEAs have uniform status under the Collective Bargaining Law and should receive wages and benefits comparable to other uniformed bargaining units engaged in law enforcement. It disputes the City's contention granting the ASEAs wages and benefits above the civilian pattern will open the floodgates to

impasses and claims the Viani award did not cause an increase in bargaining impasses between the City and other bargaining units.

For the foregoing reasons, the Association argues this Panel should award, at a minimum, the uniformed services level of bargaining for the time period, 2010 to 2017, amounting to the civilian pattern plus an additional one (1%) percent increase on the twelfth month compounded, an additional 0.12% funding on the thirty eighth month, and advance of one (1%) percent to February 16, 2011, and an advance of 0.12% to April 16, 2013. The Association also requests an award granting ASEAs parity with Sanitation Police Supervisors, including paying ASEA I employees sixty thousand ($60,000) dollars after five (5) years in title, paying ASEA II employees seventy thousand ($70,000) dollars after five (5) years in title, and paying ASEA III employees eighty thousand ($80,000) dollars after five (5) years in title, all with the other economic benefits received by the Sanitation Supervisors.

As to the contract period covering 2017 – 2021, the Association again asserts the uniform pattern, and not the civilian pattern, should apply. The Association's justification is identical to the arguments it proffered regarding why the civilian pattern should not be awarded for the period 2010 – 2017.

For all the foregoing, the Association asks its members receive from the Impasse Panel a determination the uniform pattern should apply.

The City, on the other hand, argues the wage and benefit package offered to the Association for 2010 - 2017 and 2017 - 2021 is consistent with the pattern of settlements agreed to by unions representing almost all of the City's workforce and should be upheld. It contends the last contract for the ASEAs expired in 2010. The City maintains since that time, all of its more than one hundred fifty (150) separate bargaining units agreed to be covered by pattern conforming agreements for the 2010 - 2017, round of bargaining, except for the ASEAs and one other unit which together total only two hundred (200) employees out of a total represented work force of three hundred sixty one thousand (361,000) employees. The City asserts almost ninety three (93%) percent of its represented work force are covered by pattern conforming agreements for the 2017 - 2021, round of bargaining. It urges acceptance of pattern settlements by almost all bargaining units demonstrates the pattern is fair and reasonable. As further support for its position, the City points to impasse panel awards for the PBA and Local 621 bargaining units as establishing the pattern settlements offered for 2010 - 2017 provided reasonable improvements to the employees' terms and conditions of employment.

The City argues pattern increases offered to the ASEA will provide reasonable and competitive compensation and will provide ASEAs who have been with the City for the entire contract term a lump sum payment of approximately forty eight thousand ($48,000) dollars, not including overtime or applicable differentials. It contends the evidence developed during the hearings provides no compelling reason to disrupt the pattern by awarding wage increases higher than those accepted by nearly all other civilian bargaining units.

The City insists pattern bargaining is essential to labor stability. It alleges exceptions to the pattern are usually the result of severe recruitment and retention issues not present in the ASEA bargaining unit. The City claims it has experienced no difficulty hiring and retaining ASEAs, despite the long expired contract and lack of a wage increase since 2010.  It asserts in 2010, the City employed forty eight (48) ASEAs, and in 2020, it employed fifty (50) ASEAs, further demonstrating the ASEA headcount has remained stable over the last twelve (12) years. For all these reasons, the City insists its offer of the civilian pattern to the ASEAs should be upheld and the Association's above pattern demand rejected.

The City urges granting an above pattern wage and benefit package to the ASEAs will have a damaging impact upon the City's finances by bringing about claims for parity and demands for

above pattern settlements by other bargaining units. It suggests if the remaining Local Law 56 employees seek similar increases, the City would incur costs of approximately $350 million per year, significantly impacting its budget. The City claims it is still struggling with recovery from the pandemic and will face substantial out year budget gaps, underscoring the necessity of adherence to pattern bargaining to maintain budget stability and provide equity among the workforce.

The City disputes the Association's argument ASEAs are entitled to a uniformed conforming pattern settlement or wage parity with Sanitation Workers assigned out of title as Sanitation Police. It contends the duties of ASEAs are not comparable to those performed by Sanitation Police. The City alleges Sanitation Police are peace officers who carry firearms, make vehicle stops, issue criminal summonses, conduct investigations, focus on illegal dumping and can do almost anything an NYPD Police Officer can do, except execute a warrant. In contrast, it maintains ASEAs are not peace officers and do not issue criminal summonses or make arrests. While conceding ASEA Jeffrey Hunter testified to having Special Patrolman status and having the ability to carry a gun and make arrests, the City argues Hunter is one (1) of only seven (7) ASEAs with Special Patrolman status and not representative of the fifty (50) member ASEA bargaining unit. It alleges ASEA Sean

Milan testified he lacks the status of a Special Patrolman and cannot issue criminal summonses or make arrests. The City points to testimony from its Assistant Chief and Director of Enforcement for the Department of Sanitation, Ricky Cyrus, as establishing ASEAs rarely testify in court and do not issue criminal summonses. For all these reasons, it maintains the duties performed by ASEAs are not comparable to those performed by Sanitation Police Officers.

The City argues supervisory responsibilities performed by ASEAs does not match work performed by commanding officers within the Sanitation Police. It contends Sanitation Police commanding officers are selected from the ranks of Sanitation Workers, take an examination, are subjected to a psychological examination, are interviewed, and must hold a commercial driver's license. The City asserts Sanitation Police commanding officers undergo specialized peace officer, weapons and firearms training, vehicle stop training and arrest training. It claims ASEAs do not undergo this specialized training. The City alleges Sanitation Police of all ranks are pulled from the enforcement division back to the collection division when large snow events occur and perform collection functions when required. It argues ASEAs do not perform these tasks. In the City's view, the ASEAs are not entitled to wage parity with the Sanitation Police

because they do not perform work comparable to the Sanitation Police.

The City argues the Association's reliance upon Local Law 56 is misplaced. It contends that law is procedural in nature and confers upon ASEAs the same right, independent of Citywide bargaining, to bargain all terms and conditions of employment as are enjoyed by uniform employees. The City emphasizes Local Law 56, by its terms, modifies procedure only and does not mandate the City offer a uniformed pattern to the ASEAs or guarantee wage parity with a uniform title. It maintains the other titles mentioned in Local Law 56 have all accepted civilian, pattern conforming settlements for the 2017 – 2021, round, thereby undermining the Association's claim Local Law 56 somehow guarantees its members parity with uniform titles or the uniformed pattern.

The City argues the 2012 Viani Award, involving Environmental Police Officers, is inapposite, because Environmental Police Officers are employed by a different Department (Environmental Protection) and have unique and different duties from those performed by the ASEAs employed in the Department of Sanitation.

For the foregoing reasons, the City requests the Panel award terms based upon both the 2010 – 2017 and 2017 – 2021, patterns, as follows:

1.  Term: Ten (10) years and seven (7) months from March 3, 2010 to October 15, 2020.

2.  General Wage Increases:

    | | |
    |---|---|
    | 9/3/2011 | 1% |
    | 9/3/2012 | 1% |
    | 9/3/2013 | 1% |
    | 9/3/2014 | 1.5% |
    | 9/3/2015 | 2.5% |
    | 9/3/2016 | 3.056% (the City proposes the 3% increase on additions to gross be applied to this general wage increase) |
    | 9/26/2017 | 2% |
    | 9/26/2018 | 2.25% |
    | 10/26/2019 | 3% |

3.  Additional Economic Items:

    a. All employees on active payroll as of the effective date of the Award shall be entitled to a one thousand ($1,000) dollars lump sum bonus. Part-time employees shall be entitled to a prorated bonus.

    b. The May 5, 2014, and June 28, 2018, Letter Agreements regarding health savings and welfare fund contributions between the City of New York and the Municipal Labor Committee shall be incorporated as appendices.

    c. The City of New York's contribution to the Annuity Fund shall be two hundred ($200) dollars per employee per annum, effective the date of this Panel's award. (The City proposes applying the remainder of the additional funds in the 2017-2021 pattern to an annuity increase.)

    d. Effective the day after the effective date of the Award, the City of New York may require that all newly hired employees be paid exclusively through direct deposit or electronic funds transfer.

    e. Uniform allowances will increase by one hundred eighty two ($182) dollars annum, retroactive to 2018. (The 2017-2021 pattern includes additional Funding of 0.26%. The City proposes that this

additional funding be used for this uniform allowance increase).

## Findings and Conclusions

The central issue presented is whether the ASEAs are entitled to wages and benefits above the civilian pattern offered by the City. Our authority to answer this question is derived from Section 12-311 of the New York City Collective Bargaining Law, *supra*, which sets forth the criteria to apply in rendering a just and reasonable determination. Accordingly, and based solely upon these criteria, as well as the entire record of evidence and argument in this matter, we make the following findings and conclusions.

At the outset, we reject the Association's contention Local Law 56 of 2005 requires a grant of wages and benefits commensurate with those enjoyed by uniformed City employees. Prior to enactment of this law, certain terms and conditions of employment for employees under the career and salary plan, such as time and leave procedures, had to be uniform and were governed by the Citywide agreement negotiated with DC37. (Transcript, at 206). However, uniformed services employees were entitled by law to bargain all terms and conditions of employment and were not bound by the Citywide agreement. By enacting Local Law 56 of 2005, the City Council amended Section 12-307(a)(4) of the Administrative Code to provide to ASEAs and

SEAs those same unique bargaining rights already enjoyed by employees in the uniformed services, namely, the right to negotiate all terms and conditions of employment, independent of the Citywide agreement. Notably, the City Council included language in Local Law 56 finding "... these changes are procedural in nature, affecting the manner in which bargaining is conducted on behalf of the affected employees, and will not provide a particular benefit to such employees, nor prescribe a certain result from collective bargaining". (Joint Exhibit No. 2). By this language, we find the City Council extended to ASEAs and SEAs the right to negotiate all terms and conditions of employment, independent of Citywide bargaining, but did not mandate adoption of any particular terms, be they economic or otherwise. To the extent the Association argues Local Law 56 of 2005 requires granting ASEAs the same wages as other uniformed services employees, or a wage package greater than the civilian pattern, we reject that argument as at odds with the language of Local Law 56.

We find the evidence presented during the hearings insufficient to justify an award of wages and benefits above the civilian pattern proposed by the City. The package offered by the City is consistent with the existing civilian pattern adopted by almost all City bargaining units and constitutes fair and reasonable compensation for the ASEAs. Significantly, we

14

note the other titles mentioned in Local Law 56 have accepted the civilian pattern.

The Association's argument for wage parity with Sanitation Police Officers is not persuasive. The evidence is not sufficient to establish ASEAs perform comparable duties to those performed by the Sanitation Police Officers. In particular, Cyrus gave credible testimony ASEAs, unlike Sanitation Police Officers, do not issue criminal summonses and have no authority to make arrests or carry firearms. (Transcript, at 157, 159).[2] Nor, we find, do ASEAs receive the specialized training required of Sanitation Police Officers in the areas of arrest and firearm procedures, vehicle stops, impounding vehicles and cleaning and collection procedures. (Transcript, at 159). Although seven (7) out of fifty (50) ASEAs have Special Patrolman status, they are a minority of the bargaining unit and obtained that status prior to 2007. (Id.). Notably, the record establishes SEAs no longer receive training to become Special Patrolmen and the Department of Sanitation no longer requires ASEAs to be Special Patrolmen. (Id.). In these proven circumstances, despite some overlap in

---

[2] Cyrus oversees the enforcement unit of the Department of Sanitation, which includes both ASEAs and Sanitation Police. He credibly testified the main function of ASEAs is to supervise the SEAs, assign them work, and oversee preparation of summonses and issuance for administrative law violations (NYC Administrative Code, Recycling Code, Health Code). Sanitation Police issue summonses for administrative law violations but also issue summonses for traffic violations, parking violations and criminal law violations. (Transcript, at 157).

general supervisory functions, while taking into account the important functions provided by ASEAs, the record simply fails to establish duties performed by ASEAs are comparable to those performed by Sanitation Police Officers.

We conclude adherence to the civilian pattern for the ASEAs is consistent with the public interest. Although the ASEAs' bargaining unit is small relative to the overall workforce, an above pattern award in this case will potentially disrupt the budgetary stability achieved through pattern bargaining over the past several rounds of bargaining. Maintaining stability as the City continues its efforts to emerge from the effects of the Covid-19 pandemic is consistent with the public interest and will enable continued delivery of essential services while fairly compensating the workforce.

We have considered the 2012 Impasse Award issued by Arbitrator Viani, wherein he recommended Environmental Police Officers (EPOs) be granted the uniformed services wage package. We find that Award inapposite. Arbitrator Viani granted a uniformed services wage package based upon his assessment the duties of the EPOs had greatly expanded to the point where these employees were now extensively trained beyond NYPD standards, had specialized units common to the NYPD (such as Emergency Services and Aviation Patrol), were assigned advanced weaponry, and were being deployed beyond their usual role of protecting

the water supply, with broad jurisdiction to make arrests for crimes, and more duties, all found to constitute the full range of police activities. (Union Exhibit No. 1). Upon those compelling facts, Viani concluded the EPOs were now performing the function of Police Officers and should receive a wage package commensurate with the uniformed services pattern, rather than the civilian pattern.

Unlike the EPOs, the ASEAs have not been shown to be performing comparable duties to Sanitation Police Officers. As such, the record does not support them receiving the uniformed services pattern.

For all the foregoing, we shall recommend the civilian pattern be granted to the ASEAs under the following terms and conditions:

1. Term: Ten (10) years and seven (7) months from March 3, 2010 to October 15, 2020.

2. General Wage Increases:

|  |  |  |
|---|---|---|
| 9/3/2011 | 1% | |
| 9/3/2012 | 1% | |
| 9/3/2013 | 1% | |
| 9/3/2014 | 1.5% | |
| 9/3/2015 | 2.5% | |
| 9/3/2016 | 3.056% | (the City proposes the 3% increase on additions to gross be applied to this general wage increase) |
| 9/26/2017 | 2% | |
| 9/26/2018 | 2.25% | |
| 10/26/2019 | 3% | |

3.   Additional Economic Items:

      a. All employees on active payroll as of the effective date of the Award shall be entitled to a one thousand ($1,000) dollars lump sum bonus. Part time employees shall be entitled to a prorated bonus.

      b. The May 5, 2014, and June 28, 2018, Letter Agreements regarding health savings and welfare fund contributions between the City of New York and the Municipal Labor Committee shall be incorporated as appendices.

      c. The City of New York's contribution to the Annuity Fund shall be two ($200) dollars per employee per annum, effective the date of this Panel's award. (The City proposes applying the reminder of the additional funds in the 2017-2021 pattern to an annuity increase.)

      d. Effective the day after the effective date of the Award, the City of New York may require that all newly hired employees be paid exclusively through direct deposit or electronic funds transfer.

      e. Uniform allowances will increase by one hundred eighty two ($182) dollars per annum, retroactive to 2018. (The 2017-2021 pattern includes additional funding of 0.26%. The City proposes that this additional funding be used for this uniform allowance increase).

## RECOMMENDATIONS

We recommend the following terms and conditions be granted to the Associate Sanitation Enforcement Agents:

1.   Term: Ten (10) years and seven (7) months from March 3, 2010 to October 15, 2020.

2.   General Wage Increases:

| | |
|---|---|
| 9/3/2011 | 1% |
| 9/3/2012 | 1% |
| 9/3/2013 | 1% |
| 9/3/2014 | 1.5% |
| 9/3/2015 | 2.5% |

```
        9/3/2016      3.056% (the City proposes the 3% increase on
                             additions to gross be applied to this
                             general wage increase)
        9/26/2017     2%
        9/26/2018     2.25%
        10/26/2019    3%
```

3.   Additional Economic Items:

a. All employees on active payroll as of the effective date of the Award shall be entitled to a one thousand ($1,000) dollars lump sum bonus. Part time employees shall be entitled to a prorated bonus.

b. The May 5, 2014, and June 28, 2018, Letter Agreements regarding health savings and welfare fund contributions between the City of New York and the Municipal Labor Committee shall be incorporated as appendices.

c. The City of New York's contribution to the Annuity Fund shall be two hundred ($200) dollars per employee per annum, effective the date of this Panel's award. (The City proposes applying the remainder of the additional funds in the 2017 -2021 pattern to an annuity increase.)

d. Effective the day after the effective date of the Award, the City of New York may require that all newly hired employees be paid exclusively through direct deposit or electronic funds transfer.

e. Uniform allowances will increase by one hundred eighty two ($182) dollars per annum, retroactive to 2018. (The 2017-2021 pattern includes additional funding of 0.26%. The City proposes that this additional funding be used for this uniform allowance increase).

August 2l , 2023

_____
Martin F. Scheinman, Esq.
Arbitrator, Chairperson

DocuSign Envelope ID: EEFBF9A5-D309-4386-8A82-F7B45B15E07E

STATE OF NEW YORK )
                 ) ss.:
COUNTY OF        )

I, RENEE CAMPION, Commissioner, do hereby affirm upon my oath as Panel Member that I am the individual described herein and who executed this instrument, which is my Report and Recommendation.

August 21 , 2023.

_____
Renee Campion, Commissioner
City Panel Member

Concur [X]　　　　　　　　　　Dissent [ ]


STATE OF NEW YORK )
                 ) ss.:
COUNTY OF        )

I, JAKWAN RIVERS, President, do hereby affirm upon my oath as Panel Member that I am the individual described herein and who executed this instrument, which is my Report and Recommendation.

August 21 , 2023.

_____
Jakwan Rivers, President
Association Panel Member

Concur [ ]　　　　　　　　　　Dissent [X] J.R

20

```
STATE OF NEW YORK   )
                    )       ss.:
COUNTY OF NASSAU    )
```

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Report and Recommendation.

August 21 , 2023

_____
Martin F. Scheinman, Esq.
Arbitrator, Chairperson

City of NY.LEEBA.Impasse I-268-17.awd

21