UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAMEKA DOWDY, et al., <br><br> Plaintiffs, <br><br> -against- <br><br> NEW YORK CITY DEPARTMENT OF SANITATION and THE CITY OF NEW YORK, <br><br> Defendants. | 22-CV-6284 (ALC) <br><br> <u>OPINION AND ORDER</u> |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Dameka Dowdy, Jeffrey Hunter, Sean Milan, Joel Purser, Sandra Castro, Cecelia Rojas, Kevon Chisholm, Richard Ortega, Marisol Concepcion, Robert Tabon, Rasheen Odom, Carmelita Gordon-Fleetwood, and Raymond Pacheco bring this putative class action against Defendants City of New York (the "City") and Defendant New York City Department of Sanitation ("DSNY"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the Equal Pay Act of 1963 ("EPA"), and 42 U.S.C. § 1983 ("§ 1983").

Pending before the Court is Defendants' motion to dismiss the First Amended Complaint ("FAC"). (ECF No. 19.) Defendants principally argue that Plaintiffs lack standing to bring a disparate impact claim under Title VII and that the EPA claim is insufficiently pleaded. (*See generally* ECF No. 21.) As stated more fully below, the Court finds that Plaintiffs lack standing to assert their claims under Title VII because they have not alleged that a single Plaintiff is "able and ready" to apply to be a Sanitation Worker or a Sanitation Police Officer and because Plaintiffs

have not pleaded sufficient facts to support their EPA claim. Accordingly, Defendants' motion is **GRANTED**.

## BACKGROUND

### I. Factual Background

#### A. The Plaintiffs

Plaintiffs are employed by DSNY and the City as Sanitation Enforcement Agents ("SEAs") and Associate Sanitation Enforcement Agents ("ASEAs"). (FAC ¶ 6.) Plaintiffs Dowdy, Castro, Rojas, Chisolm, and Gordon-Fleetwood are Black women. (FAC ¶¶ 9, 13–15, 20.) Plaintiffs Milan, Purser, Tabon, and Odom are Black men. (FAC ¶¶ 11, 12, 18, 19.) Plaintiff Hunter is a Native American male. (FAC ¶ 10.) Plaintiffs Ortega and Pacheco are Hispanic men. (FAC ¶ 16.) Plaintiff Concepcion is a Hispanic woman. (FAC ¶ 17.)

Plaintiffs are all "qualified for the full duties of their positions and able to perform the full range of duties" related to being Enforcement Agents. (FAC ¶ 7.) They all have between 12 and 36 years of experience working for DSNY and make between $43,000 and $49,545 per year. (FAC ¶¶ 9–21.)

#### B. Factual Background

Defendants employ SEAs and ASEAs (collectively, "Enforcement Agents") to, among other things, issue criminal summonses and Environmental Control Board ("ECB") summonses, issue parking summons, investigate complaints, enforce regulations, testify in court, and make arrests. (FAC ¶ 31–2.) Plaintiff also allege that Defendants use Enforcement Agents to investigate illegal dumping and to effectuate arrests. (FAC ¶ 32.)

Defendants also employ a separate group of workers, called Sanitation Workers, some of whom are "Sanitation Police". (FAC ¶¶ 33–4.) These Sanitation Police Officers enforce the same laws as Enforcement Agents, and both groups issue summonses, investigate complaints, testify in court, effect arrests, and enforce regulations." (FAC ¶¶ 35–6.) Plaintiffs allege that "Enforcement Agents perform work requiring equal skill, effort, and responsibility under similar working conditions as Sanitation Police". (FAC ¶¶ 38.) Additionally Plaintiffs allege that Enforcement Agents and Sanitation Police Officers have the "same responsibilities" and "carry out the same job functions". (FAC ¶ 39.)

Plaintiffs allege, that the pool of Sanitation Workers, the pool from which Sanitation Police are exclusively drawn, consist of individuals who are over 50 percent white and male. (FAC ¶ 40.) By contrast, Enforcement Agents "are overwhelmingly minorities". (*Id.*) Specifically, citing NYC City Council statistics, Plaintiffs allege that as of October 14, 2020, only 3.26% of Sanitation Workers were female, while 51.63% were white. (FAC ¶¶ 41, 43.) By contrast, Plaintiffs allege that approximately 40% of Enforcement Agents are female and only 16% of Enforcement agents are white. (FAC ¶¶ 42, 44.) Plaintiffs estimate that "there are more than three times as many black Enforcement Agents (64%) as black Sanitation Police (20%)" and that "there are more than twice as many female Enforcement Agents (40%) as female Sanitation Police (17%)." (FAC ¶¶ 46–7.)

Sanitation Police Officers are paid more than Enforcement Agents and receive better benefits, such as longevity pay, unlimited sick leave, three quarter of pay for accidental disability retire, and 20 or 22 year service requirements for retirement. (FAC ¶ 48.) Specifically, after five-and-a-half years of service, Enforcement Agents are paid $77,318 per year, whereas Enforcement

Agents are paid only $45,000 per year after 15 of 30 years of service. (FAC ¶¶ 49–50.) Plaintiffs also allege that Sanitation Police receive other benefits that are unavailable to Enforcement Agents, such as "assignment differential, double time for Sundays and/or holidays, higher welfare and annuity fund benefits, a higher uniform allowance[.]" (FAC ¶ 51.)

The only people eligible to be promoted to Sanitation Police Officers are existing Sanitation Workers. (FAC ¶ 54.) In order to be a Sanitation Worker, an applicant must (1) pass a civil service examination, (2) be able to lift and carry bags and cans up to 100 or 150 pounds dozens of times per hour, (3) be able to walk, climb, pull, and drive, and (4) must have and maintain commercial driver's license. (FAC ¶¶ 53, 55–6.) To obtain a commercial driver's license requires an applicant to take a specific road test and precludes the applicant from taking certain medications. (FAC ¶ 67.) Plaintiffs allege that these requirements, including the requirement to maintain a commercial driver's license, are not necessary or related to the performance of Sanitation Police duties. (FAC ¶¶ 57–58.) Plaintiffs allege that these requirements constitute "an artificial barrier to entry" and that "it has a disparate impact on the basis of race and sex." (FAC ¶ 55.)

Plaintiffs allege that the requirement that an Enforcement Agent first become a Sanitation Worker before they could be promoted to Sanitation Police Officer, "dissuaded and discouraged Enforcement Agents from seeking the Sanitation Police position." (FAC ¶ 64.) They emphasize that even if an Enforcement Agent did manage to become a Sanitation Worker, there was no guarantee that they would then be promoted to become a Sanitation Police Officer. (*Id.*) Plaintiffs note that "an Enforcement Agent who wanted to become a Sanitation Police officer risked having

to perform garbage collection at night, or drive a large truck, indefinitely [and]… they would also be placed on probationary status again after giving up their Enforcement Agent title." (*Id.*)

Plaintiffs also allege that DSNY "suggested" to Enforcement Agents that they were not able to apply for the Sanitation Police position, alleging that an email sent by DSNY stated "If you are seriously interested in becom[ing] a Sanitation Police Officer, and are employed by the Department of Sanitation in the civil service title of Sanitation Worker, send your resume…" (FAC ¶ 65.) By contrast "Nothing of the sort was ever offered to those employed in the civil service title of Sanitation Enforcement Agent or Associate Sanitation Enforcement Agent." (*Id.*) Plaintiffs also allege that "Enforcement Agents were directed to obtain permission from their current supervisors to take the Sanitation Worker exam." (FAC ¶ 63.)

In sum, Plaintiffs allege that "the employment practice of requiring Enforcement Agents to meet all of the requirements to become a Sanitation Worker before being eligible to become a Sanitation Police Officer…has a discriminatory effect; is not a business necessity; is not related to job performance; and does not measure skills necessary for the job of Sanitation Police Officer." (FAC ¶ 67.)

According to Plaintiffs, at least one of them "attempted and was denied the opportunity to become a Sanitation Police Officer." (FAC ¶ 60.) Plaintiff Tabon, a Black male, applied to become a Sanitation Worker twice in the 1980s and 1990s. (FAC ¶ 61.) Plaintiffs allege that in the 1980s, "Tabon did not meet the requirements", and that in the 1990s, even though he passed the civil service examination, he "failed to qualify" for a commercial driver's license, and thus was ineligible to become a Sanitation Worker or Sanitation Police Officer. (FAC ¶ 61.)

## II.     Procedural History

Plaintiffs initiated this action on July 25, 2023. (Compl., ECF No. 1.) Defendants filed a pre-motion conference letter indicating that they intended to move to dismiss the Complaint. (ECF No. 11.) Plaintiffs requested leave to amend the Complaint in light of the arguments raised in Defendants' letter. (ECF No. 12.)

Plaintiffs filed their Amended Complaint on November 17, 2022. (FAC, ECF No. 14.) The Amended Complaint asserts eight causes of action for: (1) violation of the EPA; (2) racial discrimination based on disparate impact under Title VII; (3) sex discrimination based on disparate impact under Title VII; (4) racial discrimination based on disparate impact under the NYSHRL; (5) sex discrimination based on disparate impact under the NYSHRL; (6) racial discrimination based on disparate impact under the NYCHRL; (7) sex discrimination based on disparate impact under the NYCHRL; and (8) violations of § 1983.

Defendants filed their motion to dismiss on February 14, 2023. (ECF Nos. 19–21.) Defendants argue that: (1) DSNY must be dismissed as it is not a proper party to be sued;[1] (2) Plaintiffs lack standing to bring a disparate impact claim under Title VII; (3) Plaintiffs fail to state a plausible disparate claim under Title VII, the NYSHRL or the NYCHRL; (4) Plaintiffs fail to plead an adequate EPA claim; and (5) Plaintiffs have not plausibly alleged a § 1983 municipal

---

[1] In their opposition to the motion to dismiss, Plaintiffs state that "do not have an objection" to their claims only being asserted against Defendant City of New York. (ECF No. 33 at 13.) Accordingly, Defendant DSNY is hereby **dismissed** from this action.

liability claim.² (*See generally* ECF No. 21.) Plaintiffs filed a memorandum in opposition to the motion on March 16, 2023. (ECF No. 22.) Defendants filed a reply in further support of their motion on March 30, 2023. (ECF No. 24.)³

## LEGAL STANDARDS

### I.   12(b)(1)

In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted). Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but

---

² In their opposition to the motion to dismiss, Plaintiffs indicate that they have elected not to proceed with their claim under § 1983. (ECF No. 33 at 13.) Accordingly, this claim is **dismissed** without prejudice.

³ On September 12, 2023, Defendant filed a letter attaching an "Opinion and Recommendation issued by Arbitrator Martin F. Scheinman in Matter of the Arbitration between City of New York and Law Enforcement Employees Benevolent Association Industries, Impasse Panel: Associate Sanitation Enforcement Agents." (ECF No. 26.) Defendants suggest that it "may provide the Court with helpful background information" regarding Plaintiffs' claims. (*Id.* at 1.) However, the Court will disregard this document and any of the factual assertions contained within as Defendant has provided no basis for why the Court may look outside the pleadings and take judicial notice of the factual assertions contained therein.

[the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

## II.     12(b)(6)

On a Rule 12(b)(6) motion, the court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Allegations that are "no more than conclusions[ ] are not entitled to the assumption of truth," and "'naked assertion[s]' devoid of 'further factual enhancement'" or "the defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 678–79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 557 (2007)). Nor must a court accept as true "legal conclusions" or "a legal conclusion couched as a factual allegation." *Id*.

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves[.] *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). Nevertheless, "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety…, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice[.]" *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).

## DISCUSSION

### I. Standing for Disparate Impact Claims

Defendants argue that Plaintiffs do not have standing to bring a disparate impact claim under Title VII, the NYSHRL or the NYCHRL. (ECF No. 21 at 7–9; ECF No. 24 at 3–5.)

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, prevents employers from discriminating against employees or job applicants based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Under Title VII, a plaintiff may sue not only for intentional discrimination, "'but also practices that are fair in form, but discriminatory in operation' – that is, practices that have a 'disparate impact.'" *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)).

In order to sue, a plaintiff must have Article III standing—"the personal interest that must exist at the commencement of the litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (citing *Davis v. FEC*, 554 U.S. 724, 732 (2008)). "The party invoking federal jurisdiction bears the burden of establishing the elements." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Article III standing consists of three 'irreducible' elements: (1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) (quoting *Lujan*, 504 U.S. at 560–61). "[T]he question of standing is whether the litigant is entitled to have the court decide the

merits of the dispute or of particular issues .... [t]his inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F. 3d 79, 84 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "When standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *United States v. Vasquez*, 143 F. 3d 74, 81 (2d Cir. 1998) (quoting *Warth*, 422 U.S. at 501).

In the context of a Title VII disparate impact claim, "[t]o establish standing to challenge an allegedly discriminatory selection policy, "a plaintiff must submit to the challenged policy." *Do No Harm v. Pfizer Inc.*, No. 1:22-CV-07908 (JLR), 2022 WL 17740157, at *10 (S.D.N.Y. Dec. 16, 2022) (quoting *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)). In other words, a plaintiff must show that he or she actually applied for the position at issue. "This threshold requirement for standing may be excused only where a plaintiff makes a substantial showing that application ... would have been futile." *Id.* In addition to these requirements, a plaintiff asserting standing for a Title VII claim "must show that they are 'able and ready' to apply", even if an application would be futile. *Id.*, at *10–11 (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993)). This is a "'highly-fact specific' undertaking and requires more than the non-applicant's belief that they meet the 'minimum qualifications' and are 'able and ready.'" *Id.* (quoting *Carney v. Adams*, 141 S. Ct. 493, 500–01 (2020)). The requirement that a plaintiff be "able and ready" to apply, "requires an intent that is concrete." *Carney*, 141 S. Ct. at 502.

10

As an initial matter, as Defendants note, there are few allegations that Plaintiffs actually submitted to the challenged policy and submitted applications to become either Sanitation Police Officers or Sanitation Workers.  In fact, the FAC only alleges that one Plaintiff—Mr. Tabon—actually attempted to apply to the position of Sanitation Worker so he could subsequently apply to become a Sanitation Police Officer.  (FAC ¶¶ 60–1.)  Mr. Tabon first applied to be a Sanitation Worker in the 1980s, but "did not meet the requirements."  (*Id.*)  He applied again in the 1990s, but failed to meet the requirements, even after passing the civil service exam, because he "failed to qualify" for a commercial driver's license.  (*Id.*)  For the remainder of the named Plaintiffs, there are no allegations that they previously applied to be Sanitation Workers or Sanitation Police and were rejected.

In the absence of allegations that the majority of Plaintiffs submitted to the challenged policy, Plaintiffs argue that they need not allege that they previously applied to become Sanitation Workers or Sanitation Police because any application to either of those positions would be futile. (ECF No. 22 at 4–6.)  As previously stated, the requirement that a plaintiff actually apply for a particular position may be dispensed with if the plaintiff makes a "substantial showing" that applying to the position would be "futile."  *Do No Harm*, 2022 WL 17740157, at *10 (citing *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)).  This exception is based, in part, on the Supreme Court's holding in *Int'l Bhd. of Teamsters v. United States* ("*Teamsters*") that:

> The denial of Title VII relief on the ground that the claimant had not formally applied for the job could exclude from the Act's coverage the victims of the most entrenched forms of discrimination. Victims of gross and pervasive discrimination could be denied relief precisely because the unlawful practices had been so successful as totally to deter job applications from members of minority groups.

11

> A per se prohibition of relief to nonapplicants could thus put beyond the reach of equity the most invidious effects of employment discrimination those that extend to the very hope of self-realization.

431 U.S. 324, 365–66 (1977) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)). Although this decision was not explicitly related to standing, in 2020, the Supreme Court recognized the *Teamsters* holding in the context of Article III standing, stating that "our precedents have [] said that a plaintiff need not translate his or her desire for a job…into a formal application where that application would be merely a futile gesture." *Carney*, 141 S. Ct. at 503 (citing *Teamsters*, 431 U.S. at 365–6). Thus, "[i]f a plaintiff is able to show that the practice of discrimination was so systemic that an application would be a "vain gesture," and therefore futile, then the application requirement is waived." *Hunt v. Con Edison Co. N.Y.C.*, No. 16-CV-0677 (MKB), 2017 WL 6759409, at *7 (E.D.N.Y. Dec. 29, 2017) (citing *Teamsters*, 431 U.S. 324 at 366).

The Court notes at the outset that Plaintiffs' theory of futility is imprecise. Plaintiffs appear to make two separate arguments regarding futility, with different implications. Indeed, the FAC and Plaintiffs' opposition papers do not make clear whether their alleged injury and their basis for Article III standing derives from their inability to apply to become Sanitation Workers or their inability to apply to become Sanitation Police Officers. Principally, Plaintiffs argue that "[m]ultiple plaintiffs have refrained from applying to become a *Sanitation Worker* because they believed they might not qualify or did not wish to become a *Sanitation Worker*." (ECF No. 22 at 5 (emphasis added).) However, they also assert that "[t]here, is, in fact, no way to apply to become

a [*Sanitation Police Officer*]." (*Id.* (emphasis added).)[4] The Court will thus address futility as to each position.

First, the allegations in the FAC do not support Plaintiffs' argument that any application to become a Sanitation Worker would be futile. In their opposition, Plaintiffs argue that being a Sanitation Worker requires an applicant to meet certain physical requirements, to obtain a commercial driver's license, to refrain from taking certain medications, and to perform job duties that many Enforcement Agents "simply do not wish to do" because they have no connection to the duties of Sanitation Police. (*Id.*) Thus, they contend that they "have been deterred" from applying to be Sanitation Workers. (*Id.* at 4–5.) Plaintiffs also note that Plaintiffs are further deterred from applying to be Sanitation Workers because even if an Enforcement Agent was hired as a Sanitation Worker, there is no guarantee that such an individual would then be promoted to become a Sanitation Police Officer. (FAC ¶ 64.) However, these arguments do not support the notion that application by Plaintiffs to become Sanitation Workers would be a mere "vain gesture" and as such "futile". Rather, the FAC suggests that Plaintiffs in fact do not want to apply to become Sanitation Workers because the job and qualification requirements are undesirable to them.

---

[4] This confusion may result from the imprecision of the pleadings regarding the actual remedy sought by Plaintiffs as part of their disparate impact claims. Although Plaintiffs allege that the prerequisites for becoming a Sanitation Worker (*i.e.*, the physical requirements, commercial driver's license, civil service examination) constitute "an artificial barrier to entry and has a disparate impact on the basis of race and sex" (FAC ¶ 55), the more salient concern appears to be instead that the practice of only selecting Sanitation Police Officers from a pool of Sanitation Workers constitutes an artificial barrier to entry (FAC ¶ 66). Presumably the remedy sought by Plaintiffs is to allow them to directly apply to become Sanitation Police Officers, not relaxing the requirements to become Sanitation Workers.

By contrast, there are factual assertions in the FAC which suggest that any direct application by Plaintiffs to become a Sanitation Police Officer would be futile. For instance, Plaintiffs allege that "DSNY does not appoint Enforcement Agents to the Sanitation Police and disqualifies Enforcement Agents for the 'Sanitation Police' position." (FAC ¶ 53.) Likewise, the FAC alleges that "The DSNY only permits Sanitation Workers to become Sanitation Police." (FAC ¶ 54.) The application also explicitly states this requirement. (FAC ¶ 65 ("If you are seriously interested in become a Sanitation Police Officer, and are employed by the Department of Sanitation in the civil service title of Sanitation Worker, send your resume..."))

In any event, "[t]he Court need not determine whether it would be futile for the members to apply [to be Sanitation Police Officers or Sanitation Workers] because Plaintiff[s] ha[ve] not adequately shown that at least one identifiable member is 'able and ready' to apply" to either position. *Do No Harm*, 2022 WL 17740157, at *11. "This can be a 'highly-fact specific' undertaking and requires more than the non-applicant's belief that they meet the 'minimum qualifications' and are 'able and ready.'" *Id.* (quoting *Carney*, 141 S. Ct. at 500–01). "Being 'able and ready 'to apply requires an intent that is concrete.'" *Id.* (quoting Carney, 141 S. Ct. at 502), and must go beyond a "few words of general intent". *Carney*, 141 S. Ct. at 501. Indeed, at a minimum, Plaintiffs would have to allege that they meet the qualifications to become Sanitation Police Officers but for the alleged artificial barriers to entry. *Houser*, 28 F. Supp. 3d at 237 ("Applicants who fail to meet the basic eligibility requirements for employment cannot demonstrate that they suffered a 'particularized' personal injury by being denied such employment.") Here, there are absolutely no allegations, including as to Mr. Tabon, that Plaintiffs

14

are "able and ready" to apply to be either Sanitation Police Officers or Sanitation Workers. And Plaintiffs have not pleaded what the minimum requirements are to become a Sanitation Police Officer and whether they meet said requirements. In fact, it is not clear from the FAC whether Plaintiffs actually intend to and want to apply to be Sanitation Police Officers. Without the concrete intent to apply to and become Sanitation Police Officers, Plaintiffs cannot demonstrate that they actually suffered injury in fact necessary for Article III standing. *See Do No Harm*, 2022 WL 17740157, at *12 (citing *Carney*, 141 S. Ct. at 502).

Therefore, the Court finds that Plaintiffs have not established injury-in-fact necessary for Article III standing for their disparate impact claims alleged under Title VII, the NYSHRL and the NYCHRL, and Defendants' motion to dismiss these claims is **granted**.

**II.     The Equal Protection Act**

The EPA prohibits employers from discriminating against employees on the basis of sex by "paying wages…at a rate less than the rate at which he pays wages to employees of the opposite sex…for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions…" 29 U.S.C. § 206(d)(1). In order to allege a violation of the EPA, a plaintiff must demonstrate three things: (1) that the employer pays different wages to employees of the opposite sex; (2) that the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) that the jobs are performed under similar working conditions. *See E.E.O.C. v. Port Authority of N.Y. & N.J.*, 768 F.3d 247, 254–255 (2d Cir. 2014) (citing *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999)). "The Second Circuit has made clear that the EPA pleading standard is 'demanding.'"

*Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 519 (S.D.N.Y. 2018) (quoting *E.E.O.C. v. Port Auth. of N.Y. and N.J.*, 768 F.3d 247, 255–56 (2d Cir. 2014)). A "plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job content was 'substantially equal.'" *E.E.O.C.*, 768 F.3d at 256 (quoting *Iqbal*, 556 U.S. at 678).

The factual allegations underpinning Plaintiffs' EPA claim are relatively sparse. Plaintiffs allege that "Sanitation Police enforce the same laws as Enforcement Agents" and that "Sanitation Police and Enforcement Agents both issue summonses, investigate complaints, testify in court, effect arrests, and enforce regulations." (FAC ¶¶ 35–6.) They also allege that "Enforcement Agents perform work requiring equal skill, effort, and responsibility under similar working conditions as Sanitation Police and that "Enforcement Agents have the same responsibilities and carry out the same job junctions as the Sanitation Police." (FAC ¶¶ 38–9.) The gender pay disparity is demonstrated by the fact that allegedly only 17% of Sanitation Police are female, whereas 40% of Enforcement Agents are female. (FAC ¶¶ 40, 47.) Finally, Sanitation Police are paid higher wages and receiver better benefits than Enforcement Agents. (FAC ¶¶ 48–52.)

The Court finds that the FAC does not allege an adequate EPA claim. As an initial matter, the Court notes that although the FAC lists out the relative experience and salaries of all Plaintiffs, including the female Plaintiffs, there are no allegations comparing the position, experience, skills, or responsibilities of *female* Enforcement Agents to those of *male* Sanitation Police Officers. Rather, the FAC alleges that Sanitation Police, as a whole, "are paid a higher wage than

16

Enforcement Agents" (FAC ¶ 48), without providing the Court with any comparison specifically between female Enforcement Agents and male Sanitation Police Officers.

Additionally, the FAC does not provide sufficient factual allegations for the second prong of the analysis regarding the female Plaintiffs' actual job content.[5] Instead, the FAC merely regurgitates the elements of an EPA claim, alleging that "Enforcement Agents perform work requiring equal skill, effort, and responsibility under similar working conditions as Sanitation Police" and "Enforcement Agents have the same responsibilities and carry out the same job functions as the Sanitation Police." (FAC ¶¶ 38–9.) The only specific factual allegations underpinning Plaintiffs' allegations that the two jobs are "substantially equal" are that (1) "Sanitation Police enforce the same laws as Enforcement Agents" and (2) "Sanitation Police and Enforcement Agents both issue summonses, investigate complaints, testify in court, effect arrests, and enforce regulations." (FAC ¶¶ 35–6.) However, these scant allegations do not purport to detail the full extent of the actual duties or responsibilities performed by the female Plaintiffs and male Sanitation Police Officers, and say nothing about the relative experience and skill required for either position. In other words, the allegations "speak nothing of [the female

---

[5] Defendant asks the Court to take judicial notice of, *inter alia*, the "Notices of Examination ("NOE") for the positions at issue -- Sanitation Worker, Sanitation Enforcement Agents, and Associate Sanitation Enforcement", arguing that they were purportedly incorporated by reference into the FAC. (ECF No. 21 at 3 n.3.) Defendant relies on some of the job descriptions in these NOEs to argue that the positions at issue here are not "substantially equal". (*Id.* at 18–20.) The Court declines to determine whether these job descriptions were incorporated by reference into the FAC, but nonetheless will not evaluate them as part of its analysis because "it is clear that the *job content* and not job title or description is the standard for determining whether there was a violation of the anti-discrimination laws." *Chepak v. Metro. Hosp.*, 555 F. App'x 74, 77 (2d Cir. 2014) (emphasis added).

17

Plaintiffs'] actual job content, such as the position [t]he[y] held, or the necessary 'skill, effort, and responsibility' required to perform [their] job[s]", and thus are insufficient to plead an EPA claim. *See Edwards v. Thomson Reuters (Tax & Acct.) Inc.*, No. 19-CV-93 (ER), 2020 WL 2132348, at *3 (S.D.N.Y. May 5, 2020) (citations omitted); *see also Dass v. City Univ. of New York*, No. 18-CV-11325 (VSB), 2020 WL 1922689, at *6 (S.D.N.Y. Apr. 21, 2020) ("Plaintiff's mere parroting that other employees are 'similarly situated' to her coupled with conclusory allegations are insufficient to state an EPA claim.")

Likewise, the FAC is completely devoid of any non-conclusory allegations regarding the third prong of the analysis, namely that female Enforcement Agents and male Sanitation Police officers work under similar working conditions.  For instance, although Plaintiffs allege that Sanitation Police Officers have a higher annual salary than female Enforcement Agents, they do not allege whether Sanitation Police Officers and Enforcement Agents work similar hours or maintain similar schedules, which could affect a Sanitation Police Officer's overall compensation. *C.f. Crawley v. Macy's Retail Holdings, Inc.*, No. 15-CV-2228, 2016 WL 6993777, at *8–9 (S.D.N.Y. Nov. 29, 2016) (finding EPA claim plausibly pled where plaintiff alleged "that she and [her comparator] worked the same job, during the same shift, at the same Macy's store, under the same supervisor" such that "every material aspect of their positions apart from compensation -- their hours, their location, their supervisor -- appears to have been the same".)  Mere recitation of the pleading standard, alleging that the female Plaintiffs and Sanitation Police Officers "perform work…under similar working conditions" (FAC ¶ 38), is insufficient to state a claim under the

EPA. *See Edwards*, 2020 WL 2132348, at *3 ("It is axiomatic that bald and formulaic recitation of the elements of an EPA claim cannot suffice to overcome a motion to dismiss.")

Accordingly, Defendant's motion to dismiss Plaintiffs' clam under the EPA is **granted**.

### III.    Leave to Amend

The Second Circuit has recognized that "it is the usual practice upon granting a motion to dismiss to allow leave to replead[.]" *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) (citation omitted); *see also* Fed. R. Civ. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.")  Accordingly, the Court will grant Plaintiffs leave to amend the FAC.

### CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** and the FAC is dismissed in its entirety without prejudice.  The parties shall appear for a telephonic status conference on **October 10, 2023** at **11:00 A.M**. to discuss the filing of an amended complaint.  The parties shall contact the Court at **1-888-363-4749** (access code: **3768660**).

The Clerk of Court is respectfully requested to terminate the pending motion at ECF No. 19 and to terminate Defendant New York City Department of Sanitation.

**SO ORDERED.**

Dated:  **September 26, 2023**
        **New York, New York**

                                                              *Andrew L. Carter*

**ANDREW L. CARTER, JR.**
**United States District Judge**

19