UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

DAMEKA DOWDY, JEFFREY HUNTER, SEAN
MILAN, JOEL PURSER, SANDRA CASTRO,
CECELIA ROJAS, KEVON CHISHOLM, RICHARD
ORTEGA, MARISOL CONCEPCION, ROBERT
TABON, RASHEEN ODOM, CARMELITA
GORDON-FLEETWOOD, and RAYMOND
PACHECO,

On behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

THE CITY OF NEW YORK,

Defendant.

-------------------------------------------------------------------- X

Index No. 22-cv-6284

**SECOND AMENDED
CLASS ACTION
COMPLAINT[1]**

**JURY TRIAL DEMANDED**

The Plaintiffs – Dameka Dowdy, Jeffrey Hunter, Sean Milan, Joel Purser, Sandra

Castro, Cecelia Rojas, Kevon Chisholm, Richard Ortega, Marisol Concepcion, Robert Tabon,

Rasheen Odom, Carmelita Gordon-Fleetwood, and Raymond Pacheco – on behalf of themselves

and all others similarly situated, by their attorneys, Seelig Law Offices, LLC, and Moser Law

Firm, P.C., allege as follows as their Complaint against the City of New York ("City"):

**I. INTRODUCTION**

1.      The New York City Department of Sanitation ("DSNY") is the largest sanitation

department in the world, with 9,800 employees and a Fiscal Year 2022 budget of $1.9 billion.

2.      Plaintiffs, Sanitation Enforcement Agents ("SEAs") and Associate Sanitation

Enforcement Agents ("ASEAs") (collectively, "Agents") who work within the Enforcement

Division of the DSNY, are responsible for the enforcement of laws, rules and regulations

---

[1] The Plaintiffs have modeled this complaint on the case of *Chalmers v. City of New York*, 20-cv-3389
(AT), which is factually similar. *See Chalmers v. City of N.Y.*, 2021 U.S. Dist. LEXIS 176527, at *1
(S.D.N.Y. Sep. 16, 2021).

administered by the Department of Sanitation, including the New York City Health Code, the New York City and Administrative Code, and the New York State Public Health Law. They are represented by the Law Enforcement Employees Benevolent Association.

3.      Sanitation Workers who work for the DSNY are primarily responsible for garbage collection. They are represented by the Uniformed Sanitationmen's Association.

4.      As more fully described herein, the DSNY has discriminated *against* Agents, a group that is comprised of significant numbers of women and racial minorities (non-whites), and *in favor of* Sanitation Workers ("garbage collectors"), a group of employees that is almost exclusively male and predominantly white by *inter alia* (1) selecting sanitation police from a group of garbage collectors who volunteer for the assignment, and refusing to select sanitation police from the group of Agents, (2) selectively exercising its authority under subsection 59 of NY Criminal Procedure Law § 2.1 to give peace officer status to garbage collectors, but *not* to Agents, and providing garbage collectors with concomitant training and other benefits not provided to Agents; (3) paying Agents dramatically less than garbage collectors assigned to the Sanitation Police detail for performing the same duties and work, and (4) cementing and indeed *compounding* systemic disparities in pay between men and women, and between whites and people of color through the way it negotiates with the these two groups.

5.      Historically, the city's garbage collectors have been almost exclusively male and predominately white.  Even today,

- 97% of the City's garbage collectors are male, while 38% of Agents are female;

- More than 50% of the city's garbage collectors are white, while 85% of Agents are non-white.

6.      For decades, the DSNY has paid garbage collectors assigned to the Sanitation Police detail salaries and benefits that are significantly higher than paid to Agents who perform the same work. The pay gap including overtime is, on average, $45,000 or more, annually.

7.      The pay gap is only expected to rise. The City recently announced that it reached a deal with Sanitation Workers which provides for wage increases between 3.25 and 4.00 percent per year, consistent with the City's agreement with the Police Benevolent Association.

8.      Moreover, the Agents' and Sanitation Police's pension benefits upon retirement are both based on their *three highest consecutive annual salaries.* Higher salary rates translate into higher pensions for Sanitation Police than for Agents.

9.      The City's treatment and compensation of Agents, as compared to its treatment of Sanitation Workers and Sanitation Police violates 42 U.S.C. § 1981 enforced under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the Equal Pay Act of 1963.

10.     Plaintiffs seek prospective injunctive relief to remedy ongoing violations of federal and state law, compensatory damages, punitive damages, liquidated damages, front pay, back pay, interest, and an award of attorney's fees.

## II. JURISDICTION AND VENUE

11.     This Court has jurisdiction over the federal claims under 42 U.S.C. §§ 1981 and 1983 and under Title VII pursuant to 28 U.S.C. § 1331 and 1343.

12.     Pursuant to 28 U.S.C. § 1367(a), supplemental jurisdiction exists over the related state claims because they arise from the same nucleus of operative facts.

13.     Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial

portion of the events giving rise to the claims occurred in New York County.

14.     On February 4, 2021, Plaintiffs' filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").

15.     Between April 29, 2022 and May 3, 2022, the EEOC issued "Right to Sue Letters" for each plaintiff. These were attached to the original complaint filed in this action.

16.     This action was originally commenced within ninety (90) days of receipt of the notice of right to sue. All conditions precedent to the institution of this lawsuit have been met.

### III. PARTIES

17.     Plaintiffs Dameka Dowdy, Jeffrey Hunter, Sean Milan, Joel Purser, Sandra Castro, Cecelia Rojas, Kevon Chisholm, Richard Ortega, Marisol Concepcion, Robert Tabon, Rasheen Odom, Carmelita Gordon-Fleetwood, and Raymond Pacheco are or were Sanitation Enforcement Agents ("SEAs"), or Associate Sanitation Enforcement Agents ("ASEAs") employed by the City of New York.

18.     Dameka Dowdy is a Black female and an ASEA I with approximately 15 years of service with the DSNY.

19.     Jeffrey Hunter is a Native American male, and an ASEA II with approximately 33 years of service with DSNY.

20.     Sean Milan is a Black male, and is an ASEA I with approximately 14 years of service with DSNY.

21.     Joel Purser is a Black male and an ASEA I with approximately 30 years of service with DSNY.

22.     Sandra Castro is a Black female and an SEA with approximately 18 years of service with the DSNY.

23.     Cecelia Rojas is a Black female and an ASEA I with approximately 33 years of service with the DSNY.

24.     Kevon Chisholm is a Black female and an SEA with approximately 15 years of service with the DSNY.

25.     Marisol Concepcion is a Hispanic female and an ASEA I with approximately 14 years of service with the DSNY.

26.     Robert Tabon is a Black male and an ASEA I with approximately 36 years of service with DSNY.

27.     Rasheen Odom is a Black male and an ASEA I with approximately 18 years of service with DSNY.

28.     Carmelita Gordon-Fleetwood is a Black female and an ASEA I with approximately 15 years of service with the DSNY.

29.     Raymond Pacheco is a Hispanic male and an ASEA II with approximately 12 years of service with DSNY.

30.     At all relevant times, Defendant City of New York was a municipal corporation duly organized and existing pursuant to and by virtue of the laws of the State of New York, with mayoral agencies and/or departments, including the New York City Department of Sanitation ("DSNY").

31.     Plaintiffs, and those similarly situated, are or were employed by the DSNY, which has its headquarters at 125 Worth Street, New York, New York, 10007, County of New York.

## IV. FACTS

### A.     Inequalities in pay based upon sex within the DSNY

32.     The DSNY employs approximately 6,500 Sanitation Workers ("garbage

collectors"), whose primary responsibility is to collect garbage and to clean the streets. According to the union representing these workers, they "collect trash, recycling, and organic waste from New York City homes."[2]

33.     Sanitation Workers have historically been male. For more than 100 years (from 1881 to 1985), they were *all* male. In 1986, the DSNY hired its first two female garbage collectors: Ann Gloria Pabon and Carlen Sanderson. According to data maintained by the City, garbage collectors remain 97% male and 3% female.[3]

34.     In fact, the union representing the Sanitation Workers remains Local 831 of the International *Brotherhood* of Teamsters, the "Uniformed *Sanitationmen's* Association."[4]

35.     The New York City Department of Sanitation has an Enforcement Division to enforce laws that govern clean streets and sidewalks, dumping, and proper storage and disposal of waste and recyclable materials.

36.     Within this Enforcement Division, the DSNY employs approximately 150 Agents, under the civil service titles of Sanitation Enforcement Agent ("SEA") and Associate Sanitation Enforcement Agent ("ASEA") (collectively "Agents") to enforce these laws.

37.     The union representing the Agents is the Law Enforcement Employees Benevolent Association.

38.     According to recent statistics published by the City, Agents are more than 38% female, and 85% people of color.

39.     Curiously, beginning in or around 1990 (a time when Sanitation Workers were virtually all men) and up until today, the DSNY has reassigned some garbage collectors on a

---

[2] https://teamsters.nyc/locals/local-831/ (emphasis supplied) (last visited 12/1/2023)
[3] A spreadsheet showing the gender and racial composition of Agents and Sanitation Workers is annexed hereto as Exhibit 1.
[4] *Id.*

volunteer basis to the Enforcement Division to work as "Sanitation Police." These "reassigned" garbage collectors are not required to have any prior law enforcement experience, and were selected for employment based upon their ability to perform garbage collection duties.

40.     Sanitation Police are actually garbage collectors who are reassigned at the discretion of DSNY, without a civil service exam, and they remain in the civil service title of "Sanitation Worker."

41.     Upon information and belief, after two years of service in the Sanitation Police detail, a Sanitation Worker can return to garbage collection.

42.     In 2019, the New York City Council passed Local Law 18, also known as the "Pay Equity Law," to identify pay disparities among employees of the City of New York based on race, ethnicity, gender, and other protected classes.

43.     In September 2022 the New York City Council published "Pay Equity in NYC: Analysis of pay differences in the New York City municipal workforce", a report which was based on employment data furnished by the Mayor's Office to the Council pursuant to Local Law 18.

44.     The report found that "[a] prominent non-adjusted pay gap exists between Black or African American, Hispanic or Latino, and white employees, as well as between male and female employees, in the NYC municipal workforce." This was attributed to at least two factors: First, certain agencies pay lower wages to women and minorities as opposed to men and whites. Second, "occupational segregation" exists in certain agencies. "Occupational segregation" is when an agency pays more to a civil service title that is historically male or white than to a civil service title that is historically female or non-white.

45.     The DSNY has one of the largest disparities in pay between men and women

holding the same civil service title. For example, the median difference in pay between men and women holding the "Sanitation Worker" title is $19,751.00, as per the following excerpt from the Council's report:

| Civil Service Titles with the Largest Median Salary Difference | |
| --- | --- |
| Civil Service Title (Title Code) | Median Salary Difference (Males - Females) |
| Sanitation Worker (70112) | $19,751 |

46.    As described more fully herein, the DSNY also pays significantly more to Sanitation Workers (a male-dominated, white-majority workforce) than to Agents (a gender diverse and predominately non-white workforce), *even when they perform the same work.*

47.    In fact, according to the Council's report, Sanitation Workers (which include those given the Sanitation Police detail) earn approximately *twice* the amount of ASEAs, a group that is almost 50% female.

| DSNY Title Name & Code | Median Salary | Males in Title Code | Females in Title Code |
| --- | --- | --- | --- |
| Sanitation Worker (70112) | $79,058 | 97% | 3% |
| Associate Sanitation Enforcement (71682) | $43,249 | 51% | 49% |

48.    Currently, the DSNY has reassigned approximately 73 of the 6500 Sanitation Workers to the Sanitation Police detail, 8 of which (about 11%) are female.[5]

---

[5] A spreadsheet showing the sex and gender composition of the Sanitation Police is annexed hereto as Exhibit 2.

**B.**     **Agent Job Duties Justify Pay at least as high as Sanitation Police**

49.     Although called "Sanitation Police", Sanitation Workers assigned to the detail are not "Police Officers" under New York Law. *See* N.Y. C.P.L. § 1.20(34) (listing persons who are police officers). Instead, they are "Peace Officers" which is a status that may be granted at the discretion of the DSNY pursuant to Section 2.10 of the N.Y. C.P.L. They are not permitted to carry a firearm "unless the appropriate license therefor has been issued pursuant to section 400.00 of the [New York] penal law." N.Y. C.P.L. § 2.1.

50.     The pay disparities between Agents and Sanitation Police cannot be explained by differences in job duties.

51.     The Sanitation Police's primary duty is to issue summonses to businesses or homeowners for violations of sanitation laws.

52.     Likewise, the Agents' primary duty is to issue summonses to businesses or homeowners or violations of sanitation laws.

53.     The day-to-day activities of the Plaintiffs and the Sanitation Police are the same - to patrol the neighborhood in a vehicle and/or on foot and issue summonses for violations such as putting out garbage too early, dirty lots, and other violations.

54.     The Plaintiffs' job duties as Agents include, but are not limited to, issuing criminal summonses and Environmental Control Board (ECB) summonses, issuing parking summons, investigating complaints of violations, enforcing regulations and testifying in court.

55.     Likewise, the job duties of the Sanitation Police include issuing summonses, investigating complaints of violations, enforcing regulations and testifying in court.

56.     The working conditions of the Sanitation Police and Agents are the same, they both patrol on foot or in a vehicle, are exposed to the dangers posed as drivers and passengers in

vehicles, are exposed to extreme weather and fumes from patrolling sidewalks, are at risk of violent confrontation, and stand and are on their feet for prolonged periods.

57.     The required experience of Sanitation Police and Agents is the same – there is none.

58.     The educational requirements of the Sanitation Police and Agents is identical – a high school diploma or equivalent is required.

59.     The knowledge and ability required to perform the primary functions of the Sanitation Police and Agents is the same – knowledge of the relevant laws enforced by the DSNY, the ability to identify violations of law and prepare summonses, the ability to interact with the public and with violators.

60.     The training required for the performance of the primary functions of the Sanitation Police and Agents (i.e., issuing summonses) is the same – training with regard to the relevant laws enforced by the DSNY and how the DSNY enforces those laws. In fact, the training is so similar that in many instances Agents have provided *on the job training* of Sanitation Police.

**C.     The City Has Paid Agents Less than Sanitation Police**

61.     As to compensation, Sanitation Police are paid higher wages than Agents, along with better benefits such as longevity pay, full pay while on sick leave, three-quarters of pay accidental disability retirement, and 20 or 22 year service retirement.

62.     In contrast, Agents receive a pension only after age 62, and limited sick pay.

63.     Sanitation Police are receive base pay, not including overtime or benefits, of $77,318 a year after only 5.5 years of service.

64.     In contrast, many Agents, and all named Plaintiffs, are paid less than

approximately $50,000 after 15 and even 30 years of service.

65.     According to publicly available data, a white male Sanitation Police Officer, Ryan Kashuba, was paid base compensation of $83,465.00 in 2021, after only 8 years of service. In that same year the Plaintiff Ceceilia Rojas, a black female Agent with more than 30 years of service, was paid base compensation of only $43,324.00.

66.     According to the union contract which sets the salaries, as of January 20, 2021, Sanitation Police are paid a base salary (without overtime or longevity pay), as follows:

| Years of Service | Base Salary |
|---|---|
| First 6 months of employment (annualized) | $40,622 |
| Upon completion of 6 months | $44,064 |
| Upon completion of 1 ½ Years | $45,091 |
| Upon completion of 2 ½ Years | $48,203 |
| Upon completion of 3 ½ Years | $54,163 |
| Upon completion of 4 ½ Years | $69,055 |
| Upon completion of 5 ½ Years (Basic) | $83,465 |

67.     Plaintiffs are earning nowhere near these amounts. Their compensation below includes overtime, which is self-reported but also publicly available online:[6]

| Name | Base Salary | Years of Service |
|---|---|---|
| Dameka Dowdy | $43,000 | 15 years of service |
| Sandra Castro | $46,805 | 18 years of service |
| Cecelia Rojas | $49,545 | 33 years of service |
| Kevon Chisholm | $46,805 | 15 years of service |
| Marisol Concepcion | $43,249 | 14 years of service |
| Carmelita Gordon-Fleetwood | $43,000 | 15 years of service |

68.     But these statistics do not begin to reveal the true disparities in pay in the DSNY. In 2022, the City paid all Agents (i.e., approximately 210 Agents who were employed at any given time during the year) a combined total of $7.2 Million, including overtime, for an average pay of less than $35,000.00.

---

[6] https://www.seethroughny.net/payrolls (last visited 12/1/2023).

69.     In the same year, the City paid approximately $7.2 million to only <u>30</u> Sanitation Workers *all of whom are upon information and belief men*, for an average of pay of approximately $240,000.00 per worker. A list of these Sanitation Workers is annexed hereto as Exhibit 3.

70.     Also, there are numerous other contractual benefits that Sanitation Police receive that Agents do not receive, including, but not limited to, longevity pay, assignment differential, double time for Sundays and/or holidays, higher welfare and annuity fund benefits, a higher uniform allowance, and other benefits in their contracts.

71.     Further, compensation discrepancies will follow the Agents into their retirement as their pensions will be significantly lower due to their lower Final Average Salary upon which their pensions are calculated.

**D.      The City has bargained differently with Agents (as compared to Sanitation Workers), thereby cementing and in fact compounding unjustifiable disparities in pay.**

72.     Sanitation Police and Agents wear the same uniforms both modeled off the NYPD uniforms, with different patches, and minor differences in shirt color at the SEA level but not the ASEA level.

73.     Although Sanitation Police and Agents wear the same uniforms, the City treats the Sanitation Workers (97% male and more than 50% white) as having "uniformed" status similar to the NYPD and the FDNY, and treats Agents (38% female and 85% non-white) as a "civilian bargaining unit" for the purposes of union negotiations.

74.     As previously mentioned, the City recently agreed to increases between 3.25 and 4.00 percent for Sanitation Workers, consistent with the City's agreement with other "uniformed" civil service positions such as the *Police Benevolent Association.*

75.     Yet, the City has taken the position that Agents are not entitled to salary increases above the "civilian pattern."

76.     In other words, under the City's plan, the wages paid to garbage collectors assigned to the Sanitation Police detail will continue to grow at a disproportionate rate as compared to the gender diverse and overwhelmingly racial minority Agents, thus widening the disparity in pay between these gender and racially segregated groups.

**E.     There is no Reasonable Non-Discriminatory Explanation for the Differences in Pay Between Garbage Collectors Working as Sanitation Police and Agents**

77.     There is no labor market justification for the disparities in pay between Sanitation Workers (including those assigned to the Sanitation Police detail) and Agents.

78.     Any suggestion that the disproportionately large amounts paid to DSNY's Sanitation Workers (including those assigned to the Sanitation Police detail) are required in order to attract sufficient labor to the position is absurd. For example, according to a New York Times article from 1990, 101,000 applicants were scheduled to take the sanitation worker test, with only 2,000 to be hired over a four year period. This is not a historical anomaly. Upon information and belief, in 2015 more than 90,000 individuals applied for the Sanitation Worker position, but only 500 were hired.[7] Nevertheless, the City continues to provide disproportionate increases in pay to Sanitation Workers.

79.     At the same time, the City has denied significant increases in pay to Agents because, according to the City, significant pay increases are "usually the result of severe recruitment and retention issues."

80.     Statistics kept by the Occupational Information Network (O*NET) of the U.S.

---

[7] This has led one news outlet to observe that the DSNY acceptance rate for Sanitation Workers is (0.5%), which is lower than Harvard's acceptance rate. According to the Harvard College website, 56,937 individuals applied for admission to the most recent entering class, and almost 2,000, or about 3.5%, were admitted.  https://college.harvard.edu/admissions/admissions-statistics (last visited 12/1/2023).

Department of Labor do not lend support for the disparities in pay between Agents and garbage collectors. The Occupational Title that most closely resembles that of Sanitation Workers is Refuse and Recyclable Material Collector ("Refuse Collector").  Refuse Collectors "Collect and dump refuse or recyclable materials from containers into [a] truck [and] May drive [a] truck",[8] and include titles such as "Sanitation Laborer", "Garbage Man" and "Refuse Collector."

81.     The annual median wages of a garbage collection worker in the U.S., according to DOL Statistics, is $43,540.00.  As previously noted, the median wages of NYC garbage collectors is almost twice the national average – approximately $80,000.00.

82.     The annual median wages paid to NYC Sanitation Workers far exceeds the median wages of other Refuse Collectors in the city of New York, as well as of other major cities.  The City pays Sanitation Workers almost double the national average and significantly more than the median wages paid to Refuse Collectors in NYC and elsewhere.  The following depicts the differences in median pay between NYC Sanitation Workers as opposed to Refuse Collectors.

|  | All Refuse Collectors | NYC Sanitation Workers | % Difference |
|---|---|---|---|
| New York City | $61,650.00 | $79,058.00 | +22% |
| Chicago | $60,330.00 | $79,058.00 | +24% |
| Los Angeles | $57,280.00 | $79,058.00 | +28% |
| Nationwide | $43,540.00 | $79,058.00 | +45% |

83.     Upon review, the U.S. Department of Labor occupational title that most closely resembles that of the Agents is "Environmental Compliance Inspector" (hereinafter "ECI").  *See*

---

[8] https://www.onetonline.org/link/localwages/53-7081.00?st=NY

Occupational Information Network (O*NET) of the U.S. Department of Labor.[9]  ECIs "Determine the nature of code violations and actions to be taken, and issue written notices of violation, participating in enforcement hearings, as necessary."[10]

84.    According to the aforementioned source, ECIs include titles such as "Compliance Investigator[s]", "Enforcement Officer[s]" and "Waste Management Specialist[s]." The two most important core tasks of ECIs are to "Determine the nature of code violations and actions to be taken, and issue written notices of violation, participating in enforcement hearings, as necessary" and to "Prepare, organize, and maintain inspection records."  ECIs "investigate, prepare compliance documentation, testify at proceedings, coordinate enforcement of laws or regulations and explain regulations policies and procedures."

85.    Nationwide, ECIs like the Agents are paid *more* than Refuse Collectors like the Sanitation Workers.   Nationwide, the median wages of ECIs is $71,690.00 while the median wages of Refuse Collectors is $43,540.00.

**F.    There is no reasonable non-discriminatory explanation for selecting Sanitation Police from a group of garbage collectors, while denying such privilege to Agents.**

86.    In 1990, the state legislature, pursuant to N.Y. C.P.L. § 2.1(59) gave the DSNY the authority to designate "Officers and members of the sanitation police of the department of sanitation" as peace officers.

87.    Since receiving this authority, the DSNY has only selected sanitation police from a pool of Sanitation Workers that is 97% male and white majority and *not* selected Sanitation Police from a group of Agents who have prior law enforcement experience within the DSNY, but who happen to be 85% non-white and 38% female. There is no reasonable non-discriminatory

---

[9] https://www.onetonline.org/link/moreinfo/task/10829?r=summary&j=13-1041.01 (last visited 12/1/2023)
[10] *Id.*

explanation for exercising its discretion in this manner.

88.     There is no legitimate, non-discriminatory explanation for the DSNY to select Sanitation Police from a pool of garbage collectors that is only 2% women of color, and not select Sanitation Police from a group of Agents that have prior law enforcement experience within the DSNY, but are 37% women of color.

89.     There is no legitimate, non-discriminatory explanation for the DSNY to select Sanitation Police from a pool of garbage collectors that is only 1.3% black females, and not select Sanitation Police from a group of Agents that have prior law enforcement experience within the DSNY, but are almost 30% black females.

90.     A Sanitation Worker is selected based upon the ability to collect garbage, whether by hand or while operating a garbage truck. Their civil service test is designed to assess the extent to which candidates have certain abilities determined to be important to the performance of the tasks of a Sanitation Worker. The exam tests the following areas: Roll Call Activities; Waste Collection and Removal; Operation, Maintenance, and Preparation of Department Vehicles and Equipment; Communicating Information (Physical and Verbal); Garage Tasks; Snow Removal, Weather-Related Conditions, and Emergencies; and Preparation, Completion, and Review of Forms, Reports, and Logs.

91.     The physical requirements of the Sanitation Worker position are unrelated to law enforcement, and include:

- Lifting and carrying bags, cans and other items 10 to 100 lbs., 8 to 15 feet to a collection vehicle, 19 to 59 times per hour;

- Lifting and carrying bags, cans and other items, 51 to 70 lbs., 8 to 15 feet to a collection vehicle, one to six times per hour;

- With assistance, lifting and carrying large bags, weighing 70 to 150 lbs., 8 to 15 feet to a collection vehicle, one to six times per hour;

- With assistance, lifting and carrying mattresses and/or other large objects, weighing 100 lbs., to a collection vehicle, three to four times per month;

- Carrying bags or cans, weighing 51 to 70 lbs., 20 to 40 feet one to two times per month;

- Pulling and/or dragging bags, 70 to 100 lbs., one to six times per day;

- Pulling and/or dragging bags, 100 to 125 lbs., one to two times per week;

- Climbing into the cab of the collection vehicle 1 to 19 times per hour;

- Climbing on top of the truck to check oil or perform routine maintenance 1 to 2 times per month;

- Walking alongside the collection truck from one pickup point to the next, 1 to 19 times per hour;

- Driving Sanitation trucks and other heavy equipment such as front-end loaders and snowplows.

92.     On the other hand, Agents are selected based upon their ability to *investigate and enforce laws.* Task areas tested include municipal inspections for violations; writing and preparing summonses; recording hourly activity, types and number of summonses issued; researching property information; reporting on daily activity and unusual incidents; investigating complaints of unsanitary and/or hazardous conditions received from members of the public; performing field surveys; recordkeeping and report writing; and preparation of cases relating to summons."

93.     The New York City Police Officer exam tests the following nine specific aptitudes: (1) Written Comprehension; (2) Written Expression; (3) Memorization; (4) Problem Sensitivity; (5) Inductive Reasoning; (6) Deductive Reasoning; (7) Information Ordering; (8) Spatial Orientation and (9) Visualization.

94.     The Enforcement Agent exam covers the same nine specific aptitudes tested by the New York City Police Officer exam: (1) Written Comprehension; (2) Written Expression; (3) Memorization; (4) Problem Sensitivity; (5) Inductive Reasoning; (6) Deductive Reasoning; (7) Information Ordering; (8) Spatial Orientation and (9) Visualization.

95.     In other words, Sanitation Workers (97% male and more than 50% white) are eligible to be assigned as Sanitation Police, despite the fact that they were selected based upon their ability to collect garbage, while Agents (85% minority and 38% female) are categorically ineligible to be assigned as Sanitation Police despite the fact that they were selected based upon aptitudes for which New York City Police Officers are selected.

**G.     The Agents are Qualified and Able to Perform the Duties of the Sanitation Police**

96.     Agents are qualified to be assigned to the Sanitation Police, and are in fact more qualified than garbage collectors to be Sanitation Police.

97.     Each of the Agents, including the named plaintiffs,

- Has passed a civil service exam which tests the same aptitudes as the test for New York City Police Officer, including the ability to conduct investigations, understand laws, and issue summonses;

- Has passed drug screenings;

- Has a valid driver's license and are able to operate patrol vehicles and patrol on foot;

- Is able to work outdoors in all kinds of weather and patrol on foot for long periods of time;

- Has experience in issuing summonses, conducting investigations, and enforcing the laws administered by the DSNY.

98.     Each of the Plaintiffs is ready, willing and able to be a member of the Sanitation Police. They know of no impediment, psychological or physical, which would interfere with their ability to perform the duties of the Sanitation Police. In fact, as previously stated herein, they are already performing the same primary duties as the Sanitation Police.

99.     Sanitation workers, on the other hand, before they are reassigned to the Sanitation Police detail:

- Have passed exams and physical tests designed to determine whether they are able to collect garbage and operate garbage trucks;

- Do not have prior law enforcement experience;

- Have not issued summonses for violation of the laws that DSNY administers;

- Have not patrolled on foot or in vehicles;

- Have not conducted investigations.

100.    The City has not provided any reasonable explanation why the gender and racially diverse group of Agents are *categorically excluded* from being considered for reassignment to the Sanitation Police, although their aptitudes for law enforcement have already been tested, and they have had training and experience in enforcing the very laws enforced by DSNY.

101.    To be clear, it would be indeed futile for the Agents to volunteer for the Sanitation Police, as the DSNY *does not* appoint Agents to be Sanitation Police. Agents are ineligible as

explicitly stated by the DSNY: "If you are seriously interested in become a Sanitation Police Officer, _and_ are employed by the Department of Sanitation _in the civil service title of Sanitation Worker_, send your resume..."

**H.    Differences, if any, between the duties of the Sanitation Police and the Agents are insignificant and exist only as part of the DSNY's discriminatory practices against the Agents.**

102.    The City has attempted to create differences between the Sanitation Police and Agents in order to justify significant disparities in pay.

103.    For example, the DSNY has asserted that garbage collectors assigned to the Sanitation Police detail are entitled to higher pay than Agents because they have "peace officer" status, carry firearms, and are provided with specialized training as required by NY Crim. Proc. Law § 2.30.

104.    The City's explanation for paying significantly more to Sanitation Police is not credible, considering that Sanitation Police are actually Sanitation Workers who do not earn any additional compensation as a result of being assigned to the Sanitation Police detail.  The City does not _pay them_ to be Sanitation Police. Instead, City pays them like all other Sanitation Workers who perform garbage collection.

105.    This further begs the question of why Agents, who are already part of the Enforcement Division and who have already demonstrated law enforcement qualifications as previously described, are _categorically denied_ reassignment to the Sanitation Police, while garbage collectors are able to volunteer for the Sanitation Police detail.

106.    By designating only designating Sanitation Workers as peace officers, the DSNY has denied the Agents privileges and training offered to a male dominated and majority white workforce. The categorical denial of such peace officer status and related training to an

overwhelmingly minority and gender-diverse group such as the Agents, without any reasonable explanation, is simply another form of discrimination.

107.    The Enforcement Division has marching orders from the DSNY – it issues approximately 500,000 summonses on a yearly basis. The Enforcement Division has thereby generated significant income for the City. The people who are issued summonses are of course often upset. Some, however, are angry, belligerent, and confrontational.[11] Yet, Sanitation Police issuing the same summons as issued by Agents are cloaked with the authority of a police officer and armed.

108.    Most importantly, however, the Sanitation Police *do not exercise* their peace officer status, and therefore the designation does not create a material difference between the Sanitation Police and Agents. Upon information and belief, the DSNY has never publicized any arrest made by Sanitation Police, nor has it published any arrest statistics for Sanitation Police. In fact, upon information and belief, garbage collectors assigned to the Sanitation Police detail do not effectuate any arrests, but instead call the NYPD when faced with criminal activity.

I.    **The City's Policies Have Had a Disparate Impact on the Basis of Race and Gender**

109.    The City's facially neutral policies of (1) selecting sanitation police from a group of garbage collection volunteers, while categorically refusing to reassign Agents to the Sanitation Police Detail, and (2) negotiating with garbage collection workers as "uniformed" employees, while negotiating with Agents (who wear the same uniform) as "civilian" employees have had a disparate impact on the basis of sex and race.  The City, despite being advised of the existence of occupational segregation and its impact on women and minorities, has not adequately monitored

---

[11] *See* https://www.youtube.com/watch?v=6PbbHEC1jVg (last visited 12/1/2023) and
https://www.youtube.com/watch?v=puSVoizb4So (last visited 12/1/2023) for examples of confrontational behavior.

for race and sex discrimination through occupation segregation, and instead has taken steps to compound such discrimination.

110.   The City's reassignment of garbage collection workers as Sanitation Police has resulted in continued occupational segregation and has had a disparate impact on the basis of sex and race.

111.   According to recent statistics obtained from the DSNY, the Sanitation Police detail consists of 67 sanitation workers.  The racial and gender composition of the Sanitation Police detail mirrors the composition of the garbage collection workforce.  According to these statistics, the Sanitation Police are 88% male and 46% white. These statistics are annexed here as Exhibit 2.

112.   The facially neutral policy has had a direct impact on women and racial minorities, because the City has inexplicably disqualifies Agents (85% racial minorities and 38% women) and instead selects volunteers from a segregated workforce of garbage collectors (97% male and predominantly white).

113.   The Enforcement Division consists of Agents and garbage collection workers assigned to the Sanitation Police detail.  The City has not identified any legitimate non-discriminatory explanation for pulling garbage collection workers to the Enforcement Division as police officers, when at the moment they are selected the Agents already assigned to the Enforcement Division have vast experience in enforcement, while garbage collectors do not.

114.   During the bargaining, the City and the unions establish pattern increases in total compensation for "civilian" unions and "uniformed" unions.  In several cycles the pattern percentage increases for "uniformed" unions have exceeded those for "civilian" unions; in none of the cycles has the civilian pattern percentage increases exceeded those for uniformed unions.

115.     In this case, as previously mentioned, the union representing Agents is the Law Enforcement Employees Benevolent Association, while the union representing the Sanitation Workers is aptly named "International *Brotherhood* of Teamsters, Local 831: The Uniformed *Sanitationmen's* Association."

116.     Although the Agents and Sanitation Workers indeed wear the same uniform, and although Agents perform a law enforcement function, the City treats Agents as "civilians" and treats garbage collection workers as "uniformed" like the New York City Police Department. This cements and in fact compounds differences in pay between segregated workforces, and thereby between men and women, and whites and racial minorities.

117.     The City has been advised by the City Council that a large part of the reason that City employees who are racial minorities and/or women are paid less than white and/or male employees is that employees in a job title populated largely by minorities are paid less than employees in a different title populated largely by male and/or white employees.

118.     The City has several agencies with access to information about the pay of employees in each title at each agency.  Yet the City has not designated any agency to monitor pay to identify possible instances of occupational segregation resulting in pay discrimination against racial minorities or adopted any plans to rectify compensation differentials when instances are identified.

119.     The DSNY has refused to occupational segregation and disparities in pay between based upon sex and race, claiming that "No person is unlawfully excluded from employment opportunities based on race [or] sex[.]"[12]

120.     The City has not designated an agency to monitor pay disparities and has not developed action plans to address any disparities that are identified.  There has been no process

---

[12] https://www.nyc.gov/assets/dsny/site/employment-opportunities/eeo-policy (last visited 12/1/2023).

to prevent the continuation of employment practices which contribute to historical inequalities in pay, such as, in this case, assigning garbage collectors to a "Sanitation Police" detail within the Enforcement Division, providing them with peace officer status, and using negotiating policies to cement such inequalities in pay.

121.    As discussed above, the City cannot show that its practices bear a significant relationship to any significant business objective. And even if it could, the City has less discriminatory alternatives, including (1) equalizing the pay of Agents and Sanitation Police (2) granting peace officer status and training to Agents, (3) permitting Agents to volunteer for the Sanitation Police detail.

## V. CLASS ACTION ALLEGATIONS

122.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

123.    Plaintiffs bring all causes *other than the first cause of action* (Equal Pay Act Claims) pursuant to Rule 23 of the Federal Rules of Civil Procedure.

124.    Plaintiffs, who are all racial minorities, bring counts *Two, Three, Four, Five and Six* on their own behalf and as representatives of a class or classes consisting of all past, present, and future Agents who are racial minorities.  All Plaintiffs are members of the Class they seek to represent.

125.    Plaintiffs Dameka Dowdy, Sandra Castro, Cecelia Rojas, Kevon Chisolm, Marisol Concepcion, Rasheen Odom, and Carmelita Gordon-Fleetwood bring counts *Three, Four, Five and Six* on their own behalf and as representatives of a class or classes consisting of all past, present and future agents who are female.  These women are members of the Class they seek to represent.

126.    Plaintiffs reserve the right to amend or refine the definition of the proposed Classes or Subclass(es), based on discovery or legal developments.

127.    Plaintiffs and the Classes bring this action for equitable relief and damages pursuant to Federal Rule of Civil Procedure 23.

128.    The members of the Class(es) identified herein are so numerous that joinder of all members is impracticable. More than 40 Agents currently employed by the DSNY are female. More than 40 Agents currently employed by the DSNY are non-white.  More than 40 Agents currently employed by the DSNY are women of color.  The actual number of class members is higher because the Class(es) include Agents that have left employment. As a result, joinder of all Class members in a single action is impracticable.

129.    There are questions of law and fact common to the members of the Class, including but not limited to: whether the City subjected Agents to disparate treatment in the terms and conditions of employment; if so, whether the disparate treatment occurred under circumstances giving rise to an inference of discrimination; whether such discrimination was on account of sex, color, or the intersection thereof; the nature and extent of damages, and whether equitable, compensatory, and punitive damages for the Class are warranted.

130.    These and other questions of law and/or fact are common to each and every Class Member and predominate over any questions affecting only an individual Class Member.

131.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

132.    Plaintiffs will fairly and adequately represent and protect the interest of the Class(es). Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

133.    Accordingly, the interests of the Class(es) will be adequately protected and advanced. In addition, there is no conflict of interest between the representatives of the proposed Class and members of the Class.

134.    Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the Class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

135.    The Classes are ascertainable, as the City maintains information regarding the gender and race of each Agent, and notice can be provided to the Class Members, who are all current or former City employees, through the same or similar methods or techniques that the City uses to contact its current and former employees.

136.    Certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) because the questions of law and fact common to members of the Class predominate over any questions affecting only individual members. This class action is superior to other available remedies for the fair and efficient adjudication of this controversy.

## VI. COLLECTIVE ACTION ALLEGATIONS

137.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

138.    Plaintiffs bring their Equal Pay Act claims on behalf of themselves and all past and present Agents who file a consent to join this action (the "Collective").

139.   The Plaintiffs and Collective are similarly situated in that they performed work that was substantially equal to the work of Garbage Collection workers assigned to the Sanitation Police detail,

140.   Upon information and belief there are other similarly situated Agents who would benefit from notice and an opportunity to join this action. The putative Collective consists of approximately 150 Agents currently employed, as well as many who have left employment.

141.   The female Agents performed work substantially equal to male Sanitation Police, and were paid less than their male comparators.

142.   Conversely, the male Agents performed work substantially equal to female Sanitation Police, and were paid less than their female comparators.

## VII. COUNTS

### *Count One:*

### Equal Pay Act of 1963

143.   Plaintiffs repeat and reallege each allegation contained in all other paragraphs of this Complaint as though fully set forth herein.

144.   Defendant employed the Enforcement Agents and their comparators, Garbage Collection Workers assigned to the Sanitation Police detail.

145.   Defendant paid and continues to pay different wages to Enforcement Agents than paid to employees of the opposite sex assigned as Sanitation Police.

146.   The Defendant pays female Enforcement Agents less than males assigned to the Sanitation Police.

147.   The Defendant pays male Enforcement Agents less than females assigned to the Sanitation Police.

148.     These employees perform equal work on jobs requiring equal skill, effort, and responsibility.

149.     The Enforcement Agent and Sanitation Police jobs are performed under similar working conditions.

*Count Two:*

**Disparate Treatment Claims Under 42 U.S.C. §§ 1981 and 1983**

150.     Plaintiffs reallege each of the paragraphs above as if they were expressly set out in this paragraph.

151.     The City has impaired under color of state and municipal law the right of Plaintiffs to make and enforce contracts of employment, which under 42 U.S.C. § 1981 shall be the same as the right of white persons, in that the City through the DSNY has discriminatorily paid Sanitation Agents, because they are primarily racial minorities, lower salaries than Sanitation Workers assigned to the Sanitation Police Detail, even though the Agents' job duties, and the risks associated with performing the duties, warrant Agents being paid salaries equal to, if not larger than, Sanitation Police.

152.     In making its decisions concerning the compensation of Agents relative to Sanitation Workers assigned to the Sanitation Police, the City and its officials and managers have acted under color of the statutes, ordinances, regulations, customs, and usages, of the laws of the State of New York which, among other things, delegate authority over these decisions to the City.

153.     The City has subjected the Plaintiffs to the deprivation of the rights, privileges, or immunities secured by 42 U.S.C. § 1981, as set forth above.

154.    The discrimination in compensation has been performed pursuant to a policy or custom within the City entitling Plaintiffs to relief under 42 U.S.C. § 1983. The discrimination has been so persistent or widespread to constitute a custom or usage with the force of law. It also has been so manifest as to imply the constructive acquiescence of senior policy-making officials within DSNY, which is the City's agent, and the City Government. The City's failure to make non-discriminatory decisions and to train and supervise its employees to avoid discriminatory decisions display a deliberate indifference to the constitutional rights of Agents, who are primarily racial minorities.

155.    Plaintiffs have been damaged by the discrimination in compensation relative to Sanitation Police since 1990 or such later date as they first became employed as Agents. This damage takes the form of lost pay, lost overtime, and diminishment of those employee benefits tied to pay levels. Plaintiffs will be damaged in the future by the discrimination unless injunctive relief is entered.

### *Count Three:*

### Disparate Treatment Claims Under Title VII

156.    Plaintiffs reallege each of the paragraphs above as if they were expressly set out in this paragraph.

157.    The City has discriminated against Plaintiffs in their compensation because of their race, sex and/or the intersection thereof in violation of Title VII, in that the City through the DSNY has been motivated to pay Agents, because they are disproportionately racial minorities and/or females, lower salaries than Sanitation Police even though Enforcement Agent job duties, and the risks associated with performing the duties, warrant Agents being paid salaries equal to Sanitation Police.

158.    The City has discriminated against Plaintiffs by categorically refusing to permit Agents to serve on the Sanitation Police detail, refusing to designate them as "peace officers", and instead offering the Sanitation Police title to a group of Sanitation Workers who are responsible for garbage collection and less qualified than Plaintiffs to be so designated.

159.    The discrimination in relative to Sanitation Police against Plaintiffs has been so manifest as to imply the constructive acquiescence of senior policy-making officials within DSNY, which is the City's agent, and the City Government. The City's failure to make non-discriminatory decisions and to train and supervise its employees to avoid discriminatory decisions display a deliberate indifference to the rights of Agents, who are disproportionately racial minorities and females.

160.    Plaintiffs have been damaged by the discrimination in compensation relative to Sanitation Police throughout the liability period under Title VII. This damage takes the form of lost pay, lost overtime, and diminishment of those employee benefits. Plaintiffs will be damaged in the future by the discrimination unless injunctive relief is entered.

### *Count Four:*

### Disparate Treatment Claims Under the NYCHRL

161.    Plaintiffs reallege each of the paragraphs above as if they were expressly set out in this paragraph.

162.    The City has discriminated against Plaintiffs in their compensation because of their race in violation of N.Y.C. Admin. Code § 8-107.1(a)(3), in that the fact that the Agents are primarily racial minorities and/or females has been a factor in the City's decision to pay Agents lower salaries than Sanitation Workers assigned as Sanitation Police even though Agents' job

duties, and the risks associated with performing the duties, warrant them being paid salaries equal to Sanitation Police.

163.    The City has discriminated against Plaintiffs by categorically refusing to permit them to be appointed as Sanitation Police, and refusing to designate them as "peace officers", and instead offering the Sanitation Police title to a group of Sanitation Workers who are responsible for garbage collection and less qualified than Plaintiffs to be so designated.

164.    The City has violated the rights of Plaintiffs in violation of N.Y.C. Admin. Code § 8-107.13(b)(2) in that it knew of the compensation discrimination practiced by its employees or agents against Agents and acquiesced and in fact endorsed such conduct or failed to take immediate and appropriate corrective action. Among other indicia of the City's knowledge, its managers or supervisors knew of the discrimination practiced by its employees or agents.

165.    The City has violated the rights of Plaintiffs in violation of N.Y.C. Admin. Code § 8-107.13(b)(3) in that it should have known of the discriminatory conduct of its employees and agents and failed to exercise reasonable diligence to prevent such discriminatory conduct.

166.    The discrimination in compensation relative to the Sanitation Workers assigned as Sanitation Police against Plaintiffs has been so manifest as to imply the constructive acquiescence of senior policy-making officials within the DSNY, which is the City's agent, and the City Government. The City's failure to make non-discriminatory decisions and to train and supervise its employees to avoid discriminatory decisions display a deliberate indifference to the rights of Agents who are primarily racial minorities and significantly female.

167.    The City has discriminatorily and intentionally paid Sanitation Workers who are assigned as Sanitation Police more than Agents in violation of the NYCHRL on a continuous basis since 1990, and continuing up to the present.

168.    Plaintiffs have been damaged by the discrimination in compensation relative to Sanitation Police throughout the liability period under the NYCHRL, including the period back to FY 1990, under which it is liable under the continuing violation doctrine. This damage takes the form of lost pay, lost overtime, and diminishment of those employee benefits tied to pay levels Agents. Agents will be damaged in the future by the discrimination unless injunctive relief is entered.

### Count Five:

### Disparate Impact Claims Under Title VII

169.    Plaintiffs reallege each of the paragraphs above as if they were expressly set out in this paragraph.

170.    Since approximately 1990, the City has engaged in the practice of reassigning only garbage collectors who volunteer to be part of its Sanitation Police detail.  The City has exercised its authority to designate these Sanitation Workers as peace officers and provided them with training as required by such designation.  The City also has refused to agree to uniformed percentage pattern increases for Agents, even though they wear the same uniform as Sanitation Workers. Finally, the City has failed to require one of its agencies to monitor against racial pay discrimination arising out of occupational segregation between its agencies.

171.    The City pays significantly more to Sanitation Workers than to Agents, even when such Sanitation Workers are assigned to the Sanitation Police detail, thereby performing the same work as Agents.

172.    The practices described in the paragraph above, combined with the fact that a much higher percentage of Sanitation Workers are white and/or male than Agents, have created a

disparate impact in violation of Title VII under which racial minorities and/or women receive lower compensation than white employees.

173.     The City has had no valid business reasons for engaging in the practices that have caused Sanitation Workers assigned as Sanitation Police to be paid more than Agents. Indeed, the job duties, and the risks associated with performing the duties, of the Agent and Sanitation Police assignments warrant equal pay.

174.     Plaintiffs have been damaged by the disparate impact discrimination described above throughout the Title VII liability period or since such later date as they were first employed as Agents. This damage takes the form of lost salary, lost overtime, and diminishment of those employee benefits tied to pay levels. Plaintiffs will be damaged in the future by the discrimination unless injunctive relief is entered.

*Count Six:*

**Disparate Impact Claims Under the New York City Human Rights Law**

175.     The Plaintiffs reallege each of the paragraphs above as if they were expressly set out in this paragraph.

176.     Since approximately 1990, the City has engaged in the practice of reassigning only garbage collectors who volunteer to be part of its Sanitation Police detail.  The City has exercised its authority to designate these Sanitation Workers as peace officers and provided them with training as required by such designation.  The City also has refused to agree to uniformed percentage pattern increases for Agents, even though they wear the same uniform as Sanitation Workers. Finally, the City has failed to require one of its agencies to monitor against racial pay discrimination arising out of occupational segregation between its agencies.

177.    The City pays significantly more to Sanitation Workers than to Agents, even when such Sanitation Workers are assigned to the Sanitation Police detail, thereby performing the same work as Agents.

178.    The practices described in the paragraph above, combined with the fact that a much higher percentage of Sanitation Workers are white and/or male than Agents, have created a disparate impact in violation of N.Y.C. Admin. Code § 8-107.17(a)(1) under which women and/or racial minorities receive lower compensation than male and/or white employees.

179.    The City's practices described above have not had a significant relationship to its significant business objectives. Indeed, the Agents' job duties, and the risks associated with performing the duties, warrant Agents being paid salaries equal to Sanitation Workers on the Sanitation Police detail.

180.    Even if the City could prove that its practices have had a significant relationship to its significant business objectives, the City violated N.Y.C. Admin. Code § 8-107.17(a)(2) by failing to engage in the alternative policy or practice of paying Agents on the same scale as Sanitation Workers assigned to the Sanitation Police, which would have had less disparate impact on protected racial groups.

181.    The City's practices described above have had a disparate impact on the basis of sex and/or race.

182.    Plaintiffs have been damaged by the discriminatory disparate impact throughout the liability period under the NYCHRL, during which the City is liable under the continuing violation doctrine. This damage takes the form of lost pay, lost overtime, and diminishment of those employee benefits tied to pay levels for Subclass members. Subclass Members will be damaged in the future by the disparate impact unless injunctive relief is entered.

## VIII. RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court:

A.      Grant a permanent injunction enjoining Defendants from engaging in the ongoing employment practices violating state and federal law;

B.      Order Defendants to institute and carry out policies, programs and practices which provide equal employment opportunities for all employees of Defendant to eradicate the effects of the ongoing violations of federal law;

C.      An award of compensatory damages, including lost back pay and benefits with prejudgment interest (retroactive payments, retroactive pension contributions, and return to top of pay scale), past and future lost wages and benefits, past and future pecuniary losses and compensatory damages, and for attorney's fees, and costs; and

D.      Such other and further relief as the Court deems just and proper.

## IX. JURY TRIAL

Plaintiff demands a trial by jury on all issues properly before this Court and all questions of fact raised by this Complaint.

Dated: New York, New York
       December 5, 2023

Respectfully submitted,

Seelig Law Offices, LLC
By:
       /s/ *Philip H. Seelig*
Philip H. Seelig, Esq.
Matthew J. Porcaro, Esq.
299 Broadway, Suite 1600
New York, New York 10007
(212) 766-0600

Moser Law Firm P.C.
By:
_____/s/ Steven Moser_____
Steven Moser, Esq.
5 East Main Street
Huntington, NY 11743
(516) 671-1150
steven.moser@moserlawfirm.com
*Attorneys for Plaintiffs*