22 Civ. 6284 (ALC)(SDA)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAMEKA DOWDY, JEFFREY HUNTER, SEAN
MILAN, JOEL PURSER, SANDRA CASTRO, CECELIA
ROJAS, KEVON CHISHOLM, RICHARD ORTEGA,
MARISOL CONCEPCION, ROBERT TABON,
RASHEEN ODOM, CARMELITA GORDON-
FLEETWOOD, and RAYMOND PACHECO,

On behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

THE CITY OF NEW YORK,

Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street, Room 2-123*
*New York, N.Y. 10007*

*Of Counsel: Talysia Francis*
*Tel: (212) 356-2465*
*Matter No.: 2022-044833*

Talysia Francis,
Bruce Rosenbaum,
 Of Counsel.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ................................................................ 3

ARGUMENT ................................................................ 6

    POINT I ................................................................ 6

        PLAINTIFFS' CLAIMS ARE TIME-BARRED, IN
PART BY THEIR RESPECTIVE STATUTES OF
LIMITATION ................................................................ 6

    POINT II ................................................................ 7

        PLAINTIFFS FAIL TO STATE A PLAUSIBLE
TITLE VII DISPARATE IMPACT CLAIM ................................................................ 7

        A.  Plaintiffs Lack Standing To Bring A Disparate
Treatment Or Impact Claim On Behalf Of
Either Themselves Or A Putative Class ................................................................ 7

        B.  Plaintiffs Have Not Suffered An Injury In Fact
Sufficient to Confer Standing To Challenge
The City's Alleged Policies. ................................................................ 8

        C.  The Relief Sought Would Not Redress
Plaintiffs' Alleged Injuries. ................................................................ 12

        D.  Plaintiffs Fail To State A Plausible Disparate
Impact Claim ................................................................ 16

    POINT III ................................................................ 18

        PLAINTIFFS FAIL TO STATE A PLAUSIBLE
INTENTIONAL DISCRIMINATION CLAIM ................................................................ 18

        A.  Plaintiffs' Individual Disparate Treatment
Claims Fail to State a Claim ................................................................ 18

        B.  Plaintiffs Have Not Plausibly Alleged A 42
U.S.C. § 1983 Municipal Liability Claim ................................................................ 22

POINT IV.................................................................................................................... 22

        PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A
        CLAIM PURSUANT TO THE EQUAL PAY ACT.............................. 22

CONCLUSION.......................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

In re Abady,
   22 A.D.3d 71, 800 N.Y.S.2d 651 (1st Dep't 2005)...................................................................25

Acosta v. Kelly,
   No. 101573/04, 2005 NY Slip Op 30488(U), 2005 N.Y. Misc. LEXIS 8476
   (Sup. Ct. NY Co. 2005) ...........................................................................................................24

Amtrak v. Morgan,
   536 U.S. 101 (2002)....................................................................................................................7

Ass'n in Emp't, Inc. v. City of Bridgeport,
   647 F.2d 256 (2d Cir. 1981).....................................................................................................15

Brown v. Coach Stores,
   163 F.3d 706 (2d Cir. 1998).....................................................................................................16

Chalmers v. City of New York,
   20-cv-3389 (AT) (S.D.N.Y.)........................................................................................1, 2, 18, 24

Chin v. Port Auth. of N.Y. & N.J.,
   685 F.3d 135 (2d Cir. 2012).......................................................................................................7

Claridge Assoc., LLC v. Schepis,
   2020 U.S. Dist. LEXIS 207012 (S.D.N.Y. Nov. 5, 2020).......................................................25

Clinton v. City of N.Y.,
   524 U.S. 417 (1998)..................................................................................................................11

Cohen v. W. Haven Bd. of Police Commrs.,
   638 F2d 496 (2d Cir. 1980)......................................................................................................15

Dowdy v. N.Y. City Dept. of Sanitation,
   No. 22-CV-6284 (ALC), 2023 U.S. Dist. LEXIS 171625 (S.D.N.Y. Sep. 26,
   2023) ...............................................................................................................................8, 9, 10

Duplan v. City of New York,
   888 F.3d 612 (2d Cir. 2018)......................................................................................................6

Engelmann v. Nat'l Broadcasting Co.,
   No. 94 Civ. 5616 (MBM), 1996 U.S. Dist. LEXIS 1865 (S.D.N.Y. Feb. 21,
   1996) ........................................................................................................................................21

Helm v. PHH Mtge. Corp.,
   193 A.D.3d 420 (1st Dept 2021)..............................................................................................25

Houser v. Pritzker,
  28 F. Supp. 3d 222 (S.D.N.Y. 2014)......................................................................8, 12

In re Initial Pub. Offering Sec. Litig.,
  471 F.3d 24 (2d Cir. 2006), decision clarified on denial of reh'g, 483 F.3d 70
  (2d Cir. 2007)........................................................................................................7

Kanat v. Ochsner,
  301 A.D.2d 456, 755 N.Y.S.2d 371 (1st Dep't 2003)............................................25

Lewis v Am. Sugar Ref., Inc.,
  325 F. Supp. 3d 321 (S.D.N.Y. 2018)....................................................................15

Lujan v. Defs. of Wildlife,
  504 U.S. 555 (1992)..........................................................................................10, 11

Meserole St. Recycling, Inc. v. City of N.Y.,
  2009 U.S. Dist. LEXIS 153288 (S.D.N.Y. Nov. 25, 2009)....................................24

Patterson v. County of Oneida,
  375 F.3d 206 (2d Cir. 2004).................................................................................22

People v. MacDonnell,
  133 A.D.2d 177 (2d Dep't 1987).........................................................................24

Prince v. City of N.Y.,
  108 A.D.3d 114 (1st Dep't 2013)........................................................................24

Ricci v. DeStefano,
  557 U.S. 557 (2009)............................................................................................16

Smith v. City of Jackson,
  544 U.S. 228 (2004)............................................................................................16

United Prob. Officers Ass'n v. City of N.Y.,
  No. 21 Civ. 0218 (RA), 2022 WL 875864, 2022 U.S. Dist. LEXIS 53606
  (S.D.N.Y. Mar. 24, 2022).................................................................................9, 16

Wal-Mart Stores, Inc. v. Dukes,
  564 U.S. 338 (2011)............................................................................................17

Whitmore v. Arkansas,
  495 U.S. 149 (1990)............................................................................................10

**Statutes**

29 U.S.C. § 225(a)..................................................................................................6

42 U.S.C. § 1983...........................................................................................passim

42 U.S.C. § 2000e-2(k)(1)(A)(i) ...........................................................................16

42 U.S.C. § 2000e-5(e)(1) ...................................................................................6

Equal Pay Act of 1963 ..................................................................................*passim*

New York City Human Rights Law ...............................................................*passim*

New York State Human Rights Law ..............................................................*passim*

N.Y. Admin. Code § 12-307(a)(4) ......................................................................14

N.Y. Admin. Code § 12-311 ...............................................................................14

N.Y. Crim. Proc. Law § 2.10 .............................................................................13

N.Y. Crim. Proc. Law § 2.10(59) ...................................................................4, 23

**Other Authorities**

Federal Rules of Civil Procedure Rules 12(b)(2) and (6) ........................................2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

DAMEKA DOWDY, et al.,

                                Plaintiffs,
                                           No. 22 Civ. 6284 (ALC)(SDA)

             – against –

THE CITY OF NEW YORK,

                                Defendant.
------------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE
THIRD AMENDED CLASS ACTION
COMPLAINT**

## PRELIMINARY STATEMENT

Plaintiffs, all non-white men and women employed by the City of New York ("the City") with the New York City Department of Sanitation ("DSNY") as Sanitation Enforcement Agents or Associate Sanitation Enforcement Agents (collectively referred to as "SEAs"), bring this putative class action against the City, alleging that the City discriminates and compensates SEAs less than Sanitation Workers for substantially equal work in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("SHRL"), the New York City Human Rights Law ("CHRL"), the Equal Pay Act of 1963 ("EPA"), and 42 U.S.C. § 1983 ("§ 1983"). After two prior unsuccessful attempts, see ECF Dkt. Nos. 1, 11-14, 28, Plaintiffs claim to have modeled this Third Amended Complaint ("TAC") on the complaint filed in the case of Chalmers v. City of New York, 20-cv-3389 (AT) (S.D.N.Y.), which they contend is factually similar to the allegations they now set forth in their TAC. See ECF Dkt. No. 146 at n.1. However, as explained below, the fact pattern in Chalmers is not comparable to the facts alleged

in this case.  Nor do the additional allegations set forth in the TAC overcome the grounds for dismissal of Plaintiffs' First Amended Complaint.

The TAC attempts to model itself after the <u>Chalmers</u> complaint allegations by including numerous paragraphs in the TAC setting forth alleged salary differentials between Sanitation Workers in New York City, who are largely encumbered by non-minority males, and SEAs, who are largely encumbered by minority and women employees.  The TAC also sets forth alleged similarities between the duties and responsibilities of Sanitation Workers temporarily assigned to Sanitation Police duties and the duties and responsibilities of SEAs.  However, in essence, plaintiffs continue to press the contentions set forth in their dismissed First Amended Complaint (1) that the DSNY's requirement that only Sanitation Workers may be assigned to perform duties as Sanitation Police, in other words, requiring that SEAs pass the civil service examination for Sanitation Worker and otherwise meet the requirements for Sanitation Worker, acts as an artificial and discriminatory barrier to be assigned as to the Sanitation Police detail and has a disparate impact on SEA women and minorities and (2) that Sanitation Workers temporarily assigned to perform duties as Sanitation Police perform equal or comparable to work performed by SEAs but are compensated more than SEAs.

Defendants now move to dismiss the Third Amended Class Action Complaint ("FAC") in its entirety pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure. At the threshold, Plaintiffs lack standing to pursue their disparate impact claims.  Moreover, Plaintiffs' disparate impact claims brought under Title VII, SHRL, and CHRL must be dismissed as the TAC is devoid of any plausible allegations of the requisite causal connection between the complained of DSNY policy or practice and the alleged disparity.  Plaintiffs' Equal Pay Act claim fails because plaintiffs have not asserted anything more than conclusory allegations of wage

discrimination and have failed to allege that male Sanitation Police Officers performed a substantially equivalent job duty to the female SEA plaintiffs. Plaintiffs' § 1983 claim fails as plaintiffs have not alleged any intentional discrimination and a § 1983 claim cannot be brought to vindicate rights conferred by Title VII or the Equal Pay Act.

## **STATEMENT OF FACTS**[1]

DSNY employs Sanitation Enforcement Agents, under the civil service titles of Sanitation Enforcement Agents ("SEAs") or Associate Sanitation Enforcement Agents ("ASEAs"). ECF Dkt. No. 146, TAC, ¶ 2. The named plaintiffs are or were SEAs or ASEAs. Id., ¶ 17. Plaintiff are all minority male and female employees. Id.,¶¶ 18-29. Hereinafter, Defendants will refer to SEAs and ASEAs collectively as "SEAs".

The TAC alleges that the DSNY employs approximately 6,500 Sanitation Workers, to whom the TAC derisively refers throughout the TAC as "garbage collectors," who are primarily male, and concedes that Sanitation Workers "primary responsibility is to collect garbage and to clean the streets." Id., ¶ 32. Plaintiffs allege that the job duties of SEAs are to "enforce laws that govern clean streets and sidewalks, dumping, and proper storage and disposal of waste and recyclable materials" and "include, but are not limited to, issuing criminal summonses and Environmental Control Board (ECB) summonses, issuing parking summons, investigating complaints of violations, enforcing regulations and testifying in court." Id., ¶¶ 35, 36, 54. Yet, Plaintiffs compare the duties they perform to those of Sanitation Workers "whose primary responsibility is to collect garbage and to clean the streets." Id., ¶ 32.

---

[1] This statement of facts is derived from allegations made in the Third Amended Class Action Complaint (ECF Dkt. No. 146) and material allegations set forth therein are assumed to be true for purposes of this motion to dismiss only. In addition, Defendants rely upon the exhibits annexed to the Declaration of Assistant Corporation Counsel Talysia Francis dated March 22, 2024 ("Francis Decl.").

This is because Plaintiffs allege that "[c]uriously, beginning in or around 1990 (a time when Sanitation Workers were virtually all men) and up until today, the DSNY has reassigned some garbage collectors on a volunteer basis to the Enforcement Division to work as "Sanitation Police."[2] Id., ¶ 39. Plaintiffs allege that Sanitation Police are actually "garbage collectors" who are reassigned at the discretion of DSNY, without a civil service exam, and they remain in the civil service title of "Sanitation Worker." Id., ¶ 40. Plaintiffs further allege that "after two years of service in the Sanitation Police detail, a Sanitation Worker can return to garbage collection." Id., ¶ 41. In contrast, Plaintiffs make no allegations to suggest that SEAs are only temporarily assigned to perform enforcement duties.

Plaintiffs allege that Sanitation Workers performing Sanitation Police duties are paid higher wages and are provided better benefits than SEAs. Id., ¶¶ 61-71. Plaintiffs allege that the pay disparities between SEAs and Sanitation Workers assigned to a Sanitation Police detail cannot be explained by differences in job duties. Id., ¶ 50. Plaintiffs disregard the fact that they are comparing themselves to Sanitation Workers whose "primary responsibility" by Plaintiffs' own admission "is to collect garbage and to clean the streets." Id., ¶ 32. See also Exhibit A, Notice of Examination for Sanitation Worker. In addition to sanitation collection duties, Sanitation Workers, "When assigned, perform enforcement duties." See Exhibit A. Despite the differences

---

[2] Plaintiffs are seriously misinformed about how long Sanitation Workers have been temporarily assigned on a voluntary basis for a period of two years to function as "Sanitation Police Officers" to perform some sanitation regulation enforcement duties. This practice began in 1936. See https://nationalpolice.org/main/law-enforcement-literally-cleaning-up-cities/; Plaintiffs' citation to 1990, may be a reference to the 1990 amendment to the NY Criminal Procedure Law in order to grant Sanitation Workers performing Sanitation Police Officer duties the status of Peace Officer in addition to their already existing "Special Patrolman" status. See NY Criminal Procedure Law § 2.10(59) enacted by L. 1990, Ch. 931. Indeed, the DSNY has long been authorized to utilize Sanitation Workers to perform duties under the internal, non-civil service title of Sanitation Police Officer.

in job duties, which are highlighted in part by Plaintiffs' own admission, Plaintiffs contend that the Sanitation Police's primary duties, working conditions, knowledge requirements and training are the same as those for SEAs. Id., ¶¶ 51-60, 102-108.

Even if it were appropriate to compare the duties of SEAs whose only job is to perform sanitation regulation enforcement duties, to Sanitation Workers detailed temporarily to perform Sanitation Police duties, the types of enforcement duties performed by Sanitation Police are significantly different that those performed by SEAs as recognized in court decisions. Among the duties performed by Sanitation Police Officers that are not assigned to SEAs are the enforcement of sanitation-related regulations concerning proper disposal of solid waste with licensed facilities, theft of recyclables and illegal dumping; nor do SEAs effect arrests or impound vehicles. Plaintiffs allege that the DSNY does not appoint SEAs to be Sanitation Police and that a candidate for a Sanitation Officer position must first be employed by DSNY in the civil service title of Sanitation Worker and take the Sanitation Worker civil service examination and meet the requirements to be a Sanitation Worker. Id., ¶ 101. Plaintiffs do not allege that any of them attempted to become Sanitation Workers so as to be eligible to be considered for a Sanitation Police assignment.[3]

Plaintiffs allege that the City's facially neutral policies of (1) selecting sanitation police from a group of garbage collection volunteers, while categorically refusing to reassign Agents to the Sanitation Police Detail, and (2) negotiating with garbage collection workers as "uniformed" employees, while negotiating with Agents as "civilian" employees have had a

---

[3] Defendants would note that the NOE for SW positions specifies that DSNY employees in the titles of SEA and ASEA with three or more years of satisfactory experience qualify for Selective Certification and may be given preferred consideration for appointment to positions requiring SEA and ASEA experience; hence SEAs and ASEAs may actually be conferred a benefit for their experience. See Exh. A, NOE for Sanitation Worker, p. 6.

disparate impact on the basis of sex and race.  Id., ¶¶ 109-112.  Finally, Defendant notes that, with respect to the issue of negotiating with Sanitation Workers as "uniformed" employees while negotiating with SEAs as "civilian" employees, see TAC ¶ 109, the union representing ASEAs reached an impasse with the City on this very issue.  An Impasse Arbitration Panel held in pertinent part that "The evidence is not sufficient to establish ASEAs perform comparable duties to those performed by the Sanitation Police Officers."  See Exhibit G, Impasse Panel Decision at 15-16.

## ARGUMENT

### POINT I

### PLAINTIFFS' CLAIMS ARE TIME-BARRED, IN PART BY THEIR RESPECTIVE STATUTES OF LIMITATION

There are three different statutes of limitations applicable to the actionable claims brought herein.  Plaintiffs' § 1983 and CHRL claims are subject to a three-year statute of limitations.  See Duplan v. City of New York, 888 F.3d 612, 619 (2d Cir. 2018).  Further, absent an allegation that Defendant engaged in a willful violation of law, Plaintiffs' Equal Pay Act claims are subject to a two-year statute of limitations.  See 29 U.S.C. § 225(a).  Plaintiffs' Title VII claims are subject to a 300-day statute of limitations.  See 42 U.S.C. § 2000e-5(e)(1).

Here, the Third Amended Complaint does not delineate any specific dates during which Plaintiffs were allegedly harmed.  Rather, the TAC states generally that "Plaintiffs have been damaged by the discrimination in compensation relative to Sanitation Police since 1990 or such later date as they first became employed as Agents."  See TAC ¶ 155.  However, since Plaintiff commenced this action on July 25, 2022, any alleged conduct in support of Plaintiffs' §1983 and CHRL claims which occurred prior to July 25, 2019, is barred by the three-year statute of limitations applicable to those claims.  See Duplan v. City of New York, 888 F.3d 612, 619 (2d Cir. 2018).

6

The 300-day statute of limitations applicable to Plaintiffs' Title VII claims begins to run from the date on which Plaintiffs file an administrative charge with the EEOC or equivalent local agency.  Upon information and belief, Plaintiffs filed their EEOC charges on February 2, 2021.  Thus, any alleged conduct in support of Plaintiffs' Title VII claims, which occurred prior to April 8, 2020— 300 days prior to the filing of Plaintiffs' EEOC charges —is also time-barred. See Amtrak v. Morgan, 536 U.S. 101, 110 (2002).

Plaintiffs cannot rely on the continuing violation doctrine to revive claims that are outside the statute of limitations, as they are relying on a claim that rests on discrete discriminatory acts.  Id. at 122. "Discrete discriminatory acts are not actionable if time barred even if they are related to acts alleged in timely filed charges."  Id. Indeed, even if there is a discriminatory policy, any effects of such policy giving rise to discrimination claims are discrete acts and must be within the statute of limitations period.  See Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 157 (2d Cir. 2012).  Thus, any Title VII claims that pre-date April 8, 2020, and any § 1983 and CHRL claims which predate July 25, 2019 should be dismissed as untimely.

## POINT II

## PLAINTIFFS FAIL TO STATE A PLAUSIBLE
## TITLE VII DISPARATE IMPACT CLAIM

**A.    Plaintiffs Lack Standing To Bring A Disparate Treatment Or Impact Claim On Behalf Of Either Themselves Or A Putative Class.**

Plaintiffs lack standing to bring a disparate treatment or disparate impact claim on behalf of either themselves or a putative class.[4]  Plaintiffs lack Article III standing to bring a

---

[4] Defendant does not address Plaintiffs' putative class action allegations in this memorandum of law since there is no pending motion by either party seeking or opposing class certification.  See generally In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 41-42 (2d Cir. 2006), decision clarified on denial of reh'g, 483 F.3d 70 (2d Cir. 2007).  Should such a motion be made, Defendant reserves its right to oppose class certification at that time.

disparate impact claim because they cannot show that (1) they have personally suffered any injury-in-fact as a result of the City's allegedly policy of exclusively selecting Sanitation Police from a group of Sanitation Workers or the City's alleged policy of negotiating with SEAs as "civilian" employees, or that (2) the relief sought would redress their alleged injuries.

**B.**     **Plaintiffs Have Not Suffered An Injury In Fact Sufficient to Confer Standing To Challenge The City's Alleged Policies.**

**1.     The City's Alleged SPO Selection Policy**

Plaintiffs have not suffered an injury in fact sufficient to challenge the City's alleged policy of selecting SPOs from a group of Sanitation Workers. To establish injury in fact sufficient to challenge an allegedly discriminatory selection policy, plaintiffs must show that they are 'able and ready' to apply for the position at issue, "even if an application would be futile." See Dowdy v. N.Y. City Dept. of Sanitation, No. 22-CV-6284 (ALC), 2023 U.S. Dist. LEXIS 171625, at *12-13 (S.D.N.Y. Sep. 26, 2023). Determining whether a plaintiff is "able and ready" to apply to a position "requires more than the non-applicant's belief that they meet the 'minimum qualifications' and are 'able and ready.'" Id. at *13. "The requirement that a plaintiff be "able and ready" to apply, "requires an intent that is concrete." Id. (quoting Carney v. Adams, ___ U.S. ___, 141 S. Ct. 493, 502 (2020)).

Here, Plaintiffs cannot establish an injury in fact sufficient to bring a disparate impact claim because they fail to allege that they are "able and ready" to apply to join the Sanitation Police detail. While Plaintiffs allege that only Sanitation Workers are permitted to apply for the Sanitation Police detail, see TAC ¶ 109, Plaintiffs do not plead that they ever attempted and were denied the opportunity to join the Sanitation Police detail. See Houser v. Pritzker, 28 F. Supp. 3d 222, 239 (S.D.N.Y. 2014) (finding that three of the plaintiffs would not have been eligible to compete for employment, they could not have been considered for hire, and consequently cannot

demonstrate an injury-in-fact sufficient to prove Article III standing, and must be dismissed from this action). Instead Plaintiffs merely alleged that "it would be indeed futile for the [SEAs] to volunteer for the Sanitation Police, as the DSNY does not appoint [SEAs] to be Sanitation Police. See TAC ¶ 101. Likewise, Plaintiffs do not plead do not plead that they ever attempted to take the examination for Sanitation Worker which, after appointment, would have enabled them to be considered for assignment on detail to Sanitation Police duties. As such, they have failed to demonstrate an injury-in-fact sufficient to confer statutory standing under Title VII, the SHRL, or the CHRL See also United Prob. Officers Ass'n v. City of N.Y., No. 21 Civ. 0218 (RA), 2022 WL 875864, 2022 U.S. Dist. LEXIS 53606, at *19-20 (S.D.N.Y. Mar. 24, 2022) ("Nor do Plaintiffs allege that female Probation Officers of color took the examination but did not receive a qualifying score because the exam itself is discriminatory, or that they were deterred from taking the exam—either of which could potentially support their claim."). In fact, the nearly 200 paragraph Third Amended Complaint is bereft of a single allegation that at least one of the named Plaintiffs actually applied to join the Sanitation Police detail. Rather, the Third Amended Complaint is replete with allegations regarding the alleged educational experience, knowledge and ability required to perform the duties a Sanitation Worker performs while assigned to a Sanitation Police detail assignment, which simply demonstrate Plaintiffs' belief that they meet the minimum qualifications to be assigned to the a Sanitation Police detail and their belief that they are generally able and ready to apply to join the Sanitation Police detail if they were Sanitation Workers. See TAC ¶¶ 96  101. However, such allegations are insufficient to demonstrate that Plaintiffs are able and ready to apply for a position on a Sanitation Police detail. See Dowdy 2023 U.S. Dist. LEXIS 171625, at *13. Without a single allegation demonstrating that Plaintiffs actually intend to and want to apply to become Sanitation Police Officers, either by having taken the Sanitation Worker

exam or by attempting to volunteer for assignment to a Sanitation Police detail, Plaintiffs cannot demonstrate they suffered the injury in fact sufficient to confer statutory standing under Title VII or the CHRL.  See id. at *19.

### 2.  The City's Alleged Negotiation Policy

Plaintiffs have not suffered an injury in fact sufficient to challenge the City's alleged policy of treating Sanitation Workers as "uniformed" employees for the purposes of collective bargaining while treating Agents as "civilian" employees, because the alleged policy merely creates a hypothetical and future risk of harm.

It is well settled that future risk of harm is insufficient to establish an injury in fact. See Whitmore v. Arkansas, 495 U.S. 149, 158 (1990); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (noting that an injury in fact is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical.").  Indeed, a threatened injury must be "certainly impending" to constitute injury in fact.  See id.

Plaintiffs allege that the City's alleged policy of negotiating with Sanitation Workers "uniformed" employees for the purposes of collective bargaining while treating SEAs as "civilian" employees has sometimes resulted in different pattern percentage salary increases for "uniformed" and "civilian" employee unions.  Specifically, Plaintiffs complain that the pattern percentage salary increases for "uniformed" employees have sometimes exceeded the pattern percentage salary increases for "civilian" employees in the past, which allegedly cements wage disparities between Sanitation Workers and SEAs.  See TAC ¶ 114.

As an initial matter, Plaintiffs' comparison between the pattern percentage increases for "uniform" unions as compared to "civilian" unions is deeply flawed.  First, while Plaintiffs allege that City has recently agreed to uniform pattern salary increases of 3.25 to 4

percent for Sanitation Workers, and that the City has taken the position that SEAs are not entitled to salary increases above the "civilian pattern," see TAC ¶¶ 74-75, Plaintiffs conveniently fail to allege what percentage increase would be available to Plaintiffs pursuant to the civilian pattern. Further, while Plaintiffs allege that pattern percentage increases for "uniformed" unions have sometimes, but not always, exceeded the pattern percentage increases for "civilian" unions in the past, see TAC ¶114, Plaintiffs fail to allege that the pattern percentage increases for "uniformed" union has exceeded the pattern percentage increases for "civilian" unions in recent years or at any point during the applicable statutes of limitation.  Nor do Plaintiffs allege that any such difference in the pattern percentage increases for "uniformed" as compared to "civilian" unions impacted the specific unions representing Sanitations Workers or the SEAs.

In any event, in their attempt to challenge the City's alleged position that SEAs are not *entitled* to salary increases above the civilian pattern, Plaintiffs merely complain the City's negotiation policy harm's SEA's bargaining position by reducing their chances of receiving a certain salary increase.  However, the "mere reduction in one's chances of receiving a financial benefit" is not a legally cognizable injury in fact under these circumstances.  See, e.g., Clinton v. City of N.Y., 524 U.S. 417, 457 (1998).   At best, Plaintiffs' gripe with the City's alleged negotiation position, which, according to Plaintiffs, has sometimes resulted in different pattern percentage increases for "uniformed" and "civilian" employee unions in the past, and thus may impede the SEA's ability to receive a certain desired salary increase in the future, amounts to the kind of conjectural and hypothetical injury that is insufficient to establish Article III standing. See Lujan, 504 U.S. at 560.  Defendant also notes that a bargaining impasse arbitration panel recently ruled that ASEAs did not present "evidence . . . sufficient to establish ASEAs perform comparable duties to those performed by the Sanitation Police Officers" so as to warrant applying the

11

"uniformed" pattern to the salary increased to be accorded to ASEAs.  See Exhibit G at 15-16.

The Impasse Panel also found numerous differences between the duties performed by ASEAs and

those performed by Sanitation Police.  The Panel held that

> unlike Sanitation Police Officers, do not issue
> criminal summonses and have no authority to make
> arrests or carry firearms. (Transcript, at 157, 159).
> Nor, we find, do ASEAs receive the specialized
> training required of Sanitation Police Officers in the
> areas of arrest and firearm procedures, vehicle stops,
> impounding vehicles and cleaning and collection
> procedures. (Transcript, at 159) .
>
> * * *
>
> In these proven circumstances, despite some overlap
> in general supervisory functions, while taking into
> account the important functions provided by ASEAs,
> the record simply fails to establish duties performed
> by ASEAs are comparable to those performed by
> Sanitation Police Officers.

Exhibit G at 15-16.

Accordingly, Plaintiffs have not suffered an injury in fact sufficient to challenge

the City's alleged negotiation policy.

## C.     The Relief Sought Would Not Redress Plaintiffs' Alleged Injuries.

Even assuming, arguendo, that Plaintiffs have personally suffered any injury-in-

fact due to the City's alleged Sanitation Police selection policy or the City's alleged negotiation

policy, Plaintiffs cannot establish standing to bring a disparate impact claim because they cannot

demonstrate that a favorable decision in this action would redress their alleged injuries.

To establish the requisite redressability for Article III standing, plaintiffs must

demonstrate a "non-speculative likelihood that the injury can be remedied by the requested

relief."  See Houser v. Pritzker, 28 F. Supp. 3d 222, 239 (S.D.N.Y. 2014).

In this case, the Plaintiffs request several forms of relief, including: a permanent injunction enjoining Defendant from engaging in the challenged practices; an order directing Defendant to institute policies to eradicate the alleged effects of the challenged policies; and an award of compensatory damages in part through an award of backpay. See TAC, Wherefore Clause at p. 34. Presumably, the injunctive relief sought by Plaintiffs is to allow them to directly apply to become Sanitation Police and to receive the compensation and peace officer status associated with being reassigned to the Sanitation Police detail. However, the remedy sought by Plaintiffs would not redress the alleged disparity in compensation between SEAs and the Sanitation Workers who are temporarily reassigned to the Sanitation Police detail. Plaintiffs allege that the Sanitation Workers who are assigned to the Sanitation Police detail are merely *reassigned* on a *volunteer* basis. See TAC ¶¶ 4, 39. However, Plaintiffs fail to allege that a reassignment to the Sanitation Police detail would increase or otherwise affect the base salary of the Sanitation Workers who volunteer for the Sanitation Police detail. To that end, even if the Court were to require that SEAs be permitted to volunteer for the Sanitation Police detail, Plaintiff's fail to plausibly allege that they would receive any additional salary in connection with a lateral reassignment to the Sanitation Police detail. After all, Sanitation Workers assigned to the Sanitation Police detail receive a higher salary than SEAs by virtue of their salaries as Sanitation Workers, not as Sanitation Police.

Plaintiffs also complain that SEAs are denied peace officer status by way of being denied an opportunity to apply for the Sanitation detail. See TAC ¶¶ 86, 87. First, the Court would not be authorized to order that SEAs be granted peace officer status. Rather, the State Legislature would have to enact legislation adding SEAs to the list of positions set forth in NY Criminal Procedure Law § 2.10 entitled to such a designation. However, even if the Court were to order

that SEAs be granted peace officer status, that too would not provide Plaintiffs with the relief they seek. Indeed, while Plaintiffs complain that the DSNY has the authority to designate members of the Sanitation Police as peace officers, and that the DSNY has effectively precluded SEAs from achieving peace officer status, Plaintiffs fail to allege that receiving the peace officer designation would have any impact on their salaries. Plaintiffs also allege that "Sanitation Police do not exercise their peace officer status, and therefore the designation does not create a material difference between the Sanitation Police and Agents." See TAC ¶ 107. Thus, granting Plaintiffs peace officer status would not redress Plaintiffs' alleged injuries.

Plaintiffs also presumably seek an order compelling the City to treat SEAs as "uniformed" for collective bargaining purposes, and to thus be deemed entitled to the uniformed pattern percentage salary increases. However, Plaintiffs cannot demonstrate a non-speculative likelihood such relief would eliminate the difference in the base salaries assigned to Agents for their limited enforcement duties, and the base salaries assigned to Sanitation Workers to perform their garbage collection duties and other duties as assigned. Moreover, the Court would not be empowered to direct that the City of New York bypass its collective bargaining law, see NYC Administrative Code § 12-311, and the procedures set forth therein in order to direct that a particular class of employees should be treated as "uniformed" for collective bargaining purposes. Indeed the Impasse Arbitration Panel expressly rejected Plaintiffs' union's position that NYC Administrative Code § 12-307(a)(4) (which extended to ASEAs and SEAs the right to negotiate all terms and conditions of employment, independent of Citywide bargaining) required granting ASEAs the same wages as other uniformed services employees, or a wage package greater than the civilian pattern. See Exhibit G at 14-15.

14

The Plaintiffs' alleged injuries would also not be remedied by an award of backpay. As an initial matter, Plaintiffs are not entitled to backpay. While plaintiffs in the Second Circuit are presumptively entitled to back pay, a plaintiff cannot establish a presumptive entitlement to backpay unless he can first establish that he applied for a job and was not hired. See Cohen v. W. Haven Bd. of Police Commrs., 638 F2d 496, 502 (2d Cir. 1980); Ass'n in Emp't, Inc. v. City of Bridgeport, 647 F.2d 256, 289 (2d Cir. 1981). Here, Plaintiffs make no such showing, as they fail to allege that they actually applied for and were denied a position on the Sanitation Police detail or attempted to take the Sanitation Worker Examination and, after appointment, then applied for assignment to a Sanitation Police detail.

Further, even if Plaintiffs were entitled to backpay, any backpay award would presumably be based on the difference between (1) the amount Plaintiffs earned in their respective roles as SEAs and (2) the amount that they would have earned if they were reassigned to the Sanitation Police detail. See, e.g., Lewis v Am. Sugar Ref., Inc., 325 F. Supp. 3d 321, 361 (S.D.N.Y. 2018) (In the context of a Title VII claim, backpay or lost salary is "the amount of monies the injured party would have earned but-for the discriminatory conduct."). Since Plaintiffs have alleged that reassignments to the Sanitation Police detail are done on a volunteer basis, see TAC ¶¶ 4, 39, 101, and fail to allege that they stand to receive any additional compensation in connection with a lateral reassignment to the Sanitation Police detail, it logically follows that Plaintiffs' salary, like that of the Sanitation Workers, would remain the same upon reassignment to the Sanitation Police detail. Thus, even if Plaintiffs were entitled to backpay, the appropriate backpay award under these circumstances would be zero dollars. Such an award cannot reasonably be found to redress the alleged disparity in pay Plaintiffs and thus Plaintiffs' fail to plausibly allege that their alleged injuries would be redressed by an award of backpay.

15

Accordingly, because Plaintiffs fail to demonstrate a non-speculative likelihood that reassignment to the Sanitation Police detail, an award of backpay, or being treated as "uniformed" employees for collective bargaining purposes would remedy the alleged disparity in compensation between SEAs and the Sanitation Workers temporarily assigned to the Sanitation Police detail, Plaintiffs also fail to establish the requisite redressability for Article III standing.

**D.      Plaintiffs Fail To State A Plausible Disparate Impact Claim**

Title VII prohibits "employers' facially neutral practices that, in fact, are discriminatory in operation." Ricci v. DeStefano, 557 U.S. 557, 577-78 (2009).  To establish a *prima facie* violation, a plaintiff must show that the employer "uses a particular employment practice that causes a disparate impact on the basis of race, color,  religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i).  To establish a *prima facie* case of disparate impact, a plaintiff must: (1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two. See Brown v. Coach Stores, 163 F.3d 706, 712 (2d Cir. 1998).  "Allegations which contend only that there is a bottom-line racial imbalance in the work force are insufficient."  Id.  A plaintiff, at the motion to dismiss stage, this burden is somewhat greater than the "minimal support" burden in disparate treatment claims.  United Prob. Officers Ass'n., 2022 WL 875864, 2022 U.S. Dist. LEXIS 53606, at *17 (citing Mandala v. NTT Data, Inc., 975 F.3d 202, 209 n.3 (2d Cir. 2020)).

Courts will routinely dismiss disparate impact claims where plaintiffs fail to adequately allege a causal connection between any facially neutral policy and the alleged disparity. See Smith v. City of Jackson, 544 U.S. 228, 241 (2004) ("[i]t is not enough to simply allege that there is a disparate impact on workers or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities"); Brown, 163 F.3d at 712-13

(dismissing disparate impact claim where plaintiff did not connect alleged statistical disparities to a policy of the employer); Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 357 (2011) ("Other than the bare existence of delegated discretion, respondents have identified no 'specific employment practice'—much less one that ties all their 1.5 million claims together. Merely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice.").

Here, Plaintiffs plead that the practice or policy of selecting Sanitation Police from Sanitation Workers has caused "occupational segregation." TAC ¶¶ 109, 110. Plaintiffs make no allegations that the Sanitation Worker civil service exam is itself somehow discriminatory, or that female or minority SEAs are somehow prevented from taking this exam. Nor are the statistics alleged by Plaintiffs, without any citations, the proper statistics for consideration. The cited statistics as to the racial and gender composition of the Sanitation Police allegedly mirror the composition of the Sanitation Worker workforce. Plaintiffs claim that the Sanitation Police are 88% male and 46% white. See TAC ¶ 111. Plaintiffs contend in conclusory fashion that the facially neutral policy has had a direct impact on women and racial minorities, because the City has "inexplicably disqualifies" SEAs (85% racial minorities and 38% women) and instead selects volunteers from a "segregated workforce of garbage collectors" (97% male and predominantly white). See TAC ¶ 112. However, Plaintiffs fail to plausibly allege that SEAs are "disqualified" from becoming Sanitation Workers or that the examination process for appointing Sanitation Workers is discriminatory.

Plaintiffs' own statistics tend to rebut any suggestion of disparate impact. Plaintiff allege that 73 of the approximately 6500 Sanitation Workers have been detailed to perform Sanitation Police duties and that 8 of those Sanitation Police are female. See TAC ¶ 48. However, Plaintiffs' statistics show that there are 211 female Sanitation Workers. See Plaintiffs' Exhibit 1,

TAC ¶¶ 33, 34 nn.3 and 4.  The 211 female Sanitation Workers thus represent 3.2% of the Sanitation Worker workforce.  See Ex. 1.  In contrast, 8 of the 73, or 11% of the Sanitation Police, are female.  This fails to show a disparate impact based on gender using the appropriate employee populations.  Plaintiff's disparate impact claims under the CHRL fail for similar reasons.

**POINT III**

**PLAINTIFFS FAIL TO STATE A PLAUSIBLE
INTENTIONAL DISCRIMINATION CLAIM**

**A.      Plaintiffs' Individual Disparate Treatment Claims Fail to State a Claim**

While the facts pleaded in Plaintiffs' Third Amended Complaint allege that there is a disparity in base pay between SEAs and Sanitation Workers assigned to the Sanitation Police detail, Plaintiffs fail to evince even a minimal inference that any such disparity is based on their race or gender.  Rather, the facts pleaded in the TAC show only that there is a disparity in pay between SEAs and **Sanitation Workers**.  However, a disparity in pay between two jobs that are different cannot, standing alone, suffice to raise an inference of discrimination.

In an effort to inappropriately portray this action as comparable to the case brought in Chalmers v. City of New York, 20-cv-3389 (AT) (S.D.N.Y.), Plaintiffs attempt to bolster their disparate pay claims by citing to statistics published by the U.S. Dep't of Labor's O*NET comparing the salaries of Sanitation Workers in New York City with other jurisdictions in the United States which supposedly show that persons employed as "Refuse Collectors" elsewhere earn less that NYC Sanitation Workers.  Of course, there are no allegations in the TAC about what those "Refuse Collectors" do.  See TAC ¶¶ 80-82.  Plaintiffs also attempt to show that SEAs are underpaid as compared to what O*NET refers to as "Environmental Compliance Inspectors" which supposedly shows that "Environmental Compliance Inspectors" earn more than SEAs.  See TAC ¶¶ 83-85.  Of course, as with the "Refuse Collectors" comparison, there are no allegations

about what the those "Environmental Compliance Inspectors" do with any degree of specificity from which to draw any conclusions or inferences.  In addition, Plaintiffs attempt to lay out the purported similarities between the duties performed, experience, education and training requirements of SEAs and Sanitation Police.  See TAC ¶¶ 51-60.  However, as explained throughout this memorandum of law, the fallacy of Plaintiffs' approach is to limit any such comparison to one between what SEAs do and what only 1.1% of the Sanitation Worker Workforce does for temporary detail assignments.

Finally, Plaintiffs attempt to bolster their claim by including various charts which purport to represent the demographic makeup of the SEAs, the Sanitation Workers, as well as a list of the purported salaries of the 30 highest earning Sanitation Workers.  See Plaintiffs' Exhibits 1-3, ECF Dkt. No. 146 at 36-38.  Putting aside the propriety of relying upon such inadmissible statistics or their accuracy, the data set forth in those charts **do not** support Plaintiffs' intentional discrimination claim.  Of note, Plaintiffs' Exhibit 1 compares demographic data of all 146 SEAs with data about all 6,521 members of the Sanitation Workers, even though only 73 Sanitation Workers (1.1% of all Sanitation Workers) are actually assigned to the Sanitation Police Officer detail.  See Plaintiffs' Exhibit 2; TAC ¶ 48.  Further, the data set forth in Plaintiffs' own exhibits shows that both SEAs *and* Sanitation Police are predominately non-white workforces.  Plaintiffs' data suggest that approximately 85% of SEAs are people of color, and that approximately 58% of Sanitation Police are people of color.  See Plaintiffs' Exhibit 1; Plaintiffs' Exhibit 2.  Plaintiffs' exhibits also show that black women, who comprise 5.8% of the Sanitation Police detail but only 2.1% or less of the Sanitation Workers, are actually **overrepresented** in the Sanitation Police detail.  This suggests that black female Sanitation Workers are selected to join the Sanitation Police detail at higher rates than their counterparts.

The data set forth in Plaintiffs' elsewhere in the TAC also fail to support Plaintiffs' claims for intentional discrimination. Plaintiffs allege that Sanitation Workers earn about twice the amount of Associate Sanitation Enforcement Agents, and claim that Sanitation Workers earn a median salary of $79,058 while SEAs earn a median salary of $43,249. See TAC ¶ 47. However, in doing so, Plaintiffs purport to report that salaries of *all* Sanitation Workers, as opposed to the 1.1% of Sanitation Workers who are actually assigned to the Sanitation Police detail. See TAC ¶¶ 47; Plaintiffs' Exhibit 1; Plaintiffs' Exhibit 2. Similarly, Plaintiffs Exhibit 3, which purports to show the names and salaries amounts of the 30 Sanitation Workers who earned the highest pay in 2022, is a red herring. Plaintiffs conveniently fail to allege if any of the 30 Sanitation Workers listed in Plaintiffs' Exhibit 3 are part of the 1.1% of Sanitation Workers who are actually assigned to the Sanitation Police detail.

It is clear from the face of the TAC that any difference in base pay between the SEAs and Sanitation Workers is simply because SEAs perform a fraction of the job duties that a Sanitation Worker may be required to perform, and because Sanitation Workers have more stringent job requirements than SEAs. Plaintiffs delineate numerous physical requirements of the Sanitation Worker position which SEAs are not required to meet. See TAC ¶ 91. Plaintiffs do not allege that SEAs perform any of these duties. In addition to meeting the aforementioned physical requirements, Sanitation Workers must, "when assigned, perform enforcement duties." See Exhibit A, Sanitation Worker Notice of Examination at p. 5; TAC ¶ 90. Plaintiffs allege that, when Sanitation Workers are temporarily reassigned to the Enforcement Division to perform such "enforcement duties" — that is, when their duties are similar, but with significant differences, to those of SEAs, Sanitation Workers maintain the Civil Service title "Sanitation Worker," but are referred to, internally, as "Sanitation Police." See TAC ¶¶ 39-41, 49. Plaintiffs allege that there

20

are approximately 6,521 Sanitation Workers.  See Plaintiff's Exhibit 1, ECF Dkt. No. 146 at 36.

Plaintiff's also allege that 73 Sanitation Workers, who make up 1.1% of all Sanitation Workers,

are assigned to the Sanitation Police detail.  See TAC ¶¶ 39-40; Plaintiff's Exhibit 1, ECF Dkt.

No. 146 at 36, Plaintiff's Exhibit 2, ECF Dkt. No. 146 at 37.

       The crux of Plaintiffs' disparate compensation claim is simply that Sanitation

Workers, who have relatively high base-pay, are permitted to maintain their higher base salaries if

and when they volunteer to perform enforcement duties as a part of the Sanitation Police

detail.  See TAC ¶¶ 46, 66, 67.  However, Plaintiffs have not, because they cannot, allege that it is

unlawful for a Sanitation Worker to maintain their base salary while they perform the duties

associated with their lateral reassignment on a temporary detail to the DSNY Sanitation Police

function simply because that function has some similarities to the functions performed by SEAs

who salaries are less than those for Sanitation Workers.  See, e.g., Engelmann v. Nat'l

Broadcasting Co., No. 94 Civ. 5616 (MBM), 1996 U.S. Dist. LEXIS 1865, at *27 (S.D.N.Y. Feb.

21, 1996) (noting in analyzing an EPA claim that "salary retention policies that maintain an

employee's salary even when he or she is transferred to another position within the company are

also permissible.").  Nor can Plaintiffs plausibly allege that the difference in the base salaries of

Sanitation Workers and SEAs, who have significantly different job requirements and duties, are a

result of any discriminatory animus on the part of the City.  Plaintiffs thus fail to state a cause of

action for wage discrimination under §1983, Title VII and the CHRL.

       In conclusion, the factual allegations in the data does not support even a minimal

inference that intentional discrimination was the City's standard operating procedure, or that any

pay disparity between SEAs and Sanitation Workers assigned to the Sanitation Police detail was a

due to the race or gender of their respective work forces.  As such, Plaintiffs disparate treatment claims must be dismissed.

**B.      Plaintiffs Have Not Plausibly Alleged A 42 U.S.C. § 1983 Municipal Liability Claim**

Here, Plaintiffs Complaint lacks any facts to support an allegation that intentional discrimination was the City's standard operating procedure with respect to the rates of pay of SEAs and Sanitation Workers reassigned to the Sanitation Police detail, or with respect to City's alleged Sanitation Police selection policy.  See TAC ¶ 154.  In any event, a § 1983 action may not be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII or the Equal Pay Act.  Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (citing Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 143 (2d Cir. 1993).  Accordingly, Plaintiffs' § 1983 claim must be dismissed because Plaintiffs cannot bring a § 1983 action for alleged violations of Title VII nor the Equal Pay Act, claims under which are also asserted in the TAC.

## POINT IV

### PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE A CLAIM PURSUANT TO THE EQUAL PAY ACT

Plaintiffs' Equal Pay Act claim fails because they fail to establish that a disparity in pay exists between two jobs for which the skill, effort and responsibility required in the performance of the jobs is substantially equal.  As an initial matter, Plaintiffs' comparison between the salaries for SEAs and Sanitation Workers assigned to work as Sanitation Police is inappropriate.  The notice of examination, which is incorporated by reference into the complaint, makes clear that Sanitation Workers are paid to perform a broad range of trash collection duties, and "when assigned, perform enforcement duties."  See TAC ¶ 90; Exhibit A, Sanitation Worker Notice of Examination.  In addition, Plaintiffs allege that "a Sanitation Worker can return to

garbage collection" following their assignment to the Sanitation Police detail.  See TAC ¶ 41.  That is, the enforcement duties of a Sanitation Worker are merely a small subset, or "segment" of the job that a Sanitation Worker may be expected to perform.  Indeed, while Plaintiffs contend that SEAs perform the same primary duties as the 1.1% of Sanitation Workers who are assigned to the Sanitation Police detail, see Exhibit 2, TAC ¶ 48, and complain that they issue more summonses than Sanitation Police, Plaintiffs do not, because they cannot, contend that Sanitation Workers are not required to perform any trash collection or snow removal duties while assigned to the Sanitation Police detail.  Nor do Plaintiffs allege that they ever perform any of the trash collection duties associated with the Sanitation Worker title.  At best, Plaintiffs have alleged that a segment of the duties a Sanitation Worker may be assigned to perform overlaps with the enforcement duties of SEAs.  However, it is well-established that such comparisons are insufficient to show substantial equality under the EPA.

Merely alleging generally that Sanitation Police and SEAs "enforce the same laws" and listing certain similar duties while repeating the standard for an EPA claim is insufficient to state a claim for violation of the EPA.  In fact, this Court should take judicial notice of the fact that Sanitation Police Officers are designated as Peace Officers under New York State Criminal Procedure Law ("CPL") § 2.10(59), unlike SEAs.  See also TAC ¶¶ 49, 86[5].  Therefore, unlike SEAs, Sanitation Police Officers have powers as Peace Officers, as articulated in § 2.20 of the CPL.  While Plaintiffs attempt to cherry-pick and highlight certain duties to try to draw parallels between SEAs and Sanitation Police, it is clear from the CPL that Sanitation Police, as designated

---

[5] Plaintiffs inaccurately allege that only since 1990, when Sanitation Police were given Peace Officer status, did DSNY begin selecting Sanitation Police from a pool of Sanitation Workers and not from SEAs.  See TAC ¶ 87.  However, as noted in n.2 supra, this practice began in 1936, well before the creation of the SEA titles in 1981.

Peace Officers, are fundamentally different from SEAs.  See also Exhibit G, Impasse Panel Decision at 15-16 ("the record simply fails to establish duties performed by ASEAs are comparable to those performed by Sanitation Police Officers.")[6].  Among the duties performed by Sanitation Police that are not assigned to SEAs are the enforcement of sanitation-related regulations concerning proper disposal of solid waste with licensed facilities, theft of recyclables and illegal dumping; nor do SEAs effect arrests or impound vehicles.  See Meserole St. Recycling, Inc. v. City of N.Y., 2009 U.S. Dist. LEXIS 153288, *2-5 (S.D.N.Y. Nov. 25, 2009); People v. MacDonnell, 133 A.D.2d 177, 177 (2d Dep't 1987); Prince v. City of N.Y., 108 A.D.3d 114, 116 (1st Dep't 2013); Acosta v. Kelly, No. 101573/04, 2005 NY Slip Op 30488(U), **2, 2005 N.Y. Misc. LEXIS 8476, *2 (Sup. Ct. NY Co. 2005); People v. MacDonnell, 133 A.D.2d 177, 177 (2d Dep't 1987); cf. Exhibits B and C.

Plaintiffs are also collaterally estopped from contending that SEAs perform the same duties as Sanitation Police by virtue of the default judgment issued in in the matter of Law Enforcement Employees Benevolent Association ("LEEBA"), Sean Milan, and Joel Purser [both Plaintiffs in this action] v. City of New York, et al., under Index No. 153154/2023, in the Supreme Court of the State of New York, New York County.  See Exhibit F.  In that proceeding, Petitioners asserted that "Sanitation Police Officers" perform the same responsibilities and functions as employees assigned to the civil service titles of Sanitation Enforcement Agent and Associate Sanitation Agent.  See Exhibit E, Petition, NYSCEF Doc. No. 1 at ¶¶ 21, 23.  The City cross-moved to dismiss the petition granting Petitioners several extensions of time to respond to the cross-motion.  Yet, Petitioners failed to oppose the City's cross-motion.

---

[6] Defendant notes that Plaintiffs Jeffrey Hunter and Sean Milan testified at this Impasse Panel arbitration.  See Exhibit G at 5, 9.

Under New York law, collateral estoppel may be applied "where the party against whom preclusion is sought appears in the prior action, yet willfully and deliberately refuses to participate in those litigation proceedings, or abandons them, despite a full and fair opportunity to do so." In re Abady, 22 A.D.3d 71, 800 N.Y.S.2d 651, 660 (1st Dep't 2005); accord Helm v. PHH Mtge. Corp., 193 A.D.3d 420, 420 (1st Dept 2021); Kanat v. Ochsner, 301 A.D.2d 456, 755 N.Y.S.2d 371, 374 (1st Dep't 2003).  See also Claridge Assoc., LLC v. Schepis, 2020 U.S. Dist. LEXIS 207012, at *19-20 (S.D.N.Y. Nov. 5, 2020).  Accordingly, Plaintiffs cannot establish an EPA claim against the City, and their EPA claims must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant this motion and dismiss the Third Amended Class Action Complaint in its entirety together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            March 22, 2024

                          **HON. SYLVIA O. HINDS-RADIX**
                          Corporation Counsel of the
                            City of New York
                          Attorney for Defendant
                          100 Church Street, Room 2-123
                          New York, New York 10007
                          (212) 356-2465
                          tafranci@law.nyc.gov

                          By:     */s/ Talysia Francis*
                                  Talysia Francis
                                  Assistant Corporation Counsel

Bruce Rosenbaum,
Talysia Francis,
  Of Counsel.