UNITED STATES DISTRICT COURT                          No. 22-cv-6284-ALC
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X
DAMEKA DOWDY, JEFFREY HUNTER, SEAN MILAN,          :
JOEL PURSER, SANDRA CASTRO, CECELIA ROJAS,         :
KEVON CHISHOLM, RICHARD ORTEGA, MARISOL            :
CONCEPCION, ROBERT TABON, RASHEEN ODOM,            :
CARMELITA GORDON-FLEETWOOD, and RAYMOND            :
PACHECO,                                            :
                                                    :
On behalf of themselves and all others similarly situated,    :
                                                    :
                                    Plaintiffs,     :
            -against-                               :
                                                    :
THE CITY OF NEW YORK,                               :
                                                    :
                                    Defendant.      :
                                                    :
-------------------------------------------------------------------------- :
                                                    X


# MEMORANDUM OF LAW IN OPPOSITION TO
# DEFENDANT'S MOTION TO DISMISS


SEELIG LAW OFFICES, LLC
Philip H. Seelig, Esq.
Matthew J. Porcaro, Esq.
299 Broadway, Suite 1600
New York, New York 10007
(212) 766-0600

MOSER LAW FIRM, P.C.
Steven Moser, Esq.
5 East Main Street
Huntington, NY 11743
(516) 671-1150

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL STANDARD ............................................................................................................ 2

ARGUMENT ........................................................................................................................ 3

   I.    PLAINTIFFS HAVE STATED PLAUSIBLE DISPARATE TREATMENT AND

   DISPARATE IMPACT CLAIMS ....................................................................................... 3

   II.     PLAINTIFFS HAVE STATED A PLAUSIBLE EQUAL PAY ACT CLAIM ........... 12

   a. Collateral Estoppel Does Not Apply ....................................................................... 16

   III.     Statute of Limitations ............................................................................................. 17

CONCLUSION .................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Am. Fedn. of State, County & Mun. Emples. v. County of Nassau*, 609 F. Supp. 695, 707-708 (E.D.N.Y. 1985) ................................................................................................................. 13

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ............................ 2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 2

*Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006) ................................................................. 16

*Bass v. World Wrestling Fed'n Entm't, Inc.,* 129 F. Supp. 2d 491 (E.D.N.Y.2001) .................... 12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ......................................................................... 2

*Ben-Levy v. Bloomberg*, 518 Fed. Appx. 17 (2d Cir. 2013) ....................................................... 11

*Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008) .......................................... 15

*Branch v. State Univ. of N.Y.*, 2020 U.S. Dist. LEXIS 127422 (S.D.N.Y. July 20, 2020) ............ 2

*Brown v. Coach Stores*, 163 F.3d 706 (2d Cir. 1998) .................................................................. 9

*Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014) .......................................................... 3, 5

*Chalmers v. City of N.Y.*, 2021 U.S. Dist. LEXIS 176527 (S.D.N.Y. Sep. 16, 2021) .................. 6

*Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994) ..................................................................... 17

*Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200 (E.D.N.Y. 2014) .............................. 17

*Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490 (S.D.N.Y. 2022) ................................................ 7

*Dowdy v. N.Y. City Dept. of Sanitation*, 2023 U.S. Dist. LEXIS 171625 (S.D.N.Y. Sep. 26, 2023). ........................................................................................................................................ 15

*EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247 (2d Cir. 2014) ............................................... 15

*Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001)) ............................................................. 18

*Foss v. Coca Cola Enters.*, 2011 U.S. Dist. LEXIS 34945 (E.D.N.Y. Mar. 31, 2011) ................. 5

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985) ........................................................................ 13

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000) ............................................................. 3

*Griggs v. Duke Power Co.*, 401 U.S. 424 (1971) ......................................................................... 11

*Intl. Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) ...................................................... 9

*Jamalik v. Yale University*, 2009 U.S. App. LEXIS 22144 (2d Cir. 2009) ................................... 13

*Jenkins v NY City Tr. Auth.*, 646 F Supp 2d 464 (S.D.N.Y. 2009) ................................................ 9

*Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429 (D.C. Cir. 1976) .............................................. 13

*Lavin-McEleney v. Marist Coll.*, 239 F.3d 476 (2d Cir. 2001) ............................................... 12, 13

*Leibowitz v. Cornell Univ.*, 584 F.3d 487 (2d Cir. 2009) ............................................................. 3

*Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019) ...................................................................... 8

*Lewis v. City of Chicago*, 560 U.S. 205 (2010) ........................................................................... 10

*Local 2507, Uniformed EMTs, Paramedics & Fire Inspectors v. City of N.Y.*, 2024 U.S. Dist.
LEXIS 37389 (March 4, 2024) ...................................................................................................... 8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............................................................ 3

*McDowell v. N. Shore-Long Island Jewish Health Sys., Inc.*, 839 F. Supp. 2d 562 (E.D.N.Y.
2012) ............................................................................................................................................... 3

*McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d. Cir. 2001) ............................................................ 4

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013) ...................... 11

*Munjal v. Emirates*, 2022 U.S. Dist. LEXIS 12643 (S.D.N.Y. Jan. 24, 2022) ........................... 18

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ..................................................... 17

*Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003) ..................................................................... 16

*Ricci v. DeStefano*, 557 U.S. 557 (2009) .................................................................................... 10

*Rose v. Wells Fargo & Co.*, 902 F.2d 1417 (9th Cir. 1990) ........................................................ 10

*Ruiz v. County of Rockland*, 609 F.3d 486 (2d Cir. 2010) ............................................................. 3

*Smith v. Xerox Corp.*, 196 F.3d 358 (2d Cir. 1999) ...................................................................... 9

*Sotomayor v. City of New York*, 862 F. Supp. 2d 226 (E.D.N.Y. 2012) ........................................ 17

*Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406 (2d Cir. 2008) ............................................... 14

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ................................................................ 9, 15

*Taylor v. City of New York*, 207 F. Supp. 3d 293 (S.D.N.Y. 2016) .............................................. 17

*Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir 1995) .................................................................. 13

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir 2015) .......................................... 3

*Vivienzo v. City of Syracuse*, 611 F.3d 98 (2d. Cir. 2010) ........................................................... 3

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) ............ 7

*Watson Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988) ............................................. 10

*Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62  (1st Dep't 2009).......................................... 12, 17

*Woods v. Newburgh Enlarged City Sch. Dist.*, 288 Fed. App'x 757 (2d Cir. 2008) ..................... 4

**Statutes**

29 U.S.C. § 206(d)(1) ............................................................................................................ 12

29 U.S.C. § 255 ...................................................................................................................... 17

42 U.S.C. § 2000e-2(a)(1).......................................................................................................... 7

Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1992) ....................................... 11

NYC Local Law 56/2005 ............................................................................................................ 8

N.Y. CPL § 2.10 ....................................................................................................................... 7

N.Y.C. Admin. Code § 12-307(a)(4)(iii) ...................................................................................... 8

N.Y.C. Admin. Code § 8-502(d)................................................................................................ 17

29 C.F.R. § 1620.14 (1994) ................................................................................................ 13, 15

## PRELIMINARY STATEMENT

The thirteen (13) Plaintiffs in this action are civil service employees working for the City of New York ("City") in the Department of Sanitation ("DSNY"). Plaintiffs, Sanitation Enforcement Agents ("SEAs") and Associate Sanitation Enforcement Agents ("ASEAs") (collectively, "Agents") who work within the Enforcement Division of the DSNY, are responsible for the enforcement of laws, rules and regulations administered by the Department of Sanitation. TAC ¶ 2. All of the Plaintiffs are non-white and have or had a rate of pay at the time of filing a charge with the EEOC of between $40,000 and $50,000. *Id.* ¶ 61-71. The City's treatment and compensation of Agents, as compared to its treatment of Sanitation Workers and Sanitation Police violates 42 U.S.C. § 1981 enforced under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the Equal Pay Act of 1963.

The City has reassigned Sanitation Workers, whose primary responsibility is to collect garbage and clean the streets, to work as Sanitation Police, performing substantially the same work as Plaintiffs, Enforcement Agents. TAC ¶¶ 32, 39. The pay disparity between these two groups is profound, or approximately $19,751 in salary alone, when comparing Agents with Sanitation Police. TAC ¶ 45-47. The racial and gender disparities between these two groups are also profound (11% of Sanitation Police Officers are female versus 38% of Enforcement Agents), TAC ¶¶ 48, 73, (85% of Agents are non-white versus approximately 50% of Sanitation Police Officers). TAC Exs. 1-2.

The City's policies and practices have caused this pay discrimination, including: (1) selecting sanitation police from a group of garbage collection volunteers (2) negotiating with

1

garbage collection workers as "uniformed" employees, versus Agents as "civilian" employees, and (3) failing to monitor pay differences across agencies who perform similar work. TAC ¶ 109.

The City has not offered any legitimate nondiscriminatory explanation for pulling garbage collection workers to the Enforcement Division as police officers, when the Agents already assigned to the Enforcement Division have vastly more experience in enforcement. Nor has the City offered a legitimate non-discriminatory reason for paying racially and gender disparate groups different rates of pay for performing the same work.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is plausible when the complaint's "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "A plaintiff is not required to provide 'detailed factual allegations,' in the complaint, but must assert 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Branch v. State Univ. of N.Y.*, No. 18-cv-9516 (AT), 2020 U.S. Dist. LEXIS 127422, at *5 (S.D.N.Y. July 20, 2020) (Torres, J.) (*quoting Twombly*, 550 U.S. at 555). "Ultimately, the facts pleaded in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Branch,* 2020 U.S. Dist. LEXIS 127422, at *5 (*quoting Twombly*, 550 U.S. at 555).  In assessing whether the plaintiff has done so, the Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (internal quotation marks omitted).

## ARGUMENT

### I.    PLAINTIFFS HAVE STATED PLAUSIBLE DISPARATE TREATMENT AND DISPARATE IMPACT CLAIMS

Disparate treatment claims pursuant to Title VII and § 1983 are generally analyzed under the same substantive standards of the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Vivienzo v. City of Syracuse*, 611 F.3d 98, 106 (2d. Cir. 2010). Under *McDonnell Douglas*, to establish a *prima facie* claim for disparate treatment, Plaintiffs must show that they (1) are members of a protected class; (2) are qualified for their positions; (3) suffered an adverse employment action; which (4) took place under circumstances giving rise to the inference of discrimination. *Ruiz v. County of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010). At the motion to dismiss stage, "a plaintiff has a *minimal* burden of alleging facts suggesting an inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (emphasis in original) (quotation marks and citation omitted). The complaint must be plausible but does not need to establish *a prima facie* case. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228 n.10 (2d Cir. 2014).

In order to show an inference of discriminatory intent, a plaintiff can demonstrate "more favorable treatment of employees not in the protected group." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (citation omitted), *superseded by statute on other grounds*. Then, they must "show that [they] shared sufficient employment characteristics with the comparator so that they could be considered similarly situated in all material respects." *McDowell v. N. Shore-Long Island Jewish Health Sys., Inc.*, 839 F. Supp. 2d 562, 568 (E.D.N.Y. 2012). It is not necessary to make "a showing that both cases are identical." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). Plaintiffs must only allege facts demonstrating the two groups are

"sufficiently similar 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" *McDowell*, 839 F. Supp. 2d at 569 (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d. Cir. 2001)). It is well-established that "'[w]hether . . . employees are similarly situated . . . presents a question of fact,' rather than a legal question to be resolved on a motion to dismiss." *Brown*, 756 F.3d at 230 (citing *Graham*, 230 F.3d at 39); *see also Woods v. Newburgh Enlarged City Sch. Dist.*, 288 Fed. App'x 757, 760 (2d Cir. 2008) (noting it is "a rare case" where the similarity of comparators' situations "can be resolved as a matter of law").

In the Second Circuit, the issue of whether comparators are sufficiently similar is an issue for summary judgment after the benefit of discovery, not on a motion to dismiss. *E.g., Ulrich v. Moody's Corp.*, No. 13 Civ. 8, 2017 WL 1232709, at *11–12 (S.D.N.Y. Mar. 13, 2017) (ruling on similarity of comparators on motion for summary judgment), *aff'd* 721 Fed. App'x 17 (2d. Cir. 2018); *Villar v. City of New York*, 135 F. Supp. 3d 105, 121–22 (S.D.N.Y. 2015) (same); *Canales-Jacobs v. N.Y. State Office of Court Admin.*, 640 F. Supp. 2d 482, 504–05 (S.D.N.Y. 2009) (same).

The City is operating under a material misunderstanding of the nature of this case: it is not solely a failure to promote case – it is a pay discrimination case. First, the Plaintiffs have standing merely because of the current disparity between their treatment and the treatment of their comparators. Here, the existing harm is that Plaintiffs are paid less than comparators performing the same work. Sanitation Police is not in the line of promotion from the Agents – it is a separate job that performs substantially the same duties for significantly less compensation. The City pays greater compensation and benefits to Sanitation Police (Sanitation Workers) than the Plaintiffs (Enforcement Agents) for substantially similar work.

Plaintiffs, the Agents, have adequately pled that they are similarly situated to Sanitation Police. Case law does not mandate that similarly situated comparators be identical in every respect. *Brown*, 756 F.3d at 230; *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (it is a "misreading" of Second Circuit precedent to hold that "another employee cannot be similarly situated to a plaintiff unless the other employee had the same supervisor, worked under the same standards, and engaged in the same conduct."); *Foss v. Coca Cola Enters.*, No. 07-CV-1322 (JS) (WDW), 2011 U.S. Dist. LEXIS 34945, at *22-23 (E.D.N.Y. Mar. 31, 2011) ("[S]imilarly situated employees do not necessarily need to share the same job or position. Nor do they necessarily need to report to the same supervisor.").

Paragraphs 102 through 108 of the Third Amended Complaint detail the similarities in the duties and qualifications of the Agents compared with the Sanitation Police, and the minimal differences. Similarities include:

- Both Agents and Sanitation Police perform the same primary function – issuing summonses.

- The Agents and Sanitation Police *issue the same types of summonses.*

- More specifically, 99% of the summonses issued by the Sanitation Police between 2016 and 2022 were for Recycling and/ or Sanitation Code violations - the very same types of summonses issued by Agent. Annexed to the Complaint as Exhibit 6 is a chart showing the percentage of Recycling/Sanitation Code summonses issued by the Sanitation Police and the Agents, respectively, from 2016-2022.

- Most importantly, however, the Sanitation Police do not exercise their peace officer status, and therefore the designation does not create a material difference between the Sanitation Police and Agents.

- Upon information and belief the Sanitation Police have not made a single arrest from January 1, 2017 until the present. In fact, upon information and belief, garbage collectors assigned to the Sanitation Police detail do not effectuate any arrests, but instead do the same thing that Agents do when faced with criminal activity – they call the New York City Police Department. TAC ¶¶ 102-108.

Plaintiffs have modeled their Third Amended Complaint on the case of *Chalmers v. City of New York*, 20-cv-3389 (AT), which is factually similar and compared fire protection inspectors in the Fire Department with building inspectors in the Department of Buildings. *See Chalmers v. City of N.Y.*, 2021 U.S. Dist. LEXIS 176527, at *1 (S.D.N.Y. Sep. 16, 2021) (denying in part the City's motion to dismiss); 2022 U.S. Dist. LEXIS 169111 (Sep. 19, 2022) (granting class certification). In that case, Judge Torres found that even though the fire protection inspectors and building inspector positions are not identical – they work in different agencies, with different unions, different hours, different risks on the job, and building inspectors are not peace officers with powers to issue summonses and tickets – they are similarly-situated comparators. Judge Torres further found that the policies and practices the City engaged in that caused the pay gap included confining the plaintiffs to the civilian pattern of compensation, and also a failure to monitor pay differences across agencies who perform similar work. There was no requirement that fire protection inspectors desire to become building inspectors in order for the plaintiffs to have standing. *See Chalmers v. City of N.Y.*, 2022 U.S. Dist. LEXIS 169111, at *5-8 (S.D.N.Y. Sep. 19, 2022). The City had argued in Chalmers that Fire Protection Inspectors and Building Inspectors are "not similarly situated in all material respects," the Court rejected this argument because they share the same principal duty of conducted field inspections to ensure conformance with the City codes, even though the jobs are not identical. *Id.* at *4, *9.

In *Do No Harm v. Pfizer Inc.*, an organizational standing case, the plaintiff was an advocacy group whose members were white and Asian. The plaintiff sued Pfizer for establishing a fellowship whose express purpose was "to increase underrepresented groups in leadership positions at the company." 646 F. Supp. 3d 490, 496 (S.D.N.Y. 2022).  The Court dismissed the claims of Do No Harm for lack of standing since it did not allege that any of its members had applied for the Pfizer fellowship. Id. at 501. In the instant case, organizational standing is not at issue, and the Plaintiffs are seeking relief for themselves and those similarly situated. Moreover, in a pay discrimination case, Plaintiffs already meet the three elements of standing every day that they are paid a discriminatory wage in comparison with the Sanitation Police. The Agents are and were subject to the policies and practices of the City which caused the disparity. *See, e.g. W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008). Throughout its brief, the City attempts to erroneously argue that the Court does not have the ability to remedy the issue because the Court cannot order the Legislature to make the Agents have peace officer status. It is important to note, however, that nothing in N.Y. C.P.L. § 2.10 prevents the DSNY from giving Agents the title of "Sanitation Police" or requires the DSNY to designate garbage collectors as Sanitation Police. Furthermore, it is well within the power of the courts to remedy pay discrimination through monetary or non-monetary relief.

Plaintiffs argue that the City has failed to monitor differences between the Agents and the Sanitation Police for substantially similar work. TAC ¶¶ 117-21. In addition, its facially neutral policies of selecting Sanitation Police only from a group of Sanitation Worker volunteers and negotiating the civilian pattern of increase for Agents have a disparate impact. TAC ¶¶ 109-116. By its plain terms, Title VII makes actionable *any* form of sex-based compensation discrimination. 42 U.S.C. § 2000e-2(a)(1). *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir.

2019). In *Local 2507, Uniformed EMTs, Paramedics & Fire Inspectors v. City of N.Y.* ("*Local 2507*"), the City's refusal to pay EMS First Responders the uniformed rate despite recognizing them as uniformed employees, and paying the uniformed right to Fire First Responders raised the specter of discrimination. 2024 U.S. Dist. LEXIS 37389 at *22 (S.D.N.Y. Mar. 4, 2024). With regard to Plaintiffs' in the instant case, Sanitation Enforcement was afforded uniformed status in 2005 after the New York City Council found that the Sanitation Enforcement and other titles have "certain job characteristics similar to those employees working in the City's uniformed services, such as police, fire, sanitation and correction services." Local Law 56/2005, Note 2; N.Y.C. Admin. Code § 12-307(a)(4)(iii) ("employees of the uniformed sanitation service shall also include persons employed at any level of position or service by the sanitation department of the city of New York as sanitation enforcement agents and supervisors of sanitation enforcement agents;"). In Local 2507, the Court found that "a showing that EMS First Responders are treated "less favorably" than "similarly situated" Fire First Responders may give rise to an inference of intentional discrimination." *Local 2507, Uniformed EMTs, Paramedics & Fire Inspectors v. City of N.Y.*, 2024 U.S. Dist. LEXIS 37389, at *22 (S.D.N.Y. Mar. 4, 2024).

By selecting the Sanitation Police only from a group of Sanitation Worker volunteers, it would have been futile for any of the Plaintiff Agents to apply for reassignment to the Sanitation Police. TAC ¶ 101. Moreover, the discrimination against Plaintiffs is not limited to compensation. The Plaintiffs have adequately alleged that they have suffered an injury due to the artificial barrier erected by the City of New York requiring that applicants qualify to become Sanitation Workers before being considered for the Sanitation Police. By only selecting Sanitation Police Officers from a less-diverse pool of Sanitation Workers instead of from the pool of the more-diverse Enforcement Agents, the City has engaged in discrimination based

upon sex and race. The U.S. Supreme Court has stated: "The effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity." *Intl. Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-366 (1977). Ultimately, Plaintiffs have successfully identified the specific employment practices and policies at issue in this case and have demonstrated that they have been aggrieved by them.

To establish a *prima facie* case of disparate impact, there is a three prong requirement that a plaintiff: (1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two. *See Brown v. Coach Stores*, 163 F.3d 706, 712 (2d Cir. 1998). Plaintiffs have established a *prima facie* case of disparate impact because they can allege the specific employment policy that caused the statistical disparity. Defendants attempt to set a pleading standard far higher than required by FRCP 8(a), and prematurely make arguments that would be more appropriate for a summary judgment motion after the close of discovery. To establish a causal relationship between the employment practice and this observed disparity, the plaintiff's statistical evidence need only reveal a disparity that is "sufficiently substantial to raise an inference of causation." *See Smith v. Xerox Corp.*, 196 F.3d 358, 365 (2d Cir. 1999). "To the extent the defendants' argument is that a plaintiff must provide statistical support for a disparate impact claim in order to survive a motion to dismiss, that argument is incorrect. It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery." *See Jenkins v NY City Tr. Auth.*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009) quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002).

One way to establish causation is to identify "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of [a particular group] because of their membership in a protected group." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990) (emphasis added) (citing *Watson Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). The statistical disparities must be sufficiently significant that they "raise … an inference of causation." *Id.* The City's policies and practices have caused this pay discrimination, including: (1) selecting sanitation police from a group of garbage collection volunteers (2) negotiating with garbage collection workers as "uniformed" employees, versus Agents as "civilian" employees, and (3) failing to monitor pay differences across agencies who perform similar work. TAC ¶ 109. The pay disparity between Agents and Sanitation Police is profound, or approximately $19,751 on salary alone, when comparing female Agents with male Sanitation Police. TAC ¶ 45-47. The racial and gender disparities between these two groups are also profound (11% of Sanitation Police Officers are female versus 38% of Enforcement Agents), TAC ¶¶ 48, 73, (85% of Agents are non-white versus approximately 50% of Sanitation Police Officers). TAC Exs. 1-2.

"[A] plaintiff establishes a prima facie disparate-impact claim by showing that the employer 'uses a particular employment practice that causes a disparate impact' on one of the prohibited bases." *Lewis v. City of Chicago*, 560 U.S. 205, 130 S. Ct. 2191, 2197-98, 176 L. Ed. 2d 967 (2010) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577-78, 129 S. Ct. 2658, 174 L. Ed. 2d 490 (2009)).  Title  VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, as amended, prohibits intentional discrimination on the basis of race and sex as well as employment practices "that are not intended to discriminate but in fact have a disproportionately adverse impact on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2672, 174 L. Ed.

2d 490 (2009). The Civil Rights Act of 1964 did not expressly prohibit policies yielding a "disparate impact," but the Supreme Court interpreted the Act in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971), to "proscribe[] not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Id.* at 431. The *Griggs* Court explained that "good intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups and are unrelated to measuring job capability." *Id.* at 432. "The touchstone is business necessity. If an employment practice which operates to exclude [minorities] cannot be shown to be related to job performance, the practice is prohibited." *Id.* at 431. In 1991, Congress codified the prohibition on disparate impact discrimination that was established in *Griggs. See* Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1992) (codified in scattered sections of 2 U.S.C., 29 U.S.C., and 42 U.S.C.). The City has not offered any reason why Agents should not be considered part of the workforce eligible to do Sanitation Police duties, and why Agents should not be compensated the same as the Sanitation Police Officers who are performing the same work of issuing summonses.

With regard to the NYCHRL claims, "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims" because the city law must "be construed liberally for the accomplishment of [its] uniquely broad and remedial purposes … even if the challenged conduct is not actionable under federal and state law". *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ("Per the Second Circuit, to survive summary judgment on an NYCHRL claim, a plaintiff only must present "some evidence from which discrimination can be inferred," *Ben-Levy v. Bloomberg*, 518 Fed. Appx. 17, 20 (2d Cir. 2013), which requires only a showing that the plaintiff "has been treated less well at least in

part 'because of her [protected characteristic].'" *Mihalik,* 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.,* 61 A.D.3d 62, 872 N.Y.S.2d 27, 39, 40 n.27 (1st Dep't 2009)). "Some evidence" should require even less of a showing of similarity of job duties than required under federal law. For all of the reasons already discussed herein, Plaintiffs have supplied a factual basis from which it is reasonable to infer that Plaintiffs are being paid less which results in a disparate impact on minorities and women.

## II.  PLAINTIFFS HAVE STATED A PLAUSIBLE EQUAL PAY ACT CLAIM

The Equal Pay Act (EPA) prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions. 29 U.S.C. § 206(d)(1). In order to establish a violation of the Equal Pay Act, a plaintiff must first establish a *prima facie*  showing that: (1) the employer pays different wages to employees of a different sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and 3) the jobs are performed under similar working conditions. *See Lavin-McEleney v. Marist Coll.,* 239 F.3d 476, 480 (2d Cir. 2001) (citations omitted).

Application of the equal pay standard is not dependent on job classifications or titles. 29 C.F.R. § 1620.13(e). Moreover, under the EPA, proof of an employer's discriminatory intent is not necessary for a plaintiff to prevail on a claim. A plaintiff is not required to demonstrate that her job is identical to a higher paid position, but rather must show that the two positions are "substantially equal" in skill, effort and responsibility. *See Lavin-McEleney,* 239 F.3d at 480 (citations omitted); *Bass v. World Wrestling Fed'n Entm't, Inc.,* 129 F. Supp. 2d 491, 503 (E.D.N.Y.2001) (citations and internal quotations omitted). Even if there are some differences in job duties, it requires a fact-intensive inquiry as to whether any differences are significant in

setting the wage levels for the two jobs, as discussed by the EEOC regulations. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1311 (2d Cir. 1995) citing 29 C.F.R. § 1620.14 (1994) ("In determining whether job differences are so substantial as to make jobs unequal, it is pertinent to inquire whether and to what extent significance has been given to such differences in setting the wage levels for such jobs. Such an inquiry may … disclose that apparent differences between jobs have not been recognized as relevant for wage purposes.")[1]

The Second Circuit has continually held that courts should be reluctant to grant summary judgment on a Equal Pay Act claim. For example, the Second Circuit has held that whether two positions are substantially equivalent for Equal Pay Act purposes is a question of fact for the jury. *Lavin-McEleney*, 239 F.3d at 480. In *Jamalik v. Yale University*, 2009 U.S. App. LEXIS 22144 (2d Cir. 2009), the Second Circuit vacated and remanded a district court's granting of summary judgment on an Equal Pay Act claim. In doing so, the Court held that "trial courts must be especially chary in handing out summary judgment in discrimination claims". *Id.*, at *2 (internal citations omitted). The Court further held that questions regarding the equivalence of two positions pursuant to an Equal Pay Act claim are best left to the trier of fact. *Id.*

In denying a motion to dismiss on EPA claims, "on a 12(b)(6) motion, the court is not free to weigh the evidence that might be presented at trial." *Am. Fedn. of State, County & Mun. Emples. v. County of Nassau*, 609 F. Supp. 695, 707-708 (E.D.N.Y. 1985), citing *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). In that case, the complaint was sufficiently particular in specifying the jobs plaintiffs intended to compare and gave defendants fair notice of

---

[1] In discussing the EEOC regulations, the Second Circuit also referenced: *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 449 (D.C. Cir. 1976) (administrative interpretations of the EPA are entitled to great deference in applying the Act to given factual situations), *cert. denied*, 434 U.S. 1086, 55 L. Ed. 2d 792, 98 S. Ct. 1281 (1978).

plaintiff's claims, resulting in a denial of the motion to dismiss. *Id.* Here, Plaintiffs have given notice of the particular jobs to be compared as well as their specific job duties.

At the outset, the Court should reject Defendant's insistence on discussing extrinsic facts and exhibits outside the TAC, based upon the job descriptions. Def. Br. at 22; Def. Ex. A. Defendant's arguments are incomplete, considering they have not included a job description for the Sanitation Police Officers. "Although the general rule is that a district court may not look outside the complaint and the documents attached thereto in ruling on a Rule 12(b) motion to dismiss, [the Second Circuit] ha[s] acknowledged that the court may also consider matters of which judicial notice may be taken." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 426 (2d Cir. 2008). Judicial notice, however, may only be taken of facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). Ordinarily, where a court takes judicial notice of public documents, it does so in order "to determine what statements [they] contained—but . . . *not for the truth of the matters asserted." Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir 2007) (internal quotation marks omitted) (emphasis in original); *accord Staehr*, 547 F.3d at 425-426. Here, the City is inappropriately asking the Court to infer that the Notice of Examination demonstrates that the Agents are not similarly-situated with the Sanitation Police. The City makes another inappropriate attempt by discussing the Impasse Panel Decision (ECF Doc. No. 26; Def. Ex. G) that the Court already stated that it would disregard because the City presented no basis for looking outside the pleadings. ECF Doc. No. 28 (fn. 3). This was a decision made by a single arbitrator for only some of the Plaintiffs (ASEAs, not SEAs) and the ruling was made in the context of a contractual bargaining impasse, not in the context of Title VII or Equal Pay Act claims. At a later time before the close of discovery, various Plaintiffs in this case, or expert

witnesses, will testify or submit affidavits regarding the job similarities, but the City's arguments are not appropriate for a motion to dismiss.

Furthermore, the relevant inquiry is whether a particular employee *actually performs* a particular duty in practice, not what their title is nor what their job description states. *See EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 252 (2d Cir. 2014) (finding that there should be a focus on actual job content and not job title or job description); *see also Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11, (2002)) ("It is sufficient for the Commission to plead that Ms. Williams and Mr. Aresco performed substantially equal work—and yet were paid differently—without getting into the "equal skill, effort, and responsibility" or "similar working conditions" aspects of Section 206(d)(1). 'At the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case.'"). Therefore, it is not relevant to a motion to dismiss whether Sanitation Police Officers are technically qualified to do collection duties, since it has not been established that they actually ever perform that job function once they are appointed to the Sanitation Police, which is an issue for discovery. Additionally, the statutory peace officer status or absence will only be relevant at summary judgment as to whether duties requiring peace officer status are performed, how frequently, whether any difference in legal status results in job differences, and whether those job differences are minor or not. *See* 29 C.F.R. § 1620.14 (1994) ("Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable."); *see also Dowdy v. N.Y. City Dept. of Sanitation*, No. 22-CV-6284 (ALC), 2023 U.S. Dist. LEXIS 171625, at fn. 5 (S.D.N.Y. Sep. 26, 2023).

The Third Amended Complaint specifically pleads the substantial similarities between the two positions, using statistics obtained from the City of New York. TAC ¶¶ 102-108. The Agents and the Sanitation Police perform the same primary function of issuing summonses. Moreover, they issue the same *types* of summonses, in particular, Recycling and Sanitation Code violations. *See* Ex. 5-6 to the TAC. In fact, according to the City's statistics, only 0.1% of the time do Sanitation Police perform any unique duties that the Agents would not perform. TAC ¶¶ 105-108.

## a. Collateral Estoppel Does Not Apply

Defendant argues that Plaintiffs are collaterally estopped because there was an Article 78 cross-motion decided against LEEBA and two of the Plaintiffs, but not any of the other Plaintiffs, where the City cross-moved on the grounds that the plaintiffs lacked standing, failed to exhaust remedies, and failed to state a claim. Collateral estoppel does not apply here because the determinative issue was not "decided against" the plaintiffs in the Article 78 Action, who are different than the Plaintiffs in this case in any event. The arguments in dismissal including that plaintiffs never had any standing to challenge the Department's actions and the threshold standing issue was never decided. There was not full argument and discussion on the merits of the case, which in any event, had nothing to do with pay discrimination. Federal principles of collateral estoppels require that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) *citing Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003). It is clear from the Petition attached by the Defendant that the issue of similarity between the job titles was a background issue to the primary claim that the Sanitation Workers were working out of title, but

more importantly the issue was not actually litigated in this case, hence the dismissal decision without comment on it. Even more importantly, this issue was not necessary to support a valid and final judgment on the merits, especially considering standing had never been established or discussed and no briefing was completed. Therefore, collateral estoppels should not be applied.

### III. Statute of Limitations

Generally, claims under the NYSHRL and NYCHRL are subject to a three-year statute of limitations. N.Y.C. Admin. Code § 8-502(d). However, the more generous continuing violations doctrine applies to Plaintiffs' claims under the New York City Human Rights Law. The Equal Pay Act claims are subject to a two-year statute of limitations. 29 U.S.C. § 255.

Under Title VII, "[w]hen a plaintiff experiences a continuous practice and policy of discrimination ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("*Morgan*"), the Supreme Court construed that doctrine under Title VII to "preclude[] recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period," *id.* at 105. The Courts have applied the *Morgan* standard only to the NYSHRL, not the NYCHRL. *See, e.g., Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (citing *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013)); *id.* 302 n.5 ("[T]he weight of authority has held that *Morgan* applies to the NYSHRL.").

By contrast, "New York courts have held that the pre-*Morgan*, more generous continuing violations doctrine continues to apply to discrete acts of employment discrimination under [the] NYCHRL." *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 212 (E.D.N.Y. 2014) (citing *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 35 (1st Dep't 2009)); *see also, e.g., Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (describing

NYCHRL's independently liberal construction and "one-way ratchet," under which federal and state civil rights laws create a "floor below which the [NYCHRL] cannot fall"). Accordingly, under the NYCHRL, "[o]therwise time-barred discrete acts [are considered] timely 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Taylor*, 207 F. Supp. 3d at 302-03 (first alteration in original) (quoting *Dimitracopoulos*, 26 F. Supp. 3d at 212 (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)) *cited in Munjal v. Emirates*, 2022 U.S. Dist. LEXIS 12643, at *14-16 (S.D.N.Y. Jan. 24, 2022).

Accordingly, here, for the New York City Human Rights Law claims, Plaintiffs are not barred by the statute of limitations in connection with any particular date because it was a continuing violation each time that they were paid throughout their career.

## CONCLUSION

Based upon the foregoing, Defendants' Motion to Dismiss should be denied. Plaintiffs have stated a plausible claim pursuant to Title VII and the human rights laws that the City has policies and practices which cause disparate treatment and impact on Sanitation Enforcement women and minorities. In addition, Plaintiffs have stated a plausible claim pursuant to the Equal Pay Act of 1963 that Sanitation Police Officers and Sanitation Enforcement perform substantially equal work (a fact-intensive inquiry) and are not equally paid.

Dated: New York, New York
        May 3, 2024

                                        Respectfully submitted,

                                        Seelig Law Offices, LLC
                                        299 Broadway, Suite 1600
                                        New York, New York 10007
                                        (212) 766-0600

By:        /s/ *Philip H. Seelig*
          Philip H. Seelig, Esq.
          Phil@pseeliglaw.com

By:        /s/ *Matthew J. Porcaro*
          Matthew J. Porcaro, Esq.
          Matt@pseeliglaw.com

Moser Law Firm P.C.
5 East Main Street
Huntington, NY 11743
(516) 671-1150

By:        /s/ *Steven Moser*
          Steven Moser, Esq.
          steven.moser@moserlawfirm.com

*Attorneys for Plaintiffs*