**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**DAMEKA DOWDY, et al.,** *on behalf of*
*themselves and all others similarly situated*,

                                        **Plaintiffs,**

                        -against-

**THE CITY OF NEW YORK,**

                                        **Defendant.**

---

**1:22-cv-06284 (ALC) (SDA)**

**<u>OPINION & ORDER</u>**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Dameka Dowdy, Jeffrey Hunter, Sean Milan, Joel Purser, Sandra Castro, Cecelia Rojas, Kevon Chisholm, Richard Ortega, Marisol Concepcion, Robert Tabon, Rasheen Odom, Carmelita Gordon-Fleetwood, and Raymond Pacheco (together "Plaintiffs") bring this putative class and collective action against Defendant City of New York ("City" or "Defendant"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York City Human Rights Law ("NYCHRL"), the Equal Pay Act of 1963 ("EPA"), and 42 U.S.C. § 1981 ("Section 1981") enforced under 42 U.S.C. § 1983 ("Section 1983").

Pending before the Court is Defendant's motion to dismiss the Third Amended Complaint. *See* ECF No. 147 ("TAC"). Defendant principally argues that Plaintiffs lack standing to bring their disparate treatment and impact claims, and that all their claims are insufficiently pleaded. *See generally* ECF No. 149. As stated more fully below, the Court finds that Plaintiffs have standing and have pleaded sufficient facts to support their claims under Title VII, Section 1981, the NYCHRL, and the EPA. Only Plaintiffs' Title VII claims which pre-date April 8, 2020 and any Section 1981 claims which predate July 25, 2019 are **DISMISSED** without prejudice. The City's motion is otherwise **DENIED**.

# BACKGROUND

## I.    Factual History

Plaintiffs are or were employed by the New York City Department of Sanitation ("DSNY"), an agency of Defendant City, as Sanitation Enforcement Agents ("SEAs") and Associate Sanitation Enforcement Agents ("ASEAs," together with SEAs, "Agents"). TAC ¶ 17. Plaintiffs Dowdy, Castro, Rojas, Chisolm, and Gordon-Fleetwood are Black women. TAC ¶¶ 18, 22–24, 28. Plaintiffs Milan, Purser, Tabon, and Odom are Black men. TAC 150 ¶¶ 20–21, 26–27. Plaintiff Hunter is a Native American man. TAC ¶ 19. Plaintiff Pacheco is a Hispanic man. TAC ¶ 29. Plaintiff Concepcion is a Hispanic woman. TAC ¶ 25. Demographic information about Plaintiff Ortega is not included in the TAC, but the first amended complaint indicated that he is a Hispanic man. *See* ECF No. 19 ¶ 16 ("FAC"). They all have between 12 and 36 years of experience working for DSNY. TAC ¶¶ 18–29. Plaintiffs Dowdy, Castro, Rojas, Chisholm, Concepcion, and Gordon-Fleetwood make a base salary between $43,000 and $49,545 per year. TAC ¶ 67.

DSNY employs Agents to, among other things, issue criminal, Environmental Control Board ("ECB"), and parking summonses, investigate complaints, enforce regulations, and testify in court. TAC ¶¶ 52–54. The union representing these Agents is the Law Enforcement Employees Benevolent Association. TAC ¶ 37. The DSNY also employs a separate group of workers, called Sanitation Workers, some of whom are "Sanitation Police." TAC ¶¶ 32–33. The union representing the Sanitation Workers is the Uniformed Sanitationmen's Association. TAC ¶ 34.

The Sanitation Police enforce the same laws as Agents: both issue summonses, investigate complaints, testify in court, and enforce regulations. TAC ¶¶ 51, 53, 55. Plaintiffs allege that Agents and Sanitation Police "perform equal work requiring equal skill, effort, and responsibility,"

under similar working conditions. TAC ¶¶ 148–49. Plaintiffs allege that the required training, experience, knowledge, and ability to perform the two positions are identical. TAC ¶¶ 57–60. Plaintiffs acknowledge several differences between the duties of Agents and Sanitation Police: Sanitation Police can issue a special type of summons, can be armed, and have "peace officer status," allowing them to effectuate arrests. TAC ¶¶ 49, 103, 106–07. Plaintiffs allege that Sanitation Workers, the pool from which Sanitation Police are exclusively drawn, are comprised of individuals who are over 50 percent white and 97 percent male. TAC ¶ 5. By contrast, almost 85 percent of Agents are non-white, and 38 percent are non-white. *Id.*

The only people eligible to be Sanitation Police are existing Sanitation Workers. TAC ¶¶ 4, 40, 88, 101. To be a Sanitation Worker, an applicant must pass a civil service examination and meet numerous physical requirements necessary for garbage collection. TAC ¶¶ 90–91. Plaintiffs allege that these prerequisites are unrelated to the performance of Sanitation Police law enforcement duties. TAC ¶ 91. On the other hand, Plaintiffs allege that the requirements to become an Agent are directly applicable to the law enforcement duties of Sanitation Police. TAC ¶ 96. Plaintiffs argue the DSNY's selection of Sanitation Police solely from the Sanitation Workers workforce, as opposed to from the Agents, has no reasonable explanation and that it has a disparate impact on the basis of race and sex. TAC ¶ 100.

Plaintiffs allege that "it would be futile" for Agents to apply or volunteer for the Sanitation Police since the DSNY "does not appoint Agents to be Sanitation Police." TAC ¶ 101. Plaintiffs allege DSNY stated that only employees "in the civil service title of Sanitation Worker" were encouraged to share their resumes for the Sanitation Police positions. *Id.*

Sanitation Workers and Sanitation Police are paid more than Agents and receive better benefits, such as longevity pay and unlimited sick leave. TAC ¶ 61. Specifically, after five and a

half years of service, some Sanitation Police are paid $77,318 per year, whereas Agents are paid less than $50,000 per year after even 30 years of service. TAC ¶¶ 63–64. Plaintiffs allege that Sanitation Police receive other benefits that are unavailable to Agents, such as "assignment differential, double time for Sundays and/or holidays, higher welfare and annuity fund benefits, a higher uniform allowance." TAC ¶ 70.

## II.    Procedural History

Plaintiffs initiated this action against Defendant City and DSNY on July 25, 2023. ECF No. 1 ("Compl."). Following defendants' letter indicating their intent to move to dismiss the Complaint, ECF No. 11, Plaintiffs requested leave to amend, ECF No. 12, which the Court granted. ECF No. 13.

Plaintiffs filed their Amended Complaint on November 17, 2022. ECF No. 14 ("FAC"). The FAC asserted eight causes of action for: (1) violation of the EPA; (2) racial discrimination based on disparate impact under Title VII; (3) sex discrimination based on disparate impact under Title VII; (4) racial discrimination based on disparate impact under the NYSHRL; (5) sex discrimination based on disparate impact under the NYSHRL; (6) racial discrimination based on disparate impact under the NYCHRL; (7) sex discrimination based on disparate impact under the NYCHRL; and (8) violations of Section 1983. *See generally id.*

Defendants filed their motion to dismiss on February 14, 2023, arguing that: (1) DSNY was not a proper party to be sued; (2) Plaintiffs lacked standing to bring a disparate impact claim under Title VII; (3) Plaintiffs failed to state a plausible disparate impact claim under Title VII, the NYSHRL, and the NYCHRL; (4) Plaintiffs failed to plead an adequate EPA claim; and (5) Plaintiffs failed to allege municipal liability under Section 1983. *See generally* ECF No. 21. The parties fully briefed the motion, *see* ECF Nos. 22, 24, and the Court issued its opinion on

September 26, 2023. *See Dowdy v. New York City Dep't of Sanitation*, No. 22-CV-6284 (ALC), 2023 WL 6258536 (S.D.N.Y. Sept. 26, 2023).

In its opinion, the Court dismissed DSNY as a defendant and Plaintiffs' Section 1983 claims as unopposed. *Id.* at *3. Additionally, the Court found Plaintiffs had failed to allege an "injury-in-fact" and lacked Article III standing to bring their disparate impact claims. *Id.* at *5–7. Last, the Court found the FAC did not provide sufficient factual allegations to state a claim under the EPA; and dismissed that claim as well. *Id.* at *7–8.

The Court granted Plaintiffs leave to amend their complaint. On December 05, 2023, Plaintiffs filed their Second Amended Complaint. ECF No. 36 ("SAC"). The Court granted the Plaintiffs leave to file another amended complaint, ECF No. 145, which they filed on March 26, 2024. ECF No. 150 ("TAC").[1] In their Third Amended Complaint, Plaintiffs bring six counts against Defendant for: (1) violation of the EPA; (2) disparate treatment under Title VII; (3) disparate treatment under Section 1981; (4) disparate treatment under the NYCHRL; (5) disparate impact under Title VII; (6) disparate impact under the NYCHRL. TAC at 27–34.

Defendant filed its motion to dismiss the TAC on March 22, 2024. ECF No. 147.[2] Defendant argues that: (1) Plaintiffs' Section 1981 and NYCHRL claims prior to July 25, 2019 are time barred; (2) Plaintiffs' Title VII claims prior to April 8, 2020 are time barred; (3) Plaintiffs

---

[1] Plaintiffs' initial TAC entry was deficient. ECF No. 146. They refiled the amended complaint at ECF No. 150 after Defendant filed its motion to dismiss.

[2] On March 22, 2024, Defendant filed a declaration attaching various exhibits including "Opinion and Recommendation issued by Arbitrator Martin F. Scheinman in Matter of the Arbitration between City of New York and Law Enforcement Employees Benevolent Association Industries, "Impasse Panel: Associate Sanitation Enforcement Agents." ECF No. 148-7. The Court will disregard this document and the other exhibits, along with any of the factual assertions contained within as Defendant has provided no basis for why the Court may look outside the pleadings and take judicial notice of the factual assertions they contain.

lack standing to bring disparate treatment and impact claims on behalf of themselves or the putative class; and (4) Plaintiffs fail to state a disparate treatment claim, disparate impact claim, and claim under to the EPA. *See generally id.* Plaintiffs filed their opposition brief on May 3, 2024. ECF No. 151. Defendant filed a reply on May 24, 2024. ECF No. 152.

## LEGAL STANDARDS

### I.    Federal Rule of Civil Procedure 12(b)(1)

In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation omitted). Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

### II.    Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, the court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Allegations that are "no more than conclusions are not entitled to the assumption of truth," and "'naked assertion[s]' devoid of 'further factual enhancement'" are not sufficient to show that a plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 678–79 (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 555, 557 (2007)). Nor must a court accept as true "legal conclusions" or "a legal conclusion couched as a factual allegation." *Id*.

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). Nevertheless, courts may "consider the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).

## DISCUSSION

### I. Standing for Disparate Treatment and Impact Claims

Defendant argues that Plaintiffs do not have standing to bring their claims under Title VII, Section 1981, and the NYCHRL. *See* ECF No. 149 at 7–16. The Court disagrees.

Under Article III of the Constitution, the subject-matter jurisdiction of federal courts is limited to resolving "cases" and "controversies." U.S. Const. art. III, § 2. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Therefore, in order to sue, a plaintiff must have Article III standing—"the personal interest that must exist at the commencement of the litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (citing *Davis v. FEC*, 554 U.S. 724, 732 (2008)). "The party invoking federal jurisdiction bears the burden of establishing the elements." *Id.* (quoting *Lujan*, 504 U.S. at 560–61).

"Article III standing consists of three 'irreducible' elements: (1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied

by the requested relief." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) (quoting *Lujan*, 504 U.S. at 560–61). "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. . . . This inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F. 3d 79, 84 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Article III's standing requirements apply equally to class actions. "As the Supreme Court has held, 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant[], none may seek relief on behalf of himself or any other member of the class.'" *Houser v. Pritzker,* 28 F. Supp. 3d 222, 236 (S.D.N.Y. 2014) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974)). "When standing is challenged on the basis of the pleadings, [the court must] 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *United States v. Vasquez*, 143 F. 3d 74, 81 (2d Cir. 1998) (quoting *Warth*, 422 U.S. at 501).

Plaintiffs argue that they have suffered two types of injuries sufficient to confer standing: exclusion from eligibility for Sanitation Police and failure to be paid the same salary as Sanitation Police, despite working similar jobs. Defendant only challenges whether the former constitutes an injury-in-fact and is redressable by the Court. *See* ECF No. 149 at 7–12.

To establish injury-in-fact for a claim based on a discriminatory selection policy, a plaintiff must allege that she "actually applied for the position at issue." *Dowdy v. New York City Dep't of Sanitation*, No. 22-CV-6284 (ALC), 2023 WL 6258536, at *5 (S.D.N.Y. Sept. 26, 2023); *see also Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997) (holding that plaintiff must allege that he "submit[ted] to the challenged policy"). "This threshold requirement for standing may be

excused only where a plaintiff makes a substantial showing that application . . . would have been futile." *Do No Harm v. Pfizer Inc.*, No. 1:22-CV-07908 (JLR), 2022 WL 17740157, at *10 (S.D.N.Y. Dec. 16, 2022) (quoting *Jackson-Bey*, 115 F.3d at 1096)*.* In addition to these requirements, a plaintiff "must show that they are 'able and ready' to apply," even if an application would be futile. *Id.* at *10–11 (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)).

As the Court found in 2023, there are few allegations that Plaintiffs actually submitted to the challenged policy by applying to become either Sanitation Police or Sanitation Workers. *See generally* TAC; *see also Dowdy*, 2023 WL 6258536, at *5. Plaintiffs argue this was not necessary to do because any application would have been futile. *See* ECF No. 151 at 8–9; TAC ¶ 101.

The requirement that a plaintiff actually apply for a particular position may be dispensed with if the plaintiff makes a "substantial showing" that applying to the position would be "futile." *Do No Harm*, 2022 WL 17740157, at *10 (citing *Jackson-Bey*, 115 F.3d at 1096). This exception is based, in part, on the Supreme Court's holding in *International Brotherhood of Teamsters v. United States* ("*Teamsters*") that:

> The denial of Title VII relief on the ground that the claimant had not formally applied for the job could exclude from the Act's coverage the victims of the most entrenched forms of discrimination. Victims of gross and pervasive discrimination could be denied relief precisely because the unlawful practices had been so successful as totally to deter job applications from members of minority groups. A *per se* prohibition of relief to nonapplicants could thus put beyond the reach of equity the most invidious effects of employment discrimination those that extend to the very hope of self-realization.

431 U.S. 324, 365–66 (1977) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)). Although this decision did not explicitly relate to standing, in 2020, the Supreme Court recognized the *Teamsters* holding in the context of Article III standing, stating that "our precedents have . . . said that a plaintiff need not translate his or her desire for a job . . . into a formal application where

9

that application would be merely a futile gesture." *Carney v. Adams*, 592 U.S. 53, 65, 141 S. Ct. 493, 503 (2020) (citing *Teamsters*, 431 U.S. at 365–6). Thus, "[i]f a plaintiff is able to show that the practice of discrimination was so systemic that an application would be a 'vain gesture,' and therefore futile, then the application requirement is waived." *Hunt v. Con Edison Co. N.Y.C.*, No. 16-CV-0677 (MKB), 2017 WL 6759409, at *7 (E.D.N.Y. Dec. 29, 2017) (citing *Teamsters*, 431 U.S. at 366).

Plaintiffs allege it would be futile for them to directly apply to become Sanitation Police, as Sanitation Police are only selected from Sanitation Workers. *See* TAC ¶¶ 39, 101. Specifically, they allege that the application states: "If you are seriously interested in become a Sanitation Police Officer, and are employed by the Department of Sanitation in the civil service titled of Sanitation Worker, send your resume." TAC ¶ 101. The Court finds this is sufficient to state such an application would be futile for Plaintiffs to submit.

Additionally, Plaintiffs allege they are "able and ready" to apply for the position. *See Do No Harm*, 2022 WL 17740157, at *11. Plaintiffs do so by stating their intent to apply and that they meet the qualifications to become Sanitation Police excluding the alleged artificial barriers to entry. *See Houser* 28 F. Supp. 3d at 237 ("Applicants who fail to meet the basic eligibility requirements for employment cannot demonstrate that they suffered a 'particularized' personal injury by being denied such employment."). The court in *Houser* found that a set of plaintiffs who alleged the Census Bureau's background check process was discriminatory had made this minimal showing. *Id.* The plaintiffs who "possessed the bare minimum qualifications for employment with the Census Bureau" and obtained adequate scores on the required exam had standing to sue for disparate treatment because they "would have had an opportunity (however slim) to compete for employment" if not for the allegedly discriminatory background check. *Id.*

10

Plaintiffs allege that, if not for the requirement to be a Sanitation Worker, they would be qualified to be Sanitation Police. *See* TAC ¶ 96. Reading the complaint in the light most favorable to Plaintiffs, it states that Plaintiffs met the other eligibility requirements to become Sanitation Police: a high school diploma or equivalent. *See* TAC ¶ 58.

But being qualified is not enough to demonstrate one is "able and ready" to apply for a position. In *Houser*, the plaintiffs had previously applied for the positions, which in combination with their qualifications, sufficiently alleged standing. *See* 28 F. Supp. 3d at 238. Being "able and ready" to apply "requires an intent that is concrete." *Carney*, 141 S. Ct. at 502; *see Faculty v. New York Univ.*, 11 F.4th 68, 77 (2d Cir. 2021). The amended complaint states that "[e]ach of the Plaintiffs is ready, willing and able to be a member of the Sanitation Police." TAC ¶ 98. This is sufficient for the Plaintiffs to plead their concrete intent to apply to be Sanitation Police at this stage. *See Dowdy*, 2023 WL 6258536, at *6 (citing *Do No Harm*, 2022 WL 17740157, at *12; *Carney*, 141 S. Ct. at 502). Therefore, Plaintiffs demonstrate that they suffered an injury-in-fact, conferring Article III standing to pursue their Title VII, Section 1981, and NYCHRL claims. [3]

## II.    Statute of Limitations

Defendant argues that some of Plaintiffs' Title VII, Section 1981, and NYCHRL claims are time barred under their respective statutes. *See* ECF No. 149 at 6–7. Plaintiffs only dispute whether their NYCHRL claims are time-barred, so Defendant's motion to dismiss portions of their Title VII and Section 1981 claims is granted. *See* ECF No. 151 at 17–18.

---

[3] Similarly unavailing is Defendant's argument that Plaintiffs' claims would not be redressed by the relief sought. *See* ECF No. 149 at 12–16. Reading the complaint in the light most favorable to Plaintiffs, their claims could entitle them to the position, salary, and benefits of Sanitation Police. This would undoubtedly redress the injuries alleged.

Plaintiffs argue that the continuing violations doctrine applies to their NYCHRL claims. *See* ECF No. 151 at 17. Under that doctrine, "[o]therwise time-barred discrete acts [are] timely where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302–03 (S.D.N.Y. 2016) (quoting *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 212 (E.D.N.Y.2014)) (internal quotation marks omitted). Plaintiffs adequately allege that the practice of excluding Agents from eligibility for Sanitation Police and paying Sanitation Police more than Agents amounted to a facially-neutral, discriminatory policy. Accordingly, "the commencement of the statute-of-limitations period [is] delayed until the occurrence of the last discriminatory act in furtherance of that discriminatory practice." *Diaz v. City Univ. of New York*, No. 13 CV 2038 PAC MHD, 2014 WL 10417871, at *11 (S.D.N.Y. Nov. 10, 2014), *report and recommendation adopted in part*, No. 13 CIV. 2038 PAC MHD, 2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015).

The Court **GRANTS** the motion to dismiss, based on the statute of limitations, regarding Plaintiffs' federal claims. Plaintiffs' Title VII claims which pre-date April 8, 2020 and any Section 1981 claims which predate July 25, 2019 are **DISMISSED** without prejudice. The Court **DENIES** the motion as to Plaintiffs' NYCHRL claims.

### III.    Failure to State a Claim

#### a.   The Equal Pay Act

The EPA prohibits employers from discriminating against employees on the basis of sex by "paying wages . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working condition." 29 U.S.C. § 206(d)(1).

To allege a violation of the EPA, a plaintiff must demonstrate three things: "(1) that the employer pays different wages to employees of the opposite sex; (2) that the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) that the jobs are performed under similar working conditions." *E.E.O.C. v. Port Authority of N.Y. & N.J.*, 768 F.3d 247, 254–255 (2d Cir. 2014) (citing *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999)). As to the second element, a plaintiff must demonstrate each element separately. "[E]qual skill is defined as including such factors as experience, training, education, and ability, as measured in terms of *the performance requirements of the job* at issue. . . . Equal effort, by turn, looks to the measurement of the physical or mental exertion *needed for the performance of a job*. . . . And equal responsibility turns on the degree of accountability *required in the performance of the job,* with emphasis on the importance of the *job obligation.*" *Id.* at 255 (internal citations omitted) (emphasis in original).

"The Second Circuit has made clear that the EPA pleading standard is 'demanding.'" *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 519 (S.D.N.Y. 2018) (quoting *E.E.O.C.*, 768 F.3d at 255–56). A "plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job content was 'substantially equal.'" *E.E.O.C.*, 768 F.3d at 256 (quoting *Iqbal*, 556 U.S. at 678).

To state this claim, the TAC provides salary information for Agents, Plaintiffs, and Sanitation Workers. Plaintiffs provide salary data from the City Council as to the average salary for Sanitation Workers and Agents. *See* TAC ¶¶ 45, 47. Plaintiffs allege that the data for Sanitation Police is included in the salary figures for Sanitation Workers. *See* TAC ¶ 47. But the figure provided is a median salary, and only 73 out of 6500 Sanitation Workers are assigned to the Sanitation Police. *See* TAC ¶ 48. As such, this median figure is an inaccurate representation of a pay disparity between Agents and the one percent of Sanitation Workers assigned to the Sanitation

Police. Likewise Plaintiffs' argument that the City has spent more money on thirty Sanitation Workers' salaries than that of 210 Agents is unpersuasive given the Plaintiffs' EPA claim does not pertain to pay differences between Agents and Sanitation Workers, who have vastly different jobs, but to the pay discrepancy between Agents and Sanitation Police. *See* TAC ¶¶ 68–69.

Plaintiffs do provide some salary information specific to Sanitation Police. Plaintiffs allege that "a white male Sanitation Police Officer, Ryan Kashuba, was paid base compensation of $83,465.00 in 2021, after only 8 years of service. In that same year the Plaintiff Ceceilia Rojas, a black female Agent with more than 30 years of service, was paid base compensation of only $43,324.00." TAC ¶ 65. Additionally Plaintiffs provide base compensation numbers for a Sanitation Police officer who, after six months of work, made more than some Plaintiffs' base salaries after fifteen years of service. *See* TAC ¶¶ 66–67. This, in conjunction with the gender demographics of the two positions, is a sufficient to show Plaintiffs were paid less than employees of the opposite sex. *See E.E.O.C.*, 768 F.3d at 254; *see also Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 481 (2d Cir. 2001) (holding that statistical evidence of a gender-based pay disparity could be used to establish liability in an EPA claim if offered along with a specifical comparator); TAC ¶ 5 (alleging 38 percent of Agents are female and 97 percent of Sanitation Workers are male).

Plaintiffs also sufficiently allege that the positions require equal skill, effort, and responsibility. Sanitation Police officers enforce the same laws as Agents: both groups issue summonses, investigate complaints, testify in court, effect arrests, and enforce regulations. *See* TAC ¶¶ 51, 53, 55. Plaintiffs allege that the required experience, knowledge, and ability to perform the two positions are identical. *See* TAC ¶¶ 57–60. Plaintiffs recognize that there are a couple differences between their responsibilities: Sanitation Police can issue a special type of summons, can be armed, and have "peace officer status" allowing them to effectuate arrests. *See* TAC ¶¶ 49,

103, 106–7. Defendant argues that this is a fundamental difference but cites no applicable legal authority to make its argument. *See* ECF No. 149 at 23–24. Again the job content, rather than the title or description, is what is most important to this determination. *See E.E.O.C.*, 768 F.3d at 255. Plaintiffs allege that this additional responsibility delegated to Sanitation Police has an insignificant impact on the actual job content of the position. *See* TAC ¶ 106 (providing a statistical breakdown of summonses and finding that Sanitation Police exercise their unique responsibilities less than 1/100% of the time).

Last, Plaintiffs allege that the working conditions for the two positions are identical: Agents and Sanitation Police "both patrol on foot or in a vehicle, are exposed to the dangers posed as drivers and passengers in vehicles, are exposed to extreme weather and fumes from patrolling sidewalks, are at risk of violent confrontation, and stand and are on their feet for prolonged periods." TAC ¶ 56. These allegations state an EPA claim. *See E.E.O.C.*, 768 F.3d at 255.

The Court will address two additional arguments Defendant raises against this claim: that the Notice of Examination shows Sanitation Police and Agents have different responsibilities, and that Plaintiffs are collaterally estopped from establishing this similarity in job responsibilities.

Defendant argues that the Notice of Examination for Sanitation Workers was incorporated by reference into Plaintiffs' complaint. *See* ECF No. 149 at 22. Courts in this District have recognized that "a document not expressly incorporated by reference in the complaint [can] nevertheless [be] 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Courts generally limit this to instances where the document in question forms part of the basis of the complaint (like a contract in an action for breach of contract) or where the complaint heavily quotes from the document. *See id.* Here, the only information which seems to be present in the Notice is the

requirements for the job and the tested task areas, which are referenced in paragraph ninety of the TAC. But this Notice is not fundamental to the claim nor heavily quoted in the complaint and is thus insufficient on its own to demonstrate the Court ought to incorporate the document by reference. *See Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 378 (S.D.N.Y. 1998) (finding a complaint which "refers to and quotes much of" a letter, incorporated that letter). The Court will not consider this document and whether it uncovers any differences between the jobs of an Agent and a Sanitation Police officer.

Regarding collateral estoppel, the Court finds that Plaintiffs are not precluded from establishing the similarity between the two positions. Defendant cites a default judgment issued in a state case against two Plaintiffs in this action for failure to respond to counterclaims. *See* ECF No. 149 at 24–25. "Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Burton v. Undercover Officer*, 671 Fed. App'x. 4 (2d Cir. 2016) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)). Collateral estoppel carries with it four requirements: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012). "[T]he general rule is well-established that default judgments lack issue-preclusive effect." *In re Adler, Coleman Clearing Corp.*, 205 F. App'x 856, 857 (2d Cir. 2006) (finding that default judgment is not "actually litigated"). As such collateral estoppel does not bar Plaintiffs from arguing Sanitation Police and Agents perform similar jobs.

Accordingly, Defendant's motion to dismiss Plaintiffs' EPA claim is **DENIED**.

**b.  Disparate Treatment under Title VII, Section 1981, and the NYCHRL**

Defendant argues that Plaintiffs have failed to state a claim for disparate treatment under Title VII, Section 1981, and the NYCHRL. The Court disagrees.

Title VII and Section 1981 claims are subject to the well-known three-step burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corporation v. Green*. 411 U.S. 792 (1973); *see, e.g.*, *Watson v. Geithner*, No. 11-CV-9527 (AJN), 2013 WL 5441748, at *4 (S.D.N.Y. Sept. 27, 2013). At the motion to dismiss stage, however, only the first step—the plaintiff's burden to allege a *prima facie* case of discrimination—is at issue. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case, a plaintiff must show that: (1) she was a member of a protected class; (2) she was competent to perform the job in question or was performing the job duties satisfactorily; (3) she suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to a minimal inference of discrimination. *See, e.g.*, *Ruiz v. County of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010).

The showing required for NYCHRL claims differs slightly, as the adverse action need not be "material;" instead, a plaintiff need only demonstrate differential treatment that is "more than trivial, insubstantial, or petty." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015) (citing *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011)). An NYCHRL plaintiff, however, must still adduce evidence supporting an inference of discrimination. *See Williams*, 836 F. Supp. 2d at 177. Indeed, to survive a motion to dismiss under Title VII, Section 1981, and the NYCHRL, the facts alleged must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. Defendant argues no such inference exists. *See* ECF No. 149 at 18–22.

17

Plaintiffs raise an "atypical discrimination claim," in that they "do not rely on a comparator group of non-minority co-employees." *Chalmers v. City of New York*, No. 20 CIV. 3389, 2021 WL 4226181, at *4 (S.D.N.Y. Sept. 16, 2021) (quoting *Hill v. City of New York*, 136 F. Supp. 3d 304, 335 (E.D.N.Y. 2015)) (internal quotation marks omitted). Instead, Plaintiffs allege that the City's discriminatory intent can be inferred from the fact that the majority non-white and female Agents are paid significantly lower salaries than Sanitation Police officers, who share comparable job functions and are likelier to be white and male. This is like the claim in *Chalmers*, where the Court found such allegations were sufficient to survive a motion to dismiss. *Id.* Plaintiffs' allegations are likewise sufficient.

Defendant argues that Plaintiffs fail to allege a pay discrepancy between Agents and Sanitation Police. *See* ECF No. 149 at 18. The Court has already addressed this issue in relation to Plaintiffs' EPA claim and found that they have met their burden to allege a salary difference. *See supra* III.a. Defendant additionally argues that any difference in pay is in fact due to the difference in job responsibilities between Agents and Sanitation Workers. *See* ECF No. 149 at 20. The Court will not weigh in on the validity of that argument because, again, there are sufficient allegations that the Sanitation Police officers make higher salaries for a position with the same job content as an Agent's. *See supra* III.a. Last, Defendant argues that the Sanitation Police are not "similarly situated" and therefore inappropriate comparators for Plaintiffs because they are still Sanitation Workers who have just been "lateral[ly] reassigned on a temporary detail." ECF No. 149 at 21. This is also unavailing, as even the case which Defendant cites finds that a pay discrepancy between one employee and another who retained their salary after a transfer was sufficient to establish a *prima facie* claim. *Engelmann v. Nat'l Broad. Co.*, No. 94 CIV. 5616 (MBM), 1996

WL 76107, at *8 (S.D.N.Y. Feb. 22, 1996) ("It is undisputed that plaintiff has established a *prima facie* case of wage discrimination."); *see also* ECF No. 149 at 21 (citing *id.* at *10).

To survive a motion to dismiss, Plaintiffs need only allege facts that give "plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). The Court finds Plaintiffs have met that low bar. As discussed in reference to their EPA claim, the TAC alleges that Agents and Sanitation Police have similar educational requirements, training, responsibilities, and occupational hazards. *See supra* III.a. Drawing all reasonable inferences in Plaintiffs' favor, the Court finds they have plausibly alleged that Agents and Sanitation Police work "in tandem to perform the same function," and thus are similarly situated. *Chalmers*, 2021 WL 4226181, at *4 (quoting *Hill*, 136 F. Supp. 3d at 335–36) (internal quotation marks omitted).

Accordingly, Plaintiffs have satisfied their burden. The Defendant's motion to dismiss their disparate treatment claims under Title VII, Section 1981, and the NYCHRL is **DENIED**.

### c.  Disparate Treatment under Section 1981 Pursuant to Section 1983

Defendant mischaracterizes Plaintiffs' invocation of Section 1983 as brought to vindicate their Title VII and Equal Pay Act claim. *See* ECF No. 149 at 22. In fact, Plaintiffs bring their Section 1981 claim pursuant to Section 1983, which Defendant does not challenge in its motion to dismiss. *See* TAC ¶¶ 9, 150–55; *see generally* ECF No. 149.

Therefore, the Court **DENIES** the Defendant's motion to dismiss Plaintiffs' Section 1981 municipal liability claim.

### d.  Disparate Impact under Title VII and the NYCHRL

In addition to their disparate treatment claims, Plaintiffs allege that Defendant's facially neutral practice of paying higher salaries and providing better benefits to the predominantly white

and male Sanitation Police than the majority non-white and higher percentage female Agents has resulted in a disparate impact, actionable under Title VII and the NYCHRL.

Under Title VII, to make a *prima facie* showing of disparate impact, a plaintiff must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (quotation marks and citations omitted). "Unlike a disparate treatment claim, a disparate impact claim 'does not require the plaintiff to show that the defendant intended to discriminate against a particular group.'" *Chalmers v. City of New York*, No. 20 CIV. 3389, 2021 WL 4226181, at *5 (S.D.N.Y. Sept. 16, 2021) (quoting *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020)). "To survive a motion to dismiss, Plaintiffs must merely allege sufficient facts to support a plausible claim that an employer's facially neutral practice or policy disproportionately and adversely affects a particular protected group. *Id.*

As in *Chalmers*, Plaintiffs rely on statistical evidence to "show a disparity in outcome between groups, . . . nudg[ing] [such a] claim across the line from conceivable to plausible." *Id.* (citing *Mandala*, 975 F.3d at 209). "At the motion to dismiss stage, Plaintiffs are not required 'to prove in detail the methodological soundness of [their] statistical assessment' or to 'supplement [the complaint's] statistical analysis with corroborating evidence,' but 'the statistics must plausibly suggest that the challenged practice actually has a disparate impact.'" *Id.* (quoting *Mandala*, 975 F.3d at 209–10). "The statistical analysis must therefore, at minimum, 'focus on the disparity between appropriate comparator groups' or 'reveal disparities between populations that are relevant to the claim . . . plaintiff[s] seek[] to prove.' *Id.* (quoting *Mandala*, 975 F.3d at 210).

As discussed previously, at this early stage of the litigation, Plaintiffs have plausibly alleged that Sanitation Police are an appropriate comparator group for the Agents. *See supra* III.b.

Moreover, Plaintiffs provide sufficient factual allegations regarding the differences in pay between the Sanitation Police and Agents. *See supra* III.a.

Thus, the Court finds that Plaintiffs have plausibly alleged that the City's practice of paying majority non-white Agents less than the predominantly white Sanitation Police "disproportionately and adversely" affected the Plaintiffs in terms of their compensation. As the *Chalmers* court found, "[a]t this stage, no further showing is needed." *Chalmers*, 2021 WL 4226181, at *5. It is likewise sufficient to establish a disparate impact claim under the generous standard of the NYCHRL. *See, e.g.*, N.Y.C. Local Law No. 85 of 2005, at Section 1 (Oct. 3, 2005) (Under the NYCHRL, federal civil rights laws are "a floor below which the City's Human Rights law cannot fall, rather than a ceiling about which the local law cannot rise.").

Therefore, the Court **DENIES** the Defendant's motion to dismiss Plaintiffs' disparate impact claims under Title VII and the NYCHRL.

## CONCLUSION

For the reasons stated above, Plaintiffs' Title VII claims which pre-date April 8, 2020 and any Section 1981 claims which predate July 25, 2019 are **DISMISSED** without prejudice. The Defendant's motion is otherwise **DENIED**. The Clerk of Court is respectfully requested to terminate the pending motion at ECF No. 147. The parties are directed to proceed with general pre-trial matters on Plaintiffs' surviving claims before Magistrate Judge Stewart D. Aaron.

**SO ORDERED.**

Dated:    **March 31, 2025**
          **New York, New York**

                                                  **ANDREW L. CARTER, JR.**
                                                 **United States District Judge**