Mehri & Skalet

Mehri & Skalet, PLLC

Michael Lieder, Partner
mlieder@findjustice.com
202.822.5100

January 30, 2026

**By ECF**

Hon. Stewart D. Aaron
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:** ***Dowdy et al. v. City of New York***
**22-cv-6284 (ALC) (SDA)**

Dear Judge Aaron:

Pursuant to the Court's Order of December 15, 2025 (ECF No. 201), the Parties respectfully submit this joint status letter.

**Judicial Intervention**

Plaintiffs' Position

Plaintiffs believe that judicial intervention is desirable to facilitate the City's production of documents so that the Parties can complete fact discovery by the deadline of April 30, 2026, as set out in the Amended Case Management Order (ECF No. 199). Plaintiffs contend that the City has not searched diligently for documents responsive to their document production requests and has not participated constructively in the ESI discovery process. Plaintiffs suggest that the Court notify the Parties how it wishes to address the issues, such as Plaintiffs filing a motion to compel or the Court convening an in-person or remote conference with the Parties.

City's Position

The City disputes Plaintiffs' characterization of the City's document-search efforts. Since September 2025, the City has produced thousands of pages of responsive documents and has engaged in ongoing, good-faith efforts to identify and produce additional materials where appropriate. In response to Plaintiff's requests for production, the City has informed Plaintiffs that certain categories of documents do not exist. In response to Plaintiffs' follow-up inquiries, and after Plaintiffs clarified the specific documents they sought, the City agreed to conduct additional searches and has done so without objection. The City will continue to produce responsive materials on a rolling basis.

With respect to ESI, Plaintiffs' proposed search parameters for just four of sixteen proposed custodians returned a universe of over 200,000 documents, excluding attachments, totaling

approximately 385 GB of data. Both Parties agreed that these search parameters were overbroad. To date, Plaintiffs have not made a proposal that meaningfully addresses the proportionality issues associated with the requested collection. Most recently, on January 22, 2026, Plaintiff provided additional feedback on the nature of discoverable information they were seeking through ESI. Based on that guidance, the City is now analyzing the feasibility of tailoring the search terms so that they are more likely to return relevant discovery in line with Plaintiff's guidance.

**<u>City's Non-ESI Production</u>**

*Plaintiffs' Position*. Plaintiffs have served two sets of document production requests, on June 23 and September 12, 2025, with a total of 67 often-specific requests. Pursuant to an agreed-upon extension, Defendant responded to the first set of requests on September 23 and to the second on October 10. Between its initial disclosures and documents produced with its responses, the City produced about 60 documents comprising about 1,800 pages. Although it stated in its responses to 12 requests that it was searching for responsive documents that, if found, it would produce within 30 days, the City did not produce supplemental documents, although it recently also produced personnel files for the 15 Plaintiffs.

After reviewing the documents that they produced and the City's productions, Plaintiffs sent the attached letter dated December 11, 2025 (Exhibit A). It identifies categories of documents responsive to 34 of the requests that the City had failed to produce. In the letter below, the City for the first time states that it has identified documents responsive to two of the 34 requests that it will produce. Plaintiffs still awaits that production, but even if it is complete for those two requests, the City has failed to identify other responsive documents.

Among the 67 requests also are requests for information in databases to be produced in Excel spreadsheets or other native form. The most important is HR and payroll data for class members and their comparators in the Sanitation Police. The City finally produced data on December 19, almost six months after it was requested. That same day, Plaintiffs sent an email to the City identifying numerous problems with the data production (Exhibit B). Plaintiffs have not received a new production. The City states below that it "has begun this work" but does not indicate when Plaintiffs might expect this data. Plaintiffs also have issues with some of the other requests for data, but this is the most crucial.

<u>City's Position</u>

To date, the City has made a good-faith effort to produce responsive documents, producing thousands of pages to Plaintiffs since September 2025, including its most recent supplemental production of personnel files for the Plaintiffs named. The City has also identified additional categories of documents, including disciplinary proceedings against named Plaintiffs and historical materials relating to the division of work among Agents and Sanitation Police members, and is currently working with an e-discovery attorney to produce these materials in the appropriate format as requested by Plaintiffs.

On December 9, 2025, the City produced HR and payroll data for the proposed class members, including all individuals in the relevant Agent and Sanitation Police roles, covering a seven-year period, beginning in 2017. That production included information regarding race, gender, annual salary, and overtime accruals. Plaintiffs subsequently raised concerns about the production while simultaneously requesting that it be expanded to cover an eighteen-year period beginning in 2008. Defense counsel promptly advised Plaintiffs that the City would confer with the relevant agency regarding these issues and assess the feasibility of producing the requested historical data. Although facilitating such inquiries is a time-consuming process that requires diverting agency employees from their normal duties, the City has begun this work and remains committed to producing responsive, discoverable material.

**ESI Discovery**

*Plaintiffs' Position.* The Parties agreed to an ESI protocol, which the Court entered on October 7. (ECF Nos. 196, 197.) Since then, the Parties have made very little progress, but not for lack of effort by Plaintiffs.

Almost immediately after entry of the ESI protocol, Plaintiffs sent the City strings of proposed search terms and custodians and, after a conference call on October 17, revised search strings, a revised set of custodians, and an initial sample of four custodians against whose records the search strings would be run to determine the number of hits. On December 1, the City provided the initial hit report for the four-person sample that showed that the search strings were producing an excessive number of hits. Two days later, Plaintiffs sent the City a revised set of search strings. The City returned a hit report for the revised terms a month later, on January 6.[1] While the revised terms reduced the number of hits, they were still excessive. Three days later, on January 9, Plaintiffs sent the City a second set of revised search strings. The City has refused to run them, contending without evidence that the second revised strings still would produce excessive numbers of documents. Plaintiffs have pointed out on multiple occasions that the City, unlike Plaintiffs, have access to the documents and is in a better position to suggest revised search strings. The City has not made any specific suggestions, other than non-helpful generalized suggestions such as replacing "OR" connectors with "AND" connectors. In response, Plaintiffs have suggested that the City run the second refined search terms and provide Plaintiffs with a randomly selected sample of documents from one of the sample custodians or from all four of them. Plaintiffs believe that if they could see the types of documents that their search strings were generating, they could do a much more effective job of refining those strings.

The City rejects the proposed sample approach below, stating "ESI discovery does not contemplate the production of random document samples to enable a requesting party to determine what discovery to seek." False. This approach is used in appropriate cases. *See, e.g., Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.,* No. 14-cv-10103 (JGK) (DF), 2017 WL 2418741, at *2 (S.D.N.Y. June 5, 2017). Instead, the City states that it is analyzing the explanations that Plaintiffs provided on January 22 to suggest more narrowed search strings. It is not true that the City

[1] The Parties did not write to the Court on January 6 because, after conferring and receiving the hit report, Plaintiffs felt that agreement and progress was sufficiently being made, but this progress has not continued.

repeatedly has asked for more pointed examples of the types of information Plaintiffs are seeking, but more important, the City makes no commitments about when it will, for the first time, propose alternatives to Plaintiffs' search strings.

City's Position

The City has already run two hit report searches. The second search, like the first, returned a universe of over 200,000 documents, excluding attachments. This volume reflects that the search terms, as drafted, are overly broad and not sufficiently tailored to identify documents relevant to Plaintiffs' requests for production. Many of the terms, including generic racial descriptors and the titles of positions at issue, appear frequently in day-to-day documents and communications at the New York City Department of Sanitation in ways wholly unrelated to the subject matter of this action, making it unlikely that the resulting hits would meaningfully advance the issues in dispute.

The City declined to run a third search because Plaintiffs, again, made minimal revisions to the proposed search terms, which did not meaningfully address the proportionality issues identified with the first and second searches and would result in hours' worth of work for a predictable outcome. After the second search, Plaintiffs also proposed that the City provide a randomly selected sample of documents, first from one custodian and then from four custodians. The City has rejected this approach because it is unclear how it would address the proportionality issues with the current search parameters. Moreover, the request would improperly require Defendants to produce irrelevant and potentially protected documents for Plaintiffs to then identify relevant search criteria. ESI discovery does not contemplate the production of random document samples to enable a requesting party to determine what discovery to seek. Finally, producing such a sample would require the collection and processing of approximately 352GB of largely irrelevant data, imposing a significant and disproportionate burden on Defendants.

The City has repeatedly requested that Plaintiffs provide more pointed examples of the types of information they are seeking through these ESI searches so that the parties can craft more tailored and proportionate search terms. Plaintiffs provided such explanations on January 22, 2026, and the City is now analyzing the feasibility of narrowing the ESI search parameters based on that guidance.

Thank you for the Court's attention to this status update.

Respectfully submitted,

Michael D. Lieder, Esq.
*Attorneys for Plaintiffs*

By: */s/ Michael Lieder*
Mehri & Skalet LLC
2000 K St., NW, Suite 325
Washington, DC 20006

Mlieder@findjustice.com
202-822-5100

Enclosure of Exhibit A & B

cc: Shemori Corinthian, Esq., NYC Law Department, *Attorneys for Defendant*
Steven Moser, Esq., Moser Law Firm, *Co-Counsel for Plaintiffs*
Philip Seeling, Esq., Seeling Law Offices, LLC, *Co-Counsel for Plaintiffs*
Matthew Porcaro, Esq., Seeling Law Offices, LLC, *Co-Counsel for Plaintiffs*