UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------:

| | |
|---|---|
| DAMEKA DOWDY, on behalf of themselves and all others similarly situated, et al. | : Docket No.: 22-cv-06284 |
| Plaintiffs, | : |
| v. | : |
| CITY OF NEW YORK, | : New York, New York |
| | : February 4, 2026 |
| Defendant. | : |

-----------------------------:

PROCEEDINGS BEFORE
THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:

SEELIG LAW OFFICES
BY: PHILIP H. SEELIG, ESQ.
MATTHEW PORCARO, ESQ.
299 Broadway, Suite 1600
New York, New York 10007

MEHRI & SKALET, PLLC
BY: MICHAEL LIEDER, ESQ.
2000 K Street, NW, Suite 325
Washington, DC 20006

MOSER LAW FIRM, PC
BY: STEVEN J. MOSER, ESQ.
453 W Main Street
Huntington, New York 11743

Appearances (Continued):

For Defendant: NEW YORK CITY LAW DEPARTMENT
LABOR AND EMPLOYMENT DIVISION
BY: SHEMORI CORINTHIAN, ESQ.
100 Church Street
New York, NY 10007

Transcription Service: Marissa Lewandowski
Phone: (631) 813-9335
E-mail:marissamignano@gmail.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

THE COURT: Good afternoon. This is Magistrate Judge Aaron. This is the matter of Dowdy against City of New York, 22-cv-6284.

This line is being recorded. I'd like to have the parties identify themselves for the record, please, starting with counsel for the plaintiffs.

MR. SEELIG: Philip Seelig of Seelig Law Offices.

MR. LIEDER: And Michael Lieder of Mehri & Skalet.

MR. PORCARO: Also Matthew Porcaro of Seelig Law Offices.

MR. MOSER: And Steven Moser of the Moser Law Firm.

MS. CORINTHIAN: Good afternoon.

THE COURT: Counsel -- go ahead.

MS. CORINTHIAN: Sorry, Your Honor. Shemori Corinthian, New York City Law Department, on behalf of Defendant.

THE COURT: Good afternoon. I received the parties' January 30th letter filed at ECF 202 and must admit I'm disappointed that the parties don't appear to have worked things out. And I'm happy to walk through what the issues are. Something that jumped off the page at me, however, is on page 3,

that the plaintiffs want data for an 18-year period beginning in 2008. I'd like plaintiffs' counsel to explain to me why that's proportional to the needs of the case.

MR. LIEDER: Your Honor, this is Michael Lieder. We have made allegations of a continuing violation under both New York State Human Rights Law and New York City Human Rights Law. And we believe that the continuing violation goes back to 2008.

THE COURT: Interesting. And what volume of data are you seeking going back 18 years?

MR. LIEDER: We're seeking human resources and payroll data for the members of the proposed class and their comparators, the sanitation police officers. And I will say, Your Honor, that in an earlier case that I handled on behalf of fire protection inspectors against the City of New York, that we made continuing violation claims. This is a case filed in 2020. And the defendant produced without too much difficulty the records back to 2005.

THE COURT: All right. So what issues have you folks not been able to work out? You guys can't work out search terms? Is that what the issue is,

that I need to ask you what the search terms are, what the head counts are, and then I'll put in the within X number of words parameters for you. What -- explain to me why we're having -- I have to get involved here.

MR. LIEDER: Your Honor, that is one of three types of issues, the ESI search terms. And Plaintiffs have proposed search terms that are yielding what Plaintiffs agree are too many hits. And we revised those search terms once and produced fewer hits, but still too many. So we suggested a second set of revisions, and the City took the position that we're not going to run those because it will still yield too many hits.

THE COURT: You folks have decided not to use predictive coding or some other more advanced form of search rather than search terms and -- those were used back when I was still practicing law. I think eDiscovery has evolved. But you folks are wedded to the old-fashioned way search terms? You're not going to use predictive coding or any other technology-assisted review?

MR. LIEDER: At this point, Your Honor -- first, I should say that in other cases I've had against the City, that the City seemed to be

comfortable with the search term approach, which is why we tried it. We would be happy to use more advanced predictive coding approach.

THE COURT: All right. Well, let me hear from the City. It seems to me that if we're going to be -- or you're going to be proceeding using search terms, then there needs to be a meet-and-confer process. And the way it works, at least the way that it worked back when I was still practicing and since I've been on the bench, you get hit counts back. Your adversary suggests modifications. You could say, "Well, I think those modifications aren't sufficient, so I think we ought to make these additional tweaks to it." And then you run another -- you run the search terms against your data. You come up with revised hit counts.

Is the City opposed to that approach? Let me understand what the City's position is with respect to the modified search terms.

MS. CORINTHIAN: No, Your Honor, we're not. I think that's the way that we should go. We -- again, you know, there were three proposed search terms proposed by Plaintiffs. And our position is that each time they didn't really come back and do something meaningful that would actually bring down

the numbers. The numbers that we're talking about here are over 200,000 hits for documents, and that's not even -- that's just the parents. That's not even including attachments. And it's only for four of 16 proposed custodians.

So it's a very large volume of documents. Even if, at some point, there is predictive coding enabled, it would still be a very large burden on the City to go through that. So we'd like at the outset for the search terms to be lowered significantly, and we're willing to work with Plaintiffs on that.

You know, and it's -- they disagree on it, but our position is that we've been asking for a little bit of clarity from them on what they're really looking for so that we can have an informed way to modify that. And our position is that we got that clarity on January 22nd. And with that, I am working with our eDiscovery team to revise those search terms and provide a response to their reasoning for why they want the search terms to go forward.

Once we clearly see what their reasoning is and we can object to them and let them know that -- why that's not feasible or doesn't make any sense

and then come up with new string sites, which we're in the process of doing. It just didn't move along before -- ahead of the schedule -- ahead of the last status letter. We weren't able to complete that.

THE COURT: So you got this revised proposal from your adversary on January 22nd. How many search terms did you say there were?

MS. CORINTHIAN: No, they had given us the revised search terms before that. What they gave on January 22nd was an explanation -- a real grounded explanation of what they were actually looking for, and that's something we could work with. Before, they were kind of just like a piecemeal approach, taking out a word here or there, and they finally gave us more in-depth explanation of what they're looking for. So we can even help, you know, counter craft some search terms.

THE COURT: How many search terms are there?

MS. CORINTHIAN: There are -- well, it's 11 -- from their last proposal is a level, but there's a lot of connectors in there. So, like, one search term could have, you know, 20 words in there and it's like or, or, or, or with the various terms that they're using for one -- for one complete

chain.

THE COURT: Okay. So you received an explanation what it is they're looking for on January 22nd --

MS. CORINTHIAN: Yes.

THE COURT: -- and tomorrow will be the two-week mark. So explain to me what's happening on the -- on -- on the City side that is delaying a response back. I'm aware that the Law Department has an eDiscovery unit. They have a litigation support unit. Explain to me what's happening inside the Law Department that's delaying a response to the plaintiffs.

MS. CORINTHIAN: Well, Your Honor, just as cases that they're dealing with, that it comes in as priority, I guess -- I'm just going as I get the information back. I am on top of it and following up with the eDiscovery and then, you know, getting that back and consulting with other internal stakeholders. That's a process that I'm going through.

THE COURT: All right. Well, when are you going to respond?

MS. CORINTHIAN: I can probably --

THE COURT: Are you still there?

MS. CORINTHIAN: Yes, I -- yes, I am, Your Honor. I can give a response by next week, Your Honor.

THE COURT: So I take that to mean Monday the 9th?

MS. CORINTHIAN: No, no. I would ask to -- I would ask until the end of the week.

THE COURT: But I don't understand. At the end of the week, what is it that you're going to be giving the -- you're not giving them documents. You're not giving them hit counts. What do you plan on giving them?

MS. CORINTHIAN: I'm giving them proposed refined search terms.

THE COURT: And you need till the end of next week to do that? You've had this information you've needed since January the 22nd.

MS. CORINTHIAN: Well, I do -- I am working on other things, Your Honor, and I am also preparing to transfer my cases because I am going to take a leave. I'm trying to order things, just to be candid. So I'm getting everything in order.

THE COURT: Who's replacing you?

MS. CORINTHIAN: My supervisor hasn't made a determination yet.

THE COURT: And remind me, are you in -- are you in special fed or a different unit?

MS. CORINTHIAN: The labor and employment.

THE COURT: You're in labor and employment. And who heads it up now?

MS. CORINTHIAN: Maxwell Leighton.

THE COURT: Okay. Well, look, obviously I understand your -- your personal situation, but I have an obligation to move cases along, and -- and this is a 2022 case and it -- it just is not -- the pace at which the City is proceeding is not consistent with the efficient administration of justice. And the plaintiffs here that have viable claims and this delay is, you know, causing them prejudice.

And when is your leave?

MS. CORINTHIAN: It starts -- my last day in office is February 20th.

THE COURT: Yes. So you're asking to push this out to a week before you leave. When is your successor going to be named?

MS. CORINTHIAN: I'm not certain, Your Honor.

THE COURT: All right. So here's what I'm ordering to happen. By February 13th, you are to

provide the response that you promised to the plaintiffs, and that is a good-faith effort at capturing the documents that the plaintiffs are seeking, as well as minimizing the hit counts. But in that February 13th letter, I am ordering the Law Department to identify the individual who is going to be your successor, in other words, who's taking over this case, because I don't want -- and I want to have that week period for you to educate this individual so this individual can get up to speed on where things are. I don't want to have another situation where because of your departure, we have further delays.

And if -- I'll trust you to provide my order that I'm going to be issuing today to the relevant people at the Law Department. If I need to have a conference with senior personnel at the Law Department, I'll do that, obviously with plaintiffs' counsel on the line. But I don't want to have a situation where I'm giving you more than generous period of time to do what you need to do, but I don't want, again, to have a situation where you disappear and then this case is languishing. All right?

MS. CORINTHIAN: Okay. So by -- you said

by the 13th to give our counterproposal for the search terms.

THE COURT: And that's what you're getting to the plaintiffs. And what you're getting to me is the letter filed to the ECF docket indicating the individual who's going to be succeeding you as counsel of record in this case during your leave.

MS. CORINTHIAN: Okay. So both on the 13th. Okay.

THE COURT: Correct.

MS. CORINTHIAN: Okay.

THE COURT: And --

MS. CORINTHIAN: (Inaudible.)

THE COURT: All right. I see on page 2 of the letter there is an indication that you've begun work, the City has, with respect to non-ESI production, and the plaintiffs put those words in quotes, begun this work. What is the status of the so-called non-ESI production?

MS. CORINTHIAN: I think I've substantially complied with responsive documents that are in my possession. Every time they've given me an inquiry or saying things like, well, we think -- you know, the plaintiffs think this is not the case or anything like that, I've run that back to the

agency.

And as I outlined it in the letter, I do have some forthcoming documents to produce. That's with the eDiscovery team that's being processed, so it can be produced in the appropriate format regarding some disciplinary records, some other documents about the separation of work for the relevant titles.

So I have a few more documents -- and the creation of one of the titles. I have a few documents that are processing and I hope to have out shortly.

THE COURT: And when you say "shortly," define what that means.

MS. CORINTHIAN: I would hope to get it out before -- before I -- it wouldn't be the responsibility of the next ACC coming in. It's --

THE COURT: Well, I'm going to direct you to use diligent efforts to produce these documents no later than the 13th. If you're unable to do that, in the letter that you file to the docket on the 13th, you're going to articulate what efforts you've made to do it. And you have to at least have done some production of those. And if you need additional time, you're going to have to articulate

what additional time you need and why you need it.

MS. CORINTHIAN: Understood.

THE COURT: All right. So let me ask Plaintiffs' counsel, what other items are you awaiting?

MR. LIEDER: Your Honor, this is Michael Lieder again. There are -- I want to follow up with what you were just talking about with counsel. She's indicating that they may be producing documents with respect to two of the areas that we thought that they clearly have additional documents that haven't been produced, and she indicated maybe a small number of others.

We identified something like 40 different document requests that they have not adequately responded to in our belief. And when Ms. Corinthian says that, well, Plaintiffs say that they believe that there are other documents like this. We have, and we cited to them, documents that indicate that there are additional documents. And I don't doubt Ms. Corinthian at all, but I do have some doubts about the agency and whether the agency is really making the types of searches for documents that are necessary.

But then to answer the more -- the other

side of your question, the other big area that we're concerned about is the human resources and payroll data that we've been requesting since June. And it's not only the issue that we would like the production to go back to 2008, but there was a quasi production that they made on December 19, but it was just totally inadequate and unusable. And we immediately, that same day, identified some of the issues with it. And that was December 19th, and so it's now about 45 days since then, and we haven't gotten the basic HR payroll data that we need.

THE COURT: Ms. Corinthian, what's the status of the production of the HR and payroll data?

MS. CORINTHIAN: I don't think -- I disagree with the characterization that it was inadequate. As I outlined in my letter, it was from 2017 to 2025 for information regarding the start date, salary, overtime, gender, race of all the relevant titles. That was given up to -- given over to them. And that is the time that we got the response of, well, actually, we have these concerns, and by the way, we want it back for 2008.

As I outlined in my letter, Your Honor, that's a huge undertaking for the agency, and that takes a lot of resources. I'm sorry it is taking

long, but it does take a lot of time to pull it. And one of the problematic things here is that one of the titles at issue, the sanitation police officer, is not a civil service title. So to track where those people are and to differentiate them when they're not doing san work, that is a task in and of itself. So to be doing that, going back to that time period, it does take long.

So I do take issue with it not being, you know, totally unusable. They had the demographic information. And I also, yet again, even though I think it is overboard, I did not disagree not to search for that information. That inquiry has been put to the client agency, and they've explained that difficulty with finding and locating information about a title that's not an official civil service title. So I'm trying to get more clarity on if and when that information could be available going back that far.

THE COURT: And how long have you been seeking such clarity?

MS. CORINTHIAN: Several weeks, Your Honor. I don't have the -- my email pulled up in front of me, but it's not -- it's not -- I'm not being dilatory, and I didn't just recently do that.

MR. SEELIG: Your Honor, if I may. This is Philip Seelig. In regard to her comment about civil service title, sanitation police are sanitation workers, sanitation supervisors or superintendents. The sanitation police are a detail of sanitation workers and their supervisors. So they clearly have a civil service title, and they have payroll information as well as who is assigned to sanitation police.

There isn't a voluminous number of turnovers of sanitation workers going back and forth from sanitation collection to sanitation police assignments. It's generally a preferred assignment among sanitation workers to get those enforcement responsibilities, and they generally stay there for the remainder of their career in that civil service title. So I don't think it's as challenging as it appears to be based on my opponent's earlier comments a moment ago.

THE COURT: All right. So in the February 13th letter, Ms. Corinthian, you're also to set forth what the status is of the production of the so-called HR and payroll data, as well as a good-faith estimate of when the data is going to be produced.

I will tell you that if I find that things aren't moving along as swiftly as they should, and perhaps if there continue to be issues about whether responsive documents exist, that kind of thing, I'm going to be directing Plaintiffs' counsel to take a 30(b)(6) deposition of a representative of the Sanitation Department with respect to the issue of what documents and what data exist that will require the Law Department to educate whoever your corporate -- your institutional designee is so that Plaintiffs can get clarity on what data exists and that kind of thing.

Obviously, I'd like to avoid that because that will cause a burden on the Sanitation Department. But I just think I need some -- I don't know what the word is -- lever on the Sanitation Department to just take their obligations here -- I don't know whether the word is more seriously, or maybe move this up the -- in terms of priorities, move this to a higher priority. Now, it seems to me that the Sanitation Department is not treating this case as a priority, and they need to.

So I am -- the order I'm going to issue is only going to -- by the way, anybody can order a copy of this transcript if they want. Just contact

my deputy. But my -- my order is only going to require you, Ms. Corinthian, to provide a update on the production of the HR and payroll data in that letter.

But I want to just have you pass along to the Sanitation Department that if I'm not satisfied that things are moving as they should, that -- and if Plaintiffs continue to believe that they're being shorted, air quotes, in the document production, I'm going to permit them to take a 30(b)(6) deposition to get to the bottom of the situation. It would be much better, of course, if that can be worked out in dialogue. That likely will be dialogue between the plaintiffs' counsel and your successor, but dialogue nevertheless.

All right. What else is there on the plaintiffs' side?

MR. LIEDER: Your Honor, those were the three areas that we have the biggest concern about.

THE COURT: All right. Ms. Corinthian, anything on your side?

MS. CORINTHIAN: No, Your Honor.

THE COURT: All right. So you can expect, as I said, the order is just going to set forth what's going to happen in this February 13th --

what's required to be included in this February 13th letter. And the parties can expect, depending on the -- what's in there -- actually, you know what, rather than depending what's in there, once I receive the letter, have an opportunity to review it, the parties can expect that I'll schedule a follow-up telephone conference to address any issues that need to be addressed, and a settlement conference when -- when a new counsel from the Law Department is on board so that we can have a discussion with that individual about how the case is going to proceed. But I'm not going to schedule that now. I want to wait and read the February 13th letter before I do that.

All right. Well, I thank everyone for their time, and this matter is adjourned.

22

C E R T I F I C A T E

I, Marissa Lewandowski, certify that the foregoing transcript of proceedings in the case of Dowdy et al v. City of New York, Docket #1:22-cv-06284-ALC-SDA, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature ___________________________

Marissa Lewandowski

Date: February 9, 2026