**STEVEN BANKS**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**Robyn L. Rothman**
Division of Labor and Employment
(212)-356-2450
rrothman@law.nyc.gov

July 13, 2026

**VIA ECF**
Hon. Stewart D. Aaron
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Dowdy, et al. v. City of New York
1:22-cv-06284 (ALC) (SDA)

Dear Judge Aaron:

I am an Assistant Corporation Counsel in the Office of Steven Banks, Corporation Counsel of the City of New York, attorney for Defendant the City of New York above-referenced action. I submit this letter to update the Court on the status of Defendant's (1) further searches in response to Plaintiffs' Fed. R. Civ. P. 30(b)(6) notice and pursuant to the June 11, 2026 Joint Status Letter filed with this Court under Docket No. 221; (2) ESI discovery; and (3) the parties' respective positions on the course of discovery.

**Defendant's Position:**

Following the submission of the June 11th Joint Status Letter, Defendant has continued to undertake diligent and reasonable efforts to comply with its discovery obligations in responding to all outstanding discovery. Counsel has continued to engage with City stakeholders implicated by Plaintiffs' 30(b)(6) Notice to obtain further non-privileged documents responsive to document demands incorporated within the 30(b)(6) notice. Specifically, Defendant's counsel continues to meet and confer with representatives of the New York City Department of Sanitation ("DSNY"), New York City Office of Labor Relations ("OLR"), and the New York City Department of Citywide Administrative Services ("DCAS") regarding items listed within

Plaintiffs' 30(b)(6) Notice. Counsel has obtained names of potential custodians, sought clarity and guidance on DSNY's search efforts for possible documents that could be responsive to Plaintiffs' 30(b)(6) notice, and determined the necessity of declarations for any items in which a search has been conducted which yielded negative search results.

Since Defendant has received Plaintiffs' 30(b)(6) notice on February 24, 2026, Defendant has produced approximately 2,627 pages of documents in addition to the 7,170 pages of documents already produced prior to receipt of the 30(b)(6) notice. Thus, of the May 13, 2025 Rule 26(f) Case Management Plan, Defendant has served Plaintiff with approximately 9,197 pages of documents from four different City agencies[1] responsive to 1) Plaintiff First Request for Production dated June 23, 2025 and 2) Plaintiffs' Second Request for Production dated September 12, 2025.[2] Following receipt of Defendants' responses to its RFPs, Plaintiffs served Defendant with a 30(b)(6) notice seeking to depose witnesses on behalf of the Defendant on the search efforts for approximately 21 items of documents derived from Plaintiffs' two RFPs in which Defendant has either 1) provided documents that Plaintiffs' deemed insufficient to fully respond to Plaintiffs' RFPs as reflected in the explanations provided within the notice or 2) provided a negative search response.

Following receipt of the 30(b)(6) notice, counsel for the parties met and conferred, and agreed, among other things, to attempt to obviate the need for 30(b)(6) depositions by permitting Defendant to search its records for further responsive documents, provide non-privileged responsive documents on a rolling basis until searches had been fully exhausted, and provide declarations for items yielding negative search results. The parties thereafter submitted their first joint status letter in April 2026 and have provided status updates every 30 days thereafter.

Since the submission of the first status letter in March 2026, Defendant has engaged in good faith efforts to work collaboratively with Plaintiffs in best ways to respond to certain requested items. The following is a current chart of documents either served or forthcoming as of the date of this letter and the 30(b)(6) items they are responsive to:

| **30(b)(6) Item #** | **Documents Provided** |
|---|---|
| 1 | Spreadsheets containing demographic data for all persons employed in the Sanitation Police Officer, Associate Sanitation Enforcement Agent, and Sanitation Enforcement Agent titles for the entire relevant period |
| 2 | Notices of Examination for Sanitation Workers, Associate Sanitation Enforcement Agents, and Sanitation Enforcement Agents and blank performance evaluation forms |
| 3 | Chart of Civilian and Uniform Pattern Increases from 1978 - 2025 |

[1] DSNY, NYC FISA-OPA, DCAS, and OLR.

[2] Plaintiff's First RFP sought 52 categories of documents and Plaintiffs' Second RFP sought an additional 15 categories of documents.

| | |
|---|---|
| 4 | Bill Jacket for CPL 2.10 containing memoranda from Defendants advocating for the change in the CPL to include SPOs within the meaning of Peace Officer |
| 10 | Bi-Weekly Reports mentioning "joint" and/or "blitz" |
| 12 | "1% Package" reflecting the cost to City employee benefits package |
| 14 | Collective Bargaining Agreements for Sanitation Workers, ASEAs/SEAs, Sanitation Officers |
| 15 | Sanitation Enforcement Division Organizational Chart |
| 21 | FIAT Investigations and Results pertaining to complaints and investigations of Agents between November 2022 and February 2023. |

In addition to the above documents, Defendant has also served Plaintiffs with extensive data pertaining to salary and leave data from NYC FISA-OPA for all individuals in the civil service titles of Sanitation Worker, Associate Sanitation Enforcement Agent, and Sanitation Enforcement Agent from January 2008 through March 2026. Defendant anticipates also serving Plaintiffs with data from DCAS regarding these titles for the same period. From the FISA-OPA data, Defendant has also provided a listing of all sanitation workers assigned to the Sanitation Police Officer title, which required Defendant to conduct a manual review of the personnel files of all identified Sanitation Police Officers to determine appointment and/or termination dates of each individual employee's SPO detail. At this time, Defendant further anticipates providing Plaintiffs' with declarations responsive to approximately eight of the items requested in the 30(b)(6) notice.

Simultaneous to the aforementioned efforts to coordinate searches of non-ESI discovery and provide responses to Plaintiff's 21-item 30(b)(6) notice, counsel for Defendant—Robyn Rothman—has also been engaged in ESI collection with the Law Department's E-Discovery Division, conducted a prevalence review of a 400-document sample to determine the ESI responsiveness rate, organized a team of attorneys in the Labor and Employment division of the Law Department for ESI review (including conducting training of the team to ensure quality control), and begun ESI review of 23,299 documents of ESI.[3] All of the aforementioned efforts have been conducted by Defendant's counsel within the four-month time-span since the first status letter was submitted to this Court on March 10, 2026. As indicated in the June 11, 2026 letter, Defendant's ESI review began once the ESI team was organized and fully briefed on the search protocols and that review is ongoing. Defendant further believes that the ESI will also provide responsive documents to Plaintiffs' 30(b)(6) notice.

In recent discussions, Plaintiffs' counsel has expressed frustration with having "seen so few documents" from Defendant since serving its initial requests as categorized in the

[3] These efforts are being made in addition to the caseloads of non-related cases in both state and federal court being handled by Ms. Rothman and the other attorneys on the ESI review team.

June 11, 2026 Status Letter (see ECF 221). It is Defendant's position that in the four-month span since the initial status letter, it has undertaken a monumental effort to comply with its discovery obligations, provide further responsive documents to Plaintiffs' demands, and conduct ESI review of 23,299 documents while still engaged in other non-related matters. Defendant has acted appropriately and as quickly as is practicable under the circumstances. To date, the total number of pages of responsive non-ESI documents now in Plaintiffs' possession totals 9,197 with Defendant anticipating production of additional documents.

**<u>Plaintiffs' Position</u>**

Plaintiffs continue to be frustrated by the pace of discovery. Defendant's production of about 1,900 pages of documents after 3:00 p.m. today makes it difficult for Plaintiffs to accurately assess the scope of documents that have and have not been produced. Plaintiffs thus join in Defendant's proposal that the parties provide the Court a further status update in 30 days. Plaintiffs also respectfully request that the Court schedule a conference shortly thereafter so that the Court and the parties can discuss how best to move this case forward.

For more than a year, Plaintiffs have been seeking three types of documents. Defendant's success in producing requested documents has been, at best, mixed.

First, Plaintiffs seek ESI from agreed-upon custodians that satisfy agreed-upon search strings. Defendant states that 23,299 documents have been identified and are being reviewed for privilege and responsiveness. They are to be produced on a rolling basis. *But the Defendant has not yet produced even one of these documents*. When the parties agreed several months ago to the custodians and search strings, Plaintiffs did not believe that they would still be waiting for production of the first document in July.

Second, Plaintiffs requested production of numerous categories of documents in their document production requests. They refined those categories in subsequent communications, including finally a 30(b)(6) deposition notice. Plaintiffs also provided Defendant with bates numbers of responsive documents and described types of documents that would be responsive.

According to Defendant, the 1,900 pages of documents that it just produced are responsive to four of these categories, the first three from DSNY, and the fourth from OLR:

1. FIAT Investigative Documents and Documents Reflecting Outcomes of FIAT Complaints;

2. Commissioner bi-weekly reports mentioning "blitz" and/or "joint operations" within the enforcement unit;

3. Blank Performance Evaluation Forms used for Agents and SPOs;

4. The "1% Book" generated by OLR;

Even accounting for prior productions, however, most of the requested categories of documents have not been addressed. Plaintiffs are not confident that DSNY is properly

identifying likely custodians and thoroughly reviewing their records. For example, Plaintiffs identified Commissioner bi-weekly reports as one source of information concerning joint operations between Agents and SPOs. Plaintiffs never suggested that those reports were the exclusive source of such information. Nevertheless, Defendant's description of its search efforts suggests that DSNY may be treating those reports as the only repository requiring review. And while it is likely true, as Defendant states, that "Defendant further believes that the ESI will also provide responsive documents to Plaintiffs' 30(b)(6) notice," Defendant may not rely on the possibility that the ESI review will produce some responsive documents to satisfy its discovery obligations. It is obligated to do a search independently of the ESI review.

Third, Plaintiffs seek human resources and payroll data about Agents and Sanitation Police. Within the past 30 days, the Defendant has produced data for all sanitation workers and, after 3:00 today, a list of SPOs that purportedly will allow us to identify sanitation workers who also served as SPOs at times during the data period. Plaintiffs haven't had sufficient time to review the list to determine whether it will allow Plaintiffs and their expert to accurately identify these individuals. If the list proves adequate and contains no material deficiencies, this production may substantially, if not entirely, satisfy Defendant's data-production obligations.

**Joint Proposal**

In light of Defendant's above-listed efforts to resolve outstanding ESI and non-ESI discovery and its progress towards resolving Plaintiffs' FRCP 30(b)(6) notice, the parties jointly request that this Court continue to hold the current deadlines regarding Defendants' filing of its objections, and Plaintiffs' responses thereto, in abeyance. The parties propose to provide this Court with a status update again in 30 days, during such time the City will continue to undertake a diligent search for remaining documents requested and provide productions on a rolling basis.

Respectfully submitted,

*/s/ Robyn L. Rothman*
Robyn L. Rothman
Assistant Corporation Counsel

cc: All counsel (via ECF)